**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE APPLICATION OF TERRA INVEST, LLC UNDER 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | Case No. |

## DECLARATION OF KHALID KUMYKOV

I, Khalid Kumykov, declare and state:

1.      My name is Khalid Kumykov. I am a citizen of the Federation of Russia, and am over the age of majority under U.S. law.

2.      I am the Chief Executive Officer of Terra Invest, LLC, a Russian limited liability company.

### The Russian Real Estate Venture

3.      Mir Mitino (the "Project") is a mixed use real estate development located in the Mitino District of Moscow. Construction began in 2016, and today the Project comprises of 20 apartment buildings, a fitness center, a shopping mall, and seven car parks.

4.      Terra Invest, the company for which I serve as CEO, and Russian limited liability company Fridom LLC ("Fridom") each own 50% of the Project joint venture (the "Project JV").

5.      Based on my position as CEO of Terra Invest, I am aware that Russian nationals Mikhail Cherkasov and Andrei Dolin own and control Fridom. It is my understanding that Cherkasov owns 50.1% of Fridom and Dolin owns the remaining 49.9%.

6.      The Project JV is comprised of and operates through two entities: a holding company, Rozhdestveno, JSC ("JSC-R"), and an operating company, Rozhdestveno, LLC ("LLC-R").[1] JSC-R's sole asset is LLC-R. Terra Invest and Fridom jointly own JSC-R.

7.      JSC-R controls the Project through the JSC-R's Board of Directors and two General Directors: Dmitrii Kharitonov and Cherkasov.

---

[1]     LLC-R originally operated under the name NDV Stroy LLC (also referred to as LLC NDV – Stroi). The name was changed to LLC-R sometime in October 2015. Certain agreements relevant to the Project use the original entity name, NDV Stroy.

8.      LLC-R acts as the real estate developer, construction manager, and sales and marketing agent for the Project. LLC -R receives the Project's sales and other revenue, and is party to all Project investment and debt financing agreements.

9.      A September 15, 2015 agreement established that all income from the Project would be distributed *pro rata* to the JSC-R shareholders: Terra Invest and Fridom. Attached to my declaration as <u>Exhibit A</u> is a true and correct copy of the Indicative Terms, dated Sept. 15, 2015, as amended on June 20, 2016.

10.     The Project is being financed using several lines of credit, all of which were refinanced in March 2019 through a loan to LLC-R from Sberbank of Russia, PJSC ("Sberbank").

11.     The Project is being constructed on land that Poultry Farm Krasnogorskaia, JSC ("Poultry Farm") owns, subject to the terms of a September 30, 2015 investment contract between it and LLC-R.

12.     Under the investment contract, Poultry Farm is entitled to receive a share of future residential and commercial real estate rental income from the Project.

13.     Poultry Farm is owned and controlled by Capital Group Development, LLC ("Capital Group"). Capital Group is owned by three shareholders: Vladislav Doronin ("Doronin"), Pavel Tio, and Eduard Berman, each of whom owns an equal 33.3% stake in the company. Attached to my declaration as <u>Exhibit B</u> is a true and correct copy of a Russian State register of legal entities regarding Capital Group Development LLC, dated June 21, 2021.

14.     Capital Group's international real estate development and investment business appears to operate together with and through another company, OKO Group, LLC ("OKO Group"), which is a United States real estate company that operates principally in New York and Florida.

15.     Doronin, one of Capital Group's shareholders, is the owner of OKO Group. Attached to my declaration as <u>Exhibit C</u> is, on information and belief, a true and correct copy of a document depicting Capital Group Development, LLC and OKO Group, LLC's corporate structures and shared Russian real estate projects.

16.     Between April 2020 and June 2021, Doronin received approximately 600,000,000 rubles in dividends from Capital Group.  It is my understanding that 600,000,000 rubles converts to approximately $8.1 million.

### The Forged Power of Attorney

17.     JSC-R held its annual general shareholders' meeting on July 12, 2019 without notifying Terra Invest of the meeting.

18.     It is my understanding that JSC-R General Director Kharitonov represented Terra Invest's interests during that meeting, but he did so without Terra Invest's authority. He instead used a forged Power of Attorney document, which purported to authorize him to act on Terra Invest's behalf during the meeting.

19.     Subsequent to the July 12, 2019 shareholders' meeting, I and others at Terra Invest received a copy of the forged Power of Attorney document through the Russian court system. Attached to my declaration as <u>Exhibit D</u> is a true and correct copy of the Forged Power of Attorney Document we received from the Russian court.

20.     Terra Invest submitted the forged Power of Attorney for forensic analysis to the Russian Federal Centre of Forensic Science, which falls under the purview of the Ministry of Justice of the Russian Federation. Attached to my declaration as <u>Exhibit E</u> is a true and correct copy of the Expert Statement No. 1177/07-7-21, dated Apr. 1, 2021, in which an expert from the Russian Federal Centre of Forensic Science Under the Ministry of Justice of the Russian Federation examines the Terra Invest Power of Attorney document and concludes it is a forgery.

21.     An expert forensic examiner at the Ministry of Justice of the Russian Federation independently confirmed that neither the signature nor the corporate seal on the Power of Attorney document were legitimate. *See id*. The examiner concluded that both the signature and Terra Invest corporate seal likely were copied-and-pasted from other documents. *See id*.

**Fraudulent Uses of the Forged Power of Attorney Document**

22.     Terra Invest has discovered that Fridom co-owners, Cherkasov and Dolin, were behind the forged Power of Attorney document that General Director Kharitonov used during the July 12, 2019 shareholders' meeting.

23.     Terra Invest has learned that Cherkasov and Dolin convinced JSC-R General Director Kharitonov to use the forged Power of Attorney at the 2019 shareholder's meeting. In exchange for his cooperation, Cherkasov and Dolin agreed to "employ" Kharitonov's 20-year-old son as "advisor to the General Director" of LLC-R. "Advisor to the General Director" is not a job that has any actual responsibilities, and Kharitonov's son was paid a large salary under this position.

24.     The fraudulent Power of Attorney also was used during the 2019 shareholders' meeting to help Cherkasov and Dolin elect JSC-R's new board of directors. All of the new board members are Cherkasov and Dolin associates and allies, and Cherkasov and Dolin now have complete control over the Project JV entities (JSC-R and LLC-R) and therefore the Project.

25.     Indeed, all votes during 2019 shareholders' meeting were cast as directed by Cherkasov and Dolin. One vote taken during that meeting involved authorizing JSC-R to execute several large deals with Sberbank.

26.     Terra Invest has tried to resolve its shareholder dispute with Cherkasov and Dolin. Those attempts have been unsuccessful.

27.     In June 2020, Terra Invest engaged Ernst & Young ("EY") to analyze the finances of JSC-R and LLC-R. Attached to my declaration as <u>Exhibit F</u> is a true and correct copy of excerpts from EY's *Fact-finding investigation report*, dated Dec. 25, 2020.

28.     EY identified problematic transactions that occurred after Cherkasov and Dolin orchestrated their illegal takeover of JSC -R. *See id*. These transactions reveal that Cherkasov and Dolin were, through their control of JSC-R and use of the forged Power of Attorney, using Project assets and money to enrich themselves and benefit their family members. *See id*.

29.     Some of the improper transactions included, for example:

a.   LLC-R signing lucrative contracts at inflated prices with companies controlled by Cherkasov, Dolin, and their family members;

b.   Covering Cherkasov's expenses at his personal residence and purchasing a Mercedes Benz Maybach S-Class for his personal use;

c.   Paying utilities and operating expenses for certain individuals without business justification;

d.   The below-market sale of a Project apartment to the daughter of Cherkasov and Dolin's attorney; and

e.   Making donations in Cherkasov's name to various charitable organizations.

*See id*.

### Terra Invest's Attempts to Restore its Rights

30.     Terra Invest has attempted to restore its rights and obtain compensation for the damages it has suffered as a result of Cherkasov and Dolin' s use of the forged Power of Attorney.

31.     Terra Invest has filed multiple lawsuits in Russia against JSC-R, LLC-R, and other parties. These lawsuits principally have been filed in the Arbitrazh Court of Moscow and almost all of them still are pending. Attached to my declaration as <u>Exhibit G</u> is a true and correct copy of a list identifying the foreign proceedings in which Terra Invest, LLC is a litigant or is otherwise involved related to the forged Power of Attorney document or the Project (or both and more).

32.     Most notably, these actions include:

a.   A lawsuit against Kharitonov challenging the authenticity and uses of the forged Power of Attorney, filed on February 24, 2021;

b.   A lawsuit against JSC-R seeking to invalidate the election of new board members and the newly constituted boards' actions during the 2019 shareholders' meeting because such election and subsequent actions resulted from the fraudulent use of the forged Power of Attorney;

c.   The filing of a complaint with the Department of Interior of the Ministry of Internal Affairs of Russia for the city of Kolomna (Moscow region)

requesting a criminal investigation into the forged Power of Attorney and the unlawful ways in which it has been used; and

d. The filing of a similar criminal complaint with the Ministry of Internal Affairs of Russia, Federal Security Service of Russia, Office of the General Prosecutor of Russia, Military Investigations Directorate of the Moscow branch of the Investigative Committee of Russia, and Department of Interior of the Ministry of Internal Affairs of Russia for the South-Eastern District of Moscow.

*See id.*

33.     Terra Invest is actively preparing additional filings and for hearings scheduled in its various Russian cases and anticipates initiating new cases as well.

34.     Terra Invest also has shared information with the investigative agencies referenced above and anticipates submitting additional information to these agencies as it becomes available.

**The Insolvency Scheme**

35.     On information and belief, Cherkasov and Dolin, in coordination with Capital Group, Sberbank and others, are orchestrating a scheme under which they have control over the Project JV's largest creditors with the intent to bankrupt the Project JV entities so they can convert the Project assets and profits from LLC-R to their new ownership group under the guise of a lawful process.

36.     On information and belief, the scheme, to date, has operated as follows:

a. On August 4, 2020, Capital Group-owned and controlled company Poultry Farm received a loan from Sberbank in the amount of 1.007 billion rubles— the exact amount of LLC-R's debt to Sberbank;

b. On the same day, Poultry Farm loaned Viktoriia, JSC ("Viktoriia")—an entity jointly controlled by Capital Group, PIK Group, Cherkasov, and Dolin—the exact same amount (1.007 billion rubles);

c. On the same day, Viktoriia purchased LLC-R's existing 1.007 billion rubles' debt from Sberbank, and thus became entitled to exercise creditor rights under the debt refinancing agreement between LLC-R and Sberbank;

d. Shortly after that, Viktoriia terminated Cherkasov's personal guarantee under the debt refinancing agreement between LLC-R and Sberbank, paving the way for a bankruptcy proceeding in which Cherkasov's assets would not be implicated;

e.  Then, on October 13, 2020, Poultry Farm sued LLC-R in the Commercial Court of the City of Moscow (the "Poultry Farm Lawsuit") to terminate the parties' investment contract. Poultry Farm asserted a claim for 22 billion rubles in damages—an amount high enough that it unquestionably would render the Project JV entities insolvent; and

f.  On October 27, 2020, ostensibly because of the Poultry Farm Lawsuit, Viktoriia demanded that LLC-R repay its total outstanding debt within five business days of the demand. In other words, Viktoriia was demanding repayment of the 1.007 billion rubles' loan that Viktoriia bought from Sberbank, presumably using the loan from Poultry Farm, which Poultry Farm itself originally loaned from Sberbank all on the same day.

37.  Poultry Farm has proposed a settlement of the Poultry Farm Lawsuit with LLC-R, but Terra Invest is petitioning to keep the court from approving it.

38.  If the settlement were approved, Cherkasov and Dolin could cause LLC-R to breach the terms of the Poultry Farm investment contract in violation of the settlement agreement, and it is likely that Cherkasov and Dolin will cause such a breach to occur.

39.  If Cherkasov and Dolin are successful in causing the breach, Poultry Farm could enforce the settlement agreement and obtain a judgment of 22 billion rubles. That judgment would render the Project JV entities insolvent.

### Relevant Information in the Possession or Control of U.S. Entities

40.  Cherkasov, Dolin, Capital Group, and their co-conspirators have demonstrated a desire to take over the Project, and have taken appreciable steps to deprive Terra Invest of its interests in the Project JV entities and Project profits.

41.  Capital Group is as an international commercial and residential real estate development and investment company. Capital Group also owns and controls Poultry Farm and controls Viktoriia, both of which participated in the insolvency scheme.

42.  On information and belief, Capital Group often conducts its Russian business in tandem with and through a U.S. entity with common ownership, OKO Group. OKO Group's founder and Chief Executive Officer, Doronin, owns one-third of and exercises substantial control over Capital Group.

43.  On information and belief, OKO Group appears to serve as the U.S. branch of Capital Group, and thus OKO Group likely is in possession or control of documents related to Capital Group's projects, investments, debt financing arrangements, and other real estate business dealings related to the Project. Attached to my declaration as <u>Exhibit H</u> is a true and correct copy of images from the Capital Group Development, LLC website. Attached to my declaration as <u>Exhibit I</u> is a true and correct copy of images from the OKO Group, LLC website.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on: __9/3/2021_____

_____
Khalid Kumykov

Executed on:   9/3/2021

7

_____
Khalid Kumykov

# EXHIBIT A



## ИНДИКАТИВНЫЕ УСЛОВИЯ
### установления лимита кредитования компании ООО «НДВ Строй»

Все, что приведено ниже, является исключительно описанием предварительных условий, на которых сделка может быть реализована, и не создает обязательств ПАО «Промсвязьбанк» (далее также — ПСБ, Банк) по предоставлению финансирования. Финальная реализация сделки зависит от дальнейшей проверки заемщика, а также участников сделки и проекта, согласования условий, утверждения их на Кредитном комитете и Советом директоров Банка (при необходимости) и надлежащем юридическом оформлении. Список условий не является полным, конечным или включающим в себя все возможные требования ПСБ.

Однако если сделка будет реализована, то при ее реализации в любом случае будут соблюдены изложенные ниже условия, если иное не будет согласовано Сторонами.

| | |
|---|---|
| Заемщик | ООО «НДВ Строй» |
| Вид кредитного продукта | Продукт 1,2. Кредитная линия с лимитом выдачи |
| Цель получения кредитного продукта, сумма и валюта финансирования | Продукт 1<br>Обеспечение обязательств ООО «НДВ Строй» в рамках предварительного Соглашения об уступке прав и обязанностей (перенайме) по договору долгосрочной аренды земельного участка № М-08-022112 от 31.05.2004 г. (далее «договор о перенайме»).<br>Продукт 2.<br>Финансирование работ по проектированию, затрат по получению ТУ, управлению проектом |
| Лимит кредитования | Общий лимит кредитования 1 400 000 тыс. руб.<br>Продукт 1. 750 000 тыс. руб.;<br>Продукт 2. 650 000 тыс. руб. |
| Срок финансирования | Продукт 1,2:<br>3 года |
| Процентная ставка, комиссии | Продукт 1,2. Ключевая ставка + 5% годовых.<br>Комиссия за возможность кредитования - 0,1% от суммы лимита, оплачивается в дату подписания кредитного договора. |
| Порядок погашения основного долга | Ежеквартально начиная со 2 кв. 2016 года. Равными долями. |
| Порядок погашения процентов | Продукт 1,2 ежеквартально. |
| Объект | совокупность зданий жилого, нежилого и смешанного назначения, которые будут возведены на земельных участках общей площадью 581 303 кв.м., находящихся по адресу: г. Москва, район Митино, вблизи с. Рождествено. |
| Обеспечение | 1. Залог права требования возврата гарантийного депозита, внесенного в рамках предварительного соглашения о заключении договора о перенайме и инвестиционного контракта;<br>2. Залог 100% долей в уставном капитале Заемщика (без поручительства залогодателя);<br>3. Залог имущественных прав по реализуемому Объекту (Проект Митино);<br>4. Поручительства Хрусталева А.А., Черкасова М.А., Долина А.В. и Ананьева Д.Н. (сейфовое). |
| Отлагательные условия предоставления кредита | **Продукт 1 (в части выборки лимита до 375 000 000 руб.).**<br>1. Оформление поручительств согласно п.4 раздела «Обеспечение».<br>2. Согласование целевого расходования кредитных средств с Банком.<br><br>**Продукт 1 (в части выборки лимита свыше 375 000 000 руб.) и продукт 2.**<br>1. Предоставление в Банк Акта сверки расчетов по обязательствам между АО ХК «ГВСУ «Центр» и ЗАО «Птицефабрика «Красногорская» (далее по тексту — Фабрика) по предварительному Соглашению об уступке прав и обязанностей (перенайме) по договору долгосрочной аренды земельного участка № М-08-022112 от 31.05.2004 г..<br>2. Предоставление выписок из ЕГРП, подтверждающих наличие зарегистрированного права аренды земельных участков, а также отсутствие |

.обременений на это право.

3. Отсутствие препятствий для изменения вида разрешённого использования земельных участков по Объекту на жилищное строительство, а также для получения разрешения на строительство по Объекту.

4. Предоставление документов, подтверждающих, что ни один из участков не обременён режимом природного комплекса и какими-либо иными ограничениями и запретами на строительство (кроме обременения режимом прибрежной и водоохраной зоны, указанного в п. 1.1 договора аренды, а также охранной зоной ЛЭП).

5. Предоставление копий подписанных всеми сторонами следующих договоров (со всеми приложениями, изменениями и дополнениями к ним), заключённых АО ХК «ГВСУ Центр» / ООО «НДВ Строй»:

5.1. Договор субаренды земельного участка № С-1 от 17.12.2014 г.

5.2. Инвестиционный контракт с условиями, определяющими земельные участки, относящиеся к разным очередям строительства, и сроки по каждой очереди (сроки заключения доп. соглашения, определяющего объем обязательств по 2-й очереди, сроки изменения разрешенного использования, сроки передачи прав на земельные участки, сроки получения разрешения на строительство).

5.3. Предварительное соглашение от 17.12.2014 г. об уступке прав и обязанностей (перенайме) по договору долгосрочной аренды земельного участка № М-08.022112 от 31.05.2004 г.

5.4. Договор № 3-1 залога прав аренды земельного участка от 17.12.2014 г.

6. Предоставление документа подтверждающего отсутствие задолженности по уплате арендной платы за земельные участки, а также любых иных оснований для досрочного расторжения договора аренды.

7. Предоставление подписанных соглашений о передаче прав и обязанностей с ГВСУ на ООО «НДВ Строй» между ГВСУ, ЗАО «Птицефабрика Красногорская» и ООО «НДВ Строй», по всем договорам, перечисленным в п.5 настоящего документа и заключенным со стороны ГВСУ.

8. Предоставление подписанного бизнес-плана проекта согласованного с Банком.

9. Согласование целевого расходования кредитных средств с Банком по согласованной форме.

10. Закрепление в кредитной документации условия о направлении не менее 10% средств, поступивших от реализации помещений в Объекте, на погашения кредитных обязательств перед Банком.

11. Предоставление актуального CF проекта, согласованного с Банком.

**Продукт 2.**
1. Оформление обеспечения согласно п.1-4 раздела «Обеспечение».
2. Положительное заключение на предмет подтверждения правоспособности юридических лиц, участвующих в сделках, и полномочий их руководителей.

| Обязательные условия | **Продукт 1.**<br>1. Положительное заключение на предмет подтверждения правоспособности юридических лиц, участвующих в сделках, и полномочий их руководителей – в соответствии с внутренними документами Банка – до 01/10/2015.<br>2. Оформление обеспечения согласно п.1-3 раздела «Обеспечение» - до 01/10/2015.<br><br>**Продукт 1 (в части выборки лимита свыше 375 000 000 руб.) и продукт 2.**<br>1. Предоставление копий подписанных всеми сторонами следующих договоров (со всеми приложениями, изменениями и дополнениями к ним), заключённых между ЗАО «Птицефабрика Красногорская» и ООО «НДВ Строй»:<br>1.1. Договор участия в долевом строительстве – не позднее 31/12/2015. |
|---|---|

2



1.2. Соглашение об уступке прав части и обязанностей (перенайме) по договору долгосрочной аренды земельного участка № М-08.022112 от 31.05.2004 г. – не позднее 01/10/2015.

2. Договоры, заключённые до «01» августа 2015 г., должны быть переданы не позднее «07» сентября 2015 г., а остальные договоры – не позднее 5 рабочих дней с даты их заключения.

3. Отсутствие во всё время действия лимита кредитования задолженности по уплате арендной платы за земельные участки, а также любых иных оснований для досрочного расторжения договора аренды.

4. Согласовать с Банком до 18/09/2015 независимого сюрвейера проекта, процедуру взаимодействия со сюрвейером в части подтверждения бюджета проекта и его последующего мониторинга, источник оплаты расходов сюрвейера.

5. Осуществлять 100% оборотов, связанных с расчетами и продажами по проекту, через расчетные счета открытые в Банке в течение всего периода кредитования.

6. Осуществлять 100% оборотов Застройщика и Генерального Подрядчика, связанных с расчетами и продажами по проекту, через расчетные счета открытые в Банке в течение всего периода кредитования.

7. Предварительно письменно согласовывать с Банком внесение изменений в проект строительства (в т.ч. проектную документацию), изменение сроков строительства, изменение размера площадей, изменение целей назначения площадей.

8. Не осуществлять/согласовывать с Банком заимствование (привлечение) денежных средств (т.е. получение кредитов, и иных форм привлечения денежных средств на возвратной и возмездной основе), а также предоставления заемщиком поручительств/гарантий по обязательствам третьих лиц.

9. Не предоставлять займы третьим лицам, не осуществлять покупку ценных бумаг, в том числе в вексельной форме.

10. Обеспечить своевременное продление разрешения на строительство объекта.

11. До полного исполнения обязательств по Кредитному договору не проводить (обеспечить не проведение) без письменного согласования с Банком:

- изменения состава участников Заемщика в том числе изменение принадлежащей определенному лицу или лицам (бенефициару/бенефициарам) возможности прямо или косвенно оказывать существенное влияние на порядок управления Заемщиком;
- изменения размера уставного капитала Заемщика;
- изменения организационно-правовой формы Заемщика;
- изменения органов управления Заемщика.

12. В случае увеличения/изменения уставного капитала Заемщика, обеспечить оформление в залог Банку 100% долей в УК с учетом его увеличения, в течение 30 дней.

13. Обеспечить соответствие запрашиваемого объема финансирования, графику финансирования и этапам выполнения СМР по проекту.

14. Обеспечить целевое использование кредитных средств, посредством предоставления актов КС-2 и справок КС-3.

15. Обеспечить соответствие данных КС-2 и КС-3 фактически выполненному объему работ (физическое подтверждение) и плановым показателям.

16. Обеспечить реализацию имущественных прав на получение в собственность площадей в Объекте (проект в Митино) и/или привлечение средств участников долевого строительства в рамках 214-ФЗ "Об участии в долевом строительстве многоквартирных домов и иных объектов недвижимости и о внесении изменений в некоторые законодательные акты РФ".

3

17. Не отчуждать без согласования с Банком, имущество, принадлежащее Заемщику, если сумма сделки или несколько взаимосвязанных сделок превышает 5 млн. рублей, а также, если условия отчуждения такого имущества противоречат положениям о разграничении компетенции (Приложение № 1 к настоящему соглашению).

18. На ежемесячной основе согласовывать с Банком количество квартир (с указанием их характеристик: метры, стоимость, расположение и т.п.) к продаже на следующий месяц.

19. Не совершать без письменного согласования с Банком, сделки, связанные с обременением, залогом активов Заемщика.

20. Без письменного согласования с Банком не осуществлять распределение чистой прибыли между участниками ООО «НДВ Строй» в течение всего периода кредитования.

21. Обеспечить предоставление информации по площадям и цене реализованных помещений по форме клиента, согласованной с Кредитным департаментом Банка, начиная с момента начала продаж, подтвержденными выписками ЕГРП на ежеквартальной основе.

22. Перечислять не позднее 5 рабочих дней не менее 10% денежных средств, поступивших в результате реализации помещений в Объекте, в счет досрочного погашения задолженности по кредиту.

23. Предоставление в Банк надлежащим образом оформленного полного пакета ИРД по проекту 1-й очереди (в т.ч. разрешение на строительство) не позднее 31.12.2015.

24. Страхование строительно-монтажных работ и связанных с ними рисков (материальный ущерб - СМР, материалы, используемые при строительстве объекта), на сумму не менее суммы ссудной задолженности, где выгодоприобретателем является Банк.

25. Предоставление Застройщиком Банку действующего договора страхования гражданской ответственности застройщика за неисполнение или ненадлежащее исполнение обязательств по передаче жилого помещения по ДДУ в строительстве в строящихся объектах в Объекте, который должен удовлетворять требованиям, указанным в ФЗ «Об участии в долевом строительстве многоквартирных домов и иных объектов недвижимости и о внесении изменений в некоторые законодательные акты РФ» от 30.12.2004 № 214-ФЗ.

26. Обеспечить предоставление в Банк в течение 90 календарных дней с момента ввода построенного Объекта в эксплуатацию свидетельства о праве собственности на нереализованные площади Объекта.

27. Заключение в течение 60 календарных дней с момента получения свидетельства о праве собственности на построенный Объект договора ипотеки на нереализованные площади Объекта.

28. Предоставление в Банк первого зарегистрированного ДДУ в течение 90 дней с момента получения РНС.

29. Обеспечить объем исковых требований к Заемщику не более 10% от валюты баланса.

30. Обеспечить предоставление в Банк копии надлежащим образом оформленных изменений в проектную декларацию, не позднее 15 календарных дней с момента внесения изменений.

31. Обеспечить согласование с Банком основных договоров по затратной части Проекта, в том числе:
- договора генерального подряда;
- договора на выполнение функций технического Заказчика;
- договоров на поставку технологического оборудования и др.

32. Обеспечить предоставление иной информации по требованию Банка, в том числе, но не ограничиваясь:
- бухгалтерской отчетности ООО «НДВ Строй», с расшифровками незавершенного строительства в разрезе объектов и статей затрат

4

Проекта, кредитов и займов, привлеченных средств дольщиков;
- ОСВ по счетам 60,62,76,66,67,58,08,86,01. Анализ 51 счета в разрезе по счетам и Банкам в помесячной разбивке.
- справок по продаже площадей Проекта по форме Банка;
- справок по финансированию Проекта по форме Банка;
- актуализированного CF Проекта.
33. Предоставление Договора № 3-1 залога прав аренды земельного участка от 17.12.2014 г. с отметкой о государственной регистрации ипотеки – до 15/12/2015.

В случае невыполнения перечисленных в пп. 2 (по Продукту 1); 3, 5,6, 10, 12-14, 18, 21-24 (по Продукту 1 (выборка лимита свыше 375 000 000 руб.), Продукту 2) условий (любого), Банк имеет право повысить ставку за пользование кредитом на 1% за невыполненное условие. Процентная ставка может быть восстановлена, до первоначального уровня, в период, следующий за периодом, в котором состоялось исполнение нарушения

В случае невыполнения по Продукту 1 (выборка лимита свыше 375 000 000 руб.), Продукту 2 перечисленных в пп. 7-9, 11, 16-17, 19-20 условий (любого), Банк имеет право на досрочное истребование задолженности Заемщика перед Банком, образовавшейся на момент требования Банка.

| Дополнительные условия | 1. Предусмотреть вывод средств из проекта, полученных от реализации объекта, в размере не более 89 700 314,19 рублей (компенсационных расходов в размере 72 612 600 рублей + 6 000 000 рублей накладных расходов + 11 087 664,19 рублей проектных расходов  на возмещение расходов, понесенных АО ХК «ГВСУ «Центр». Вывод средств допускается осуществлять из первого объема реализации жилых и нежилых помещений. |
| --- | --- |
|  | 2. Предусмотреть коллегиальное согласование участниками Компании по выбору партнеров и условий по реализации объектов недвижимости в рамках проекта. |
|  | 3. В случае возникновения потребности в дополнительном финансировании проекта, стороны (инициаторы проекта/бенефициары) обязуются осуществлять финансирование дополнительных расходов за счет собственных средств, либо за счет заемных средств привлеченных от третьих лиц на принципах субординации к кредитным средствам Банка. |
|  | 4. В случае, если какая-либо из сторон, будет намерена осуществить продажу прав на принадлежавшие ей активы в рамках проекта (намерение «выхода» из проекта), предусмотреть: |
|  | - приоритетное приобретение прав на данные активы проекта текущими инициаторами/участниками проекта, либо |
|  | - погашение данной стороной части долга перед ПСБ пропорционально размеру продаваемых активов. |
|  | Механизм реализации данного пункта указывается в отдельном акционерном соглашении. |
| Юридические условия | 1. Определить компанию для реализации совместного проекта в форме общества с ограниченной ответственностью – ООО «НДВ Строй» (далее Компания). |
|  | Стороны подтверждают, что ранее Компания принадлежала лицам, подконтрольным А.А. Хрусталеву, в связи с чем  А.А. Хрусталев гарантирует отсутствие каких-либо обстоятельств, в том числе существенных обязательств или оснований для привлечения к ответственности, возникших до распределения долей в Компании на условиях настоящего документа и влекущих для Компании негативные последствия. Данное условие будет отражено в |

5

соглашении участников.

2. ООО «НДВ-Групп» обязуется привести устав Компании в соответствие с договоренностями, изложенными в настоящем соглашении.

3. <u>Доли участия в Компании</u> должны быть распределены следующим образом: 15% - ООО «НДВ-Групп», 35% - APORFOTIA TRADING LTD или иная компания по согласованию с Банком, 25% - компания по согласованию с Черкасовым М.А., 25% - компания по согласованию с Долиным А.В. Для этих целей ООО «НДВ-Групп», являющееся 100% собственником Компании, передает по номиналу 75% долей в уставном капитале Компании компаниям, указанным выше.

4. <u>Распределение дохода</u> от реализации совместного проекта: доход от реализации проекта распределяется после погашения суммы кредита пропорционально долям участия.

5. <u>Управление в Компании</u>: управление в Компании осуществляется из следующего принципа распределения голосов - 51% голосов принадлежит ООО «НДВ-Групп» и APORFOTIA TRADING LTD (или иной компании по согласованию с Банком) в совокупности, 49% голосов принадлежит компаниям, указанным по согласованию с Черкасовым М.А. и Долиным А.В. в совокупности. В случае отсутствия согласия между ООО «НДВ-Групп» и APORFOTIA TRADING LTD (или иной компании по согласованию с Банком), указанные стороны голосуют в следующей пропорции: 15% голосов принадлежит ООО «НДВ-Групп» и 36% голосов принадлежит APORFOTIA TRADING LTD (или иной компании по согласованию с Банком). Данный принцип действует до полного погашения кредитов в Банке, указанных в разделе «Лимит кредитования» или выданных в последующем.

6. <u>Органы управления</u>: Стороны договорились определить следующие органы управления Компании – Общее собрание участников, Правление в составе Генерального директора и представителя группы компаний Промсвязь, Генеральный директор – представитель Черкасова М.А. и Долина А.В., финансовый директор – представитель группы компаний Промсвязь.

7. <u>Компетенция органов управления</u>: В соответствии с разграничением компетенций, являющимся Приложением №1 к настоящему соглашению.

8. <u>Финансирование Компании</u>: в случае, если объема Продуктов 1 и 2 будет недостаточно для реализации совместного проекта, Стороны самостоятельно предпримут все необходимые действия по поиску дополнительного финансирования для реализации проекта.

9. <u>Условия выхода из участника Компании из проекта</u>: выход осуществляется путем продажи своей доли остальным участникам Компании по номинальной стоимости. Обязательным условием выхода участника Компании из проекта является погашение объема обязательств Компании пропорциональное его доли участия, за исключениями, установленными п.10 настоящего раздела.

10. APORFOTIA TRADING LTD (или иная компании по согласованию с Банком – участник ООО «НДВ Строй»), не являясь специалистом в строительной области способным оказывать влияние на соответствующие процессы, вправе выйти из Компании без принятия на себя пропорционального объема обязательств при наступлении любого из следующих условий:

- незаключение дополнительного соглашения к инвестконтракту на 2-ю очередь проекта (п. 7.3.1 инвестконтракта), и соглашение об уступке на остальные земельные участки (п.

7.3.2 инвестконтракта) не позднее 19.11.2018;

- отказ Фабрике или Компании в заключении доп. соглашений к договору аренды или нового договора аренды и/или в случае инициирования оспаривания в суде изменения категории земель, вида разрешённого использования, договора аренды или доп. соглашений к нему, а также соглашения о перенайме аренды (не дожидаясь решения суда);
- приостановление или запрещение строительства Объекта или его части по требованиям третьих лиц, в том числе в результате оспаривания решения на строительство;
- незаключение Компанией договора участия в долевом строительстве с Фабрикой по первой очереди до 19.07.2016;
- вид разрешённого использования земельных участков не изменён в срок до 11.12.2015 по 1-й очереди, до 22.01.2018 по 2-й очереди;
- не получено положительное заключение строительной экспертизы в срок до 11.04.2016 по 1-й очереди, до 22.05.2018 по 2-й очереди;
- не получено разрешение на строительство в срок до 19.05.2016 по 1-й очереди, до 03.07.2018 по 2-й очереди.

11. Корпоративный договор: стороны одновременно с приобретением долей заключают корпоративный договор, содержащий условия п.п. 4,5,6,9 настоящего раздела.

12. Хрусталев А.А., Черкасов М.А. и Долин А.В. подтверждают отсутствие ограничений и обременений, в результате которых строительство ограничивается или становится невозможным.

Д.Н. Ананьев

М.А. Черкасов

А.А. Хрусталев

А.В. Долин

7

Перевод с русского языка на английский язык
*Translation from Russian*

**INDICATIVE TERMS**
**for setting the lending limit of Limited Liability Company NDV Stroy**

Everything below is solely a description of preliminary terms on which the transaction may be implemented and does not create obligations for Promsvyazbank PJSC (hereinafter, "PSB" or the "Bank") to provide financing. The final implementation of the transaction depends on further due diligence of the borrower, as well as on the parties to the transaction and the project, negotiation of the terms, their approval by the Credit Committee and the Board of Directors of the Bank (if necessary) and proper legal implementation. The list of terms is not complete, final or inclusive of all possible requirements of PSB.

However, if the transaction is implemented, then in any case, during its implementation the terms specified below will be observed, unless otherwise agreed by the Parties.

| | |
|---|---|
| The Borrower | NDV Stroy LLC |
| Type of lending product | Products 1, 2. Credit facility with fixed disbursement limit |
| Purpose of obtaining a lending product, the amount and currency of financing | Product 1<br>Securing the obligations of NDV Stroy LLC within the framework of the preliminary agreement on the assignment of rights and obligations (lease assignment) under the long-term lease agreement for the land plot No. M-08-022112 dated 31 May 2004 (the "lease assignment agreement").<br>Product 2<br>Financing of design work, costs of obtaining technical specifications, and project management |
| Lending limit | Total lending limit: 1,400,000,000.00 rubles<br>Product 1: 750,000,000.00 rubles;<br>Product 2: 650,000,000.00 rubles; |
| Term of financing | Products 1, 2;<br>3 years |
| Interest rate, fees | Products 1, 2. Key rate + 5% per annum.<br>Lending fee – 0.1% of the limit amount to be paid on the date of signing the loan agreement. |
| Procedure for the repayment of the principal debt | On a quarterly basis, starting from the 2nd quarter of 2016, by equal instalments. |
| Interest payment procedure | Products 1, 2: on a quarterly basis. |
| Property | a set of residential, non-residential and mixed-use buildings that will be built on land plots with a total area of 581,303 sq. meters located at the address: Moscow, Mitino district, near Rozhdestveno village. |
| Security | 1. Pledge of the right to claim the return of the security deposit made within the framework of the preliminary agreement on the conclusion of a lease assignment agreement and an investment contract;<br>2. Pledge of 100% participation interests in the Borrower's charter capital (without the pledgor's guarantee); |

*(Signature)*

| | |
|---|---|
| | 3. Pledge of property rights for the Property being sold (Mitino Project);<br>4. Suretyships of A.A. Khrustalyov, Mr. M.A. Cherkasov, A.V. Dolin and D.N. Ananyev (safe deposit). |
| **Conditions precedent to the issuance of the loan** | **Product 1 (with respect to the drawdown limit of up to 375,000,000 rubles).**<br>1. Registration of sureties in accordance with clause 4 of the "Security" section.<br>2. Coordination of targeted spending of credit funds with the Bank.<br><br>**Product 1 (with respect to the drawdown limit of more than 375,000,000 rubles) and Product 2.**<br>1. Submission to the Bank of the Statement of reconciliation of payments on obligations between HC GVSU Center JSC and Krasnogorskaya Poultry Farm CJSC (hereinafter referred to as the Factory) under the preliminary agreement on assignment of rights and obligations (transfer) under the long-term land plot lease contract No. M-08-022112 dated 31.05.2004 under the preliminary agreement on the assignment of rights and obligations (lease assignment) under long-term land lease agreement No. M-08-022112 dated 31 May 2004.<br>2. Provision of extracts from the USRR confirming the existence of a registered right to lease land plots, as well as the absence of encumbrances over this right.<br>3. Absence of obstacles to changing the type of permitted use of land plots at the Property for housing construction, as well as to obtaining a construction permit for the Property.<br>4. Provision of documents confirming that none of the land plots is encumbered by the natural complex regime and any other restrictions and prohibitions on construction (except for encumbrance with the coastal area and water protection zone regimes specified in clause 1.1 of the lease agreement, as well as the protection zone of the power transmission line).<br>5. Provision of copies of the following contracts signed by all parties (with all appendices, amendments and additions thereto) concluded by HC GVDU "Center" JSC/ NDV Stroy LLC:<br>5.1. Land sublease agreement No. S-1 dated 17 December 2014.<br>5.2. An investment contract with the terms defining the land plots related to different stages of construction, and the timing for each stage (the deadlines for concluding an additional agreement defining the scope of 2nd stage obligations, the deadlines for changing permitted use, the deadlines for transferring rights to the land plots and the deadlines for obtaining construction permits).<br>5.3. A preliminary agreement dated 17 December 2014 on the assignment of rights and obligations (lease assignment) under long term land lease No. M-08.022112 dated 31 May 2004.<br>5.4. Pledge agreement for land lease rights No. Z-1 dated 17 December 2014.<br>6. Provision of a document confirming the absence of outstanding lease payments for land plots or any other grounds for early termination of the lease agreement.<br>7. Provision of signed agreements on the transfer of rights and obligations from GVSU to NDV Stroy LLC between GVSU, |

2

*(Signature)*

| | Krasnogorskaya Poultry Farm CJSC and NDV Stroy LLC under all contracts listed in clause 5 of this document and concluded by GVSU.<br>8. Submission of the signed business plan of the project approved by the Bank.<br>9. Negotiation of targeted spending of credit funds with the Bank in accordance with the agreed form.<br>10. Inclusion in the credit documentation of the condition for the allocation of at least 10% of funds received from the sale of premises in the Property for the repayment of loan obligations to the Bank.<br>11. Provision of an up-to-date CF project approved by the Bank.<br><br>**Product 2.**<br>1. Registration of security in accordance with clauses 1-4 of the section "Security".<br>2. Positive opinion confirming the legal capacity of legal entities participating in transactions, as well as the powers of their managers. |
|---|---|
| **Mandatory conditions** | **Product 1.**<br>1. Positive opinion confirming the legal capacity of legal entities participating in transactions, and the powers of their managers – in accordance with the internal documents of the Bank – by 1 October 2015.<br>2. Registration of security in accordance with clauses 1-3 of the section "Security" – by 1 October 2015.<br><br>**Product 1 (with respect to the drawdown limit of more than 375,000,000 rubles) and Product 2.**<br>1. Provision of copies of the following contracts signed by all parties (with all appendices, amendments and additions thereto) concluded between Krasnogorskaya Poultry Farm CJSC and NDV Stroy LLC:<br>1.1. The agreement for participation in shared construction – by 31 December 2015.<br>1.2. The agreement on the partial assignment of rights and obligations (lease assignment) under long-term land lease agreement No. M-08.022112 dated 31 May 2004 – by 10 October 2015.<br>2. Contracts concluded before 1 August 2015 shall be submitted by 7 September 2015, and the remaining contracts – within 5 business days from the date of their conclusion.<br>3. The absence during the entire validity period of the lending limit of any outstanding lease payments for the land plots, as well as any other grounds for early termination of the lease agreement.<br>4. An independent surveyor of the project, the procedure for coordination with the surveyor for the purpose of confirmation of the project budget and its subsequent monitoring, as well as the source of payment for the surveyor's expenses, shall be agreed with the Bank by 18 September 2015.<br>5. To carry out 100% of the turnover associated with settlements and sales on the project through the settlement accounts opened with the Bank during the entire crediting period.<br>6. To carry out 100% of the Developer's and General Contractor's turnover related to settlements and sales on the project through settlement accounts opened with the Bank during the entire lending period. |

*(Signature)*

3

7. Changes in the construction project (including project documentation), changes in the construction period, in the size of the areas, and designation of the areas shall be approved by the Bank in advance in writing.

8. The Borrower shall not borrow funds/shall coordinate such borrowing/attraction of funds with the Bank (i.e., obtaining loans, and other forms of attracting funds on a refundable and reimbursable basis) and shall not provide any sureties/guarantees for third parties' obligations.

9. The Borrower shall not provide loans to third parties and shall not purchase securities, including in the form of a bill.

10. The Borrower shall ensure the timely renewal of the construction permit for the property.

11. The Borrower shall not perform the following actions (or shall ensure that such actions are not performed) until the full fulfillment of its obligations under the Loan Agreement without a written approval of the Bank:
- changing the composition of the Borrower's participants, including change in the ability of certain person(s) (beneficiary/beneficiaries) to influence, directly or indirectly, the procedure for the Borrower's management;
- changing the amount of the Borrower's charter capital;
- changing the corporate form of the Borrower;
- changes in the Borrower's governing bodies.

12. In the event of any increase/change in the Borrower's charter capital, ensure that 100% of participation interests in the charter capital are pledged to the Bank, taking into account its increase, within 30 days.

13. Ensure that the requested amount of financing complies with the financing schedule, as well as stages of construction and installation operations under the project.

14. Ensure the targeted use of credit funds by submitting KS-2 and KS-3 forms.

15. Ensure that information in KS-2 and KS-3 forms is consistent with the actual scope of work performed (physical confirmation) and target figures.

16. to ensure the realization of property rights to obtain the ownership of areas in the Project (the project in Mitino) and/or to raise funds from participants of share construction under the 214-FZ "On Participation in Shared Construction of Apartment Buildings and Other Real Estate and on Amendments to Certain Legislative Acts of the Russian Federation.

17. Not to alienate, without the approval of the Bank, the property owned by the Borrower, if the amount of transaction or several interrelated transactions exceeds 5 million rubles, as well as if the terms of alienation of such property contradict the provisions on distribution of competence (Annex № 1 to this agreement).

18. Negotiate with the Bank on a monthly basis the number of apartments (indicating their characteristics; meters, cost, location, etc.) intended for sale for the next month.

19. The Borrower shall not execute transactions related to encumbrance or pledge of the Borrower's assets without a written approval of the Bank.

20. The Borrower shall not distribute net profits between the

4

*(Signature)*

participants of NDV Story LLC during the entire lending period without a written approval of the Bank.

21. The Borrower shall ensure the provision of information, on a quarterly basis, on areas and price of the sold premises according to the client's form approved by the Credit Department of the Bank, starting from commencement of sales, confirmed by extracts from the USRR.

22. The Borrower shall transfer within 5 business days at least 10% of the funds received as a result of the sale of premises in the Property in connection with early repayment of the loan debt.

23. The Borrower shall submit to the Bank a properly executed full set of initial permits for the 1st stage project (including a construction permit) by 31 December 2015.

24. The Borrower shall provide insurance of construction and installation works and related risks (material damage – construction and installation works, materials used in the construction of the property), for the amount of not less than the amount of loan debt, where the Bank acts as a beneficiary.

25. The Developer shall submit to the Bank a valid contract of insurance of the developer's civil liability for non-fulfillment or improper fulfillment of obligations related to transfer of residential premises under the agreement for participation in shared construction in facilities being built in the Property, which shall meet the requirements set forth in Federal Law No. 214-FZ "On Participation in the Shared Construction of Apartment Houses and Other Immovable Properties and Amendments to Certain Legislative Acts of the Russian Federation", dated 30 December 2004.

26. A certificate of title to the unsold areas of the Property shall be submitted to the Bank within 90 calendar days from the date of commissioning of the constructed Property.

27. A mortgage agreement for the unsold areas of the Property shall be entered into within 60 calendar days of receipt of the certificate of title to the constructed Property.

28. The first registered agreement for participation in shared construction shall be submitted to the Bank within 90 days of receipt of the construction permit.

29. The amount of claims against the Borrower shall not exceed 10% of the balance sheet total.

30. A copy of the duly executed amendments to the project declaration shall be submitted to the Bank within 15 calendar days from the date of making such amendments.

31. The main agreements on the cost-related part of the Project shall be approved by the Bank, including:
   – a general contractor agreement;
   – contracts for performing the functions of a technical customer;
   – contracts for the supply of technological equipment, etc.

32. Other information shall be submitted to the Bank at its request, including, but not limited to:
   – financial statements of NDV Stroy LLC with a breakdown of construction in progress in the context of facilities and cost items of the Project, credit and loans, and attracted funds of participants in shared construction;
   – trial balance on accounts 60, 62, 76, 66, 67, 58, 08, 86, and 01.

*(Signature)*

| | |
|---|---|
| | Analysis of account 51 broken down by accounts and Banks in a monthly breakdown. <br> – statements confirming the sale of the Project areas according to the form provided by the Bank; <br> – statements confirming financing of the Project according to the form provided by the Bank; <br> – up-to-date CF Project. <br> 33. The pledge agreement for land lease rights No. Z-1 dated 17 December 2014 with a note confirming the state registration of the mortgage shall be submitted by 15 December 2015. <br><br> In case of non-fulfillment of any terms listed in paragraphs 2 (with respect to Product 1); 3, 5, 6, 10, 12-14, 18, 21-24 (with respect to Product 1 (drawdown of limit exceeding 375,000,000 rubles), and Product 2), the Bank shall have the right to increase the interest rate for using the loan by 1% for a non-fulfilled condition. The interest rate may be reinstated to its original level in the period following the period in which such violation was committed. <br><br> In the event of non-fulfillment of any terms with respect to Product 1 (drawdown of the limit exceeding 375,000,000 rubles) or Product 2 listed in paragraphs 7-9, 11, 16-17, and 19-20, the Bank shall have the right to request that the Borrower early repay to the Bank its debt which was formed at the time of the Bank's request. |
| **Additional terms** | 1.  To provide for withdrawal of funds from the project received from the sale of the property in the amount of not more than 89,700,314.19 rubles (compensation expenses in the amount of 72,612,600 rubles + overhead expenses in the amount of 6,000,000 rubles + project costs in the amount of 11,087,664.19 rubles related to compensation for expenses incurred by HC GVSU "Center" JSC. It is permitted to withdraw funds from the first sales volume of residential and non-residential premises. <br> 2.  To provide that the Company's participants shall jointly agree upon the choice of partners and conditions for the sale of properties under the project. <br> 3.  If there is a need for additional financing of the project, the parties (project initiators/beneficiaries) undertake to finance additional costs at their own expense, or at the expense of borrowed funds raised from third parties on the principle of subordination to the Bank's credit funds. <br> 4.  If any of the parties intends to sell the rights to the assets belonging to it within the project (intends to "exit" the project), the following shall be provided for: <br> –  priority acquisition of rights to these project assets by the current initiators/participants of the project, or <br> –  repayment by this party of part of the debt to PSB pro rata to the size of the assets being sold. <br> The mechanism of implementation of this clause is specified in a separate shareholders' agreement. |
| **Legal terms** | 1.  It shall be established that NDV Stroy LLC, a limited liability company (the "Company"), shall be chosen for the implementation of a joint project. |

*(Signature)*

6

The parties confirm that the Company was previously owned by persons controlled by A.A. Khrustalyov, in connection with which A.A. Khrustalyov guarantees the absence of any circumstances, including material obligations or grounds for prosecution, that arose before the distribution of participation interests in the Company on the terms of this document and entail adverse consequences for the Company. This condition will be reflected in the participants' agreement.

2. NDV-Group LLC undertakes to bring the charter of the Company in line with arrangements specified in this agreement.

3. Participation interests in the Company shall be distributed as follows: 15% – NDV-Group LLC, 35% – APORFOTIA TRADING LTD or other company agreed with the Bank, 25% – a company agreed with M.A. Cherkasov, 25% – a company agreed with A.V. Dolin. For these purposes, NDV-Group LLC which holds 100% in the Company shall transfer at the nominal value a 75% participation interest in the charter capital of the Company to the companies specified above.

4. Distribution of proceeds from the sale of the joint project: proceeds from the sale of the project shall be distributed after the repayment of the amount of the loan pro rata to participation interests.

5. Governance of the Company: governance of the Company shall be carried out on the basis of the following principle of distribution of votes – 51% the votes shall be jointly held by NDV-Group LLC and APORFOTIA TRADING LTD (or other company agreed with the Bank), and 49% of votes shall be jointly held by companies specified by agreement with M.A. Cherkasov and A.V. Dolin. If there is no agreement between NDV-Group LLC and APORFOTIA TRADING LTD (or other company agreed with the Bank), the aforementioned parties shall vote as follows: 15% of votes shall be held by NDV-Group LLC and 36% f votes shall be held by APORFOTIA TRADING LTD (or other company agreed with the Bank). This principle shall be valid until the full repayment of loans issued by the Bank specified in the section "Lending limit" or issued subsequently.

6. Governing bodies: The parties agreed to define the following governing bodies of the Company – the general meeting of participants, the Management Board consisting of the General Director and a representative of the Promsvyaz group of companies, the General Director – the representative of M.A. Cherkasov and A.V. Dolin, financial director финансовый директор – the representative of Promsvyaz group of companies.

7. Competence of the governing bodies: In accordance with the distribution of competences specified in Annex 1 to this agreement.

8. Financing of the Company: if the volume of Products 1 and 2 is not sufficient for the implementation of a joint project, the Parties will independently take all necessary actions to find additional financing for the implementation of the project.

9. Conditions for the exit by a participant of the Company from the project: exit from the project shall be carried out through the sale of his participation interest to other participants of the Company at the nominal value. A mandatory condition for the exit by a participant

*(Signature)*

of the Company from the project is the repayment of the scope of the Company's obligations pro rata to his participation interest, subject to exceptions set out in clause 10 of this section.

10. APORFOTIA TRADING LTD (or other company agreed with the Bank – a participant in NDV-Stroy LLC), which is not a construction specialist capable of influencing the respective processes, may withdraw from the Company without assuming a proportional amount of obligations upon the occurrence of any of the following conditions:

- failure to sign an addendum to the investment contract for the 2nd stage of the project (clause 7.3.1 of the investment contract) and an assignment agreement for the remaining land plots (clause 7.3.2 of the investment contract) by 19 November 2018;
- denial of amendment or renewal of the existing lease agreement with the Farm or the Company and/or challenging in court of any change in the category of lands, type of permitted use, the lease agreement or addenda thereto, as well as the lease assignment agreement is being initiated (without waiting for a court decision);
- suspension or prohibition of construction of the Property or its part at the request of third parties, including as a result of challenging a construction decision;
- failure by the Company to enter into an agreement for participation in shared construction with the Farm for the 1st stage by 19 July 2016;
- the type of permitted use of land plots is not changed by 11 December 2015 for the 1st stage and by 22 January 2018 for the 2nd stage;
- a positive opinion of the construction experts is not received by 11 April 2016 for the 1st stage and by 22 May 2018 for the 2nd stage;
- a construction permit is not received by 19 May 2016 for the 1st stage and by 3 July 2018 for the 2nd stage.

11. Corporate agreement: the parties, simultaneously with the acquisition of shares, enter into a corporate agreement containing the terms of clauses 4, 5, 6, and 9 of this section.

12. A.A. Khrustalyov, M.A. Cherkasov and A.V. Dolin confirm that there are no restrictions and encumbrances, as a result of which construction is limited or becomes impossible.

|  |  |  |
|---|---|---|
| *(Signature)* | *(Signature)* | *(Signature)* |
| D.N. Ananyev | M.A. Cherkasov | A.A. Khrustalyov |

*(Signature)*
A.V. Dolin

*A.V. Afanasiev*

*(Signature)*

8

Case 1:21-mc-23332-BB  Document 1-5  Entered on FLSD Docket 09/15/2021  Page 25 of 142

*Перевод данного текста выполнен переводчиком*
*Краплиным Денисом Александровичем*
*This text was translated by a translator Kraplin Denis Alexandrovich*


/signature/

**Российская Федерация**

**Russian Federation**

**Город Москва.**
    **Двадцать восьмого января две тысячи двадцать первого года.**
    Я, Прокошенкова Елена Евгеньевна, нотариус города Москвы, свидетельствую подлинность подписи переводчика Краплина Дениса Александровича.
    Подпись сделана в моем присутствии.
    Личность подписавшего документ установлена.

**Moscow city.**
    **The twenty-eighth of January, two thousand and twenty-first year.**
    I, Prokoshenkova Elena Evgenievna, Notary Public of Moscow, hereby certify authenticity of the signature made by the translator Kraplin Denis Alexandrovich.
    The signature is made in my presence.
    The identity of the person who signed the document is verified.



Зарегистрировано в реестре: № 21/86-н/77-2021- *Ч/554*

Registered in the register under No. 21/86-н/77-2021- *Ч/554*

Уплачено за совершение нотариального действия: 400 руб. 00 коп.

Paid for the performance of a notarial act: 400 rubles 00 kopecks.

Е.Е. Прокошенкова

/signature/ E.E. Prokoshenkova

*Coat-of-arms seal: Notary Public of Moscow Prokoshenkova E. E. * Taxpayer Identification Number 212901853874*

Прошнуровано, пронумеровано и скреплено печатью 15 лист(-а, -ов).

Bound, numbered and sealed 15 sheets

Е.Е. Прокошенкова

/signature/ E.E. Prokoshenkova

*Coat-of-arms seal: Notary Public of Moscow Prokoshenkova E. E. * Taxpayer Identification Number 212901853874*



### Изменение Индикативных условий

Настоящее Изменение Индикативных условий установления лимита кредитования компании Общества с ограниченной ответственностью «НДВ-Строй», заключенных «15» сентября 2015 года между г-ном Ананьевым Д.Н., г-ном Хрусталевым А.А., г-ном Черкасовым М.А. и г-ном Долиным А.В., далее по тексту именуется «Изменение», согласовано и подписано г-ном Ананьевым Д.Н., г-ном Долиным А.В. и г-ном Черкасовым М.А., далее совместно именуются «Стороны» и по отдельности «Сторона», в Москве **20 июня 2016 года**.

ПРИНИМАЯ ВО ВНИМАНИЕ, ЧТО

☐ **Общество с ограниченной отвесностью «Рождествено»** (ранее – Общество с ограниченной ответственностью «НДВ-Строй»), далее по тексту именуется – **«Общество»**, выполнило взятые на себя обязательства и подписало (1) Кредитный договор об открытии кредитной линии (с установленным лимитом выдачи) № 0450-15-2-0 от 31 августа 2015 года с изменениями и дополнениями, заключенного между Публичным акционерным обществом «Промсвязьбанк», в качестве Кредитора, и Обществом, в качестве Должника, и (2) Кредитный договор об открытии кредитной линии (с установленным лимитом выдачи) № 0494/15-2-0 от 29 сентября 2015 года с изменениями и дополнениями, заключенного между Публичным акционерным обществом «Промсвязьбанк», в качестве Кредитора, и Обществом, в качестве Должника;

☐ 20 июня 2016 года между **Акционерным обществом «Рождествено»** (ОГРН 1167746519698) в качестве **Покупателя**, и **Обществом с ограниченной ответственностью «НДВ групп»**, в качестве **Продавца**, подписан Договор купли-продажи доли в уставном капитале Общества с ограниченной ответственностью «Рождествено» в размере 100% уставного капитала.

СТОРОНЫ НАСТОЯЩИМ ДОГОВОРИЛИСЬ О НИЖЕСЛЕДУЮЩЕМ:

1. Одобрить выход Хрусталева А.А. из Проекта посредством продажи 100% доли Общества Покупателю и освобождение Хрусталева А.А. от любых ранее взятых на себя обязанностей (далее – «Выход Хрусталева А.А. из Проекта»), за исключением обязательств, указанных в разделе 3 настоящих Изменений и иных обязательств, установленных настоящими Изменениями;

2. Подтвердить отсутствие каких-либо претензий к Хрусталеву А.А., связанных с выходом Хрусталева А.А. из Проекта и продажей 100% (Ста процентов) доли в уставном капитале Общества Покупателю;

3. В соответствии со статьей 406.1 ГК РФ Хрусталев А.А. обязуется возместить имущественные потери Общества и/или его Участников (в том числе суммы всех выплат Общества и/или его Участников по требованиям любых государственных органов или третьих лиц, а также расходы Общества и/или его Участников, связанные с получением ими возмещения указанных имущественных потерь, в том числе затраты на получение юридических услуг и иные расходы в связи с возмещением имущественных потерь (в том числе в судебном порядке)), возникшие в результате какого-либо события, которое произошло до 1 октября 2015 года, при этом указанные имущественные потери должны быть разумными и документарно подтвержденными и не должны возникнуть в результате действий, инициированных и/или совершенных Обществом, его участники и/или г-ном Ананьевым Д.Н.. При этом Покупатель, все участники Покупателя, Общество и/или Ананьев Д.Н. обязуются предпринять все необходимые и разумные меры для надлежащей защиты Общества от претензий государственных налоговых органов либо иных кредиторов.

4.  Изложить п. 5 раздела «Юридические условия» в следующей редакции:

    «Управление в Компании: управление в Компании осуществляется из следующего принципа распределения голосов - 51% голосов принадлежит компании, указанной Ананьевым Д.Н., 49% голосов принадлежит компании, указанной Черкасовым М.А. и Долиным А.В. Данный принцип действует до полного погашения кредитов в Банке, указанных в разделе «Лимит кредитования» или выданных в последующем.».

5.  Стороны предоставят Хрусталеву А.А. возможность участия во всех тендерных комитетах и строительных совещаниях в рамках Проекта с правом голоса, учитывающимся при принятии решения по вопросам, связанным с экономией в рамках Проекта, увеличением расходов и /или уменьшением прибыли Проекта, при этом Сторона-1 обязуется руководствоваться исключительно интересами Проекта.

6.  Во всем остальном, что не предусмотрено настоящим Изменением, Стороны руководствуются условиями Индикативных условий.

7.  Настоящее Изменение вступает в силу с момента подписания Сторонами и является неотъемлемой частью Индикативных условий.

8.  Настоящее Изменение составлено в 4 (четырех) экземплярах, по одному для каждой из Сторон и 1 (один) экземпляр – для г-на Хрусталева А.А., каждый из которых считается подлинником, а вместе они составляют один и тот же документ. Настоящее Изменение может быть подписано и переправлено в виде сканированной копии по электронной почте, при этом оно будет иметь полную силу и обязательно для исполнения всеми Сторонами. Любые документы по настоящему Изменению, направляемые Сторонами друг другу в виде сканированной копии по электронной почте, будут иметь силу до момента получения соответствующей Стороной оригинала документа направленного по электронной почте.

ПОДПИСИ СТОРОН:

_____        _____        _____
Ананьев Д.Н.                     Долин А.В.                       Черкасов М.А.

_____
Хрусталев А.А.

Перевод с русского языка на английский язык

*Translation from Russian*

**Amendment to the Indicative Terms**

This Amendment to the Indicative Terms for setting the lending limit of Limited Liability Company NDV-Stroy, entered into on 15 September 2015 between Mr. D.N. Ananyev, Mr. A.A. Khrustalyov, Mr. M.A. Cherkasov and Mr. A.V. Dolin, hereinafter referred to as the "Amendment", has been agreed upon and signed by Mr. D.N. Ananyev, Mr. A.V. Dolin and Mr. M.A. Cherkasov, hereinafter jointly referred to as the "Parties" and each individually, the "Party", in Moscow on **20 June 2016**.

WHEREAS:

☐ **Limited Liability Company "Rozhdestveno"** (previous name – Limited Liability Company "NDV-Stroy"), hereinafter referred to as the "Company", fulfilled its obligations and signed (1) Credit Facility Agreement (with fixed disbursement limit) No. 0450-15-2-0 dated 31 August 2015 (as amended) entered into between Promsvyazbank Public Joint-Stock Company as a Lender and the Company as a Debtor, and (2) Credit Facility Agreement (with fixed disbursement limit) No. 0494-15-2-0 dated 29 September 2015 (as amended) entered into between Promsvyazbank Public Joint-Stock Company as a Lender and the Company as a Debtor;

☐ On June 20, 2016, **Joint stock company "Rozhdestveno"** (Principal State Registration Number 1167746519698) as the **Purchaser** and **Limited Liability Company "NDV Group"** as the **Seller** signed the Agreement for the Sale of a 100% Participation Interest in the Charter Capital of Limited Liability Company "Rozhdestveno".

THE PARTIES AGREED AS FOLLOWS:

1. To approve A.A. Khrustalyov's withdrawal from the Project through the sale of a 100% participation interest in the Company to the Purchaser and A.A. Khrustalyov's release from any of the previously assumed obligations ("A.A. Khrustalyov's Withdrawal from the Project"), with the exception of obligations specified in section 3 of this Amendment and other obligations established by this Amendment;

2. To confirm the absence of any claims against A.A. Khrustalyov associated with A.A. Khrustalyov's withdrawal from the Project and the sale of a 100% participation interest in the Company's charter capital to the Purchaser;

3. Pursuant to article 406.1 of the RF Civil Code, A.A. Khrustalyov agrees to compensate property losses suffered by the Company and/or its Participants (including the amounts of all payments made by the Company and/or its Participants in connection with any claims of government authorities or third parties, as well as expenses incurred by the Company and/or its Participants in connection with recovery of the above property losses, including the costs of obtaining legal services and other expenses related to recovery of property losses (including in court)), incurred as a result of any event which occurred before 1 October 2015, provided that such property losses shall be reasonable and shall be duly documented and shall not arise as a result of actions initiated and/or performed by the Company, its participants and/or Mr. D.N. Ananyev; and further provided that the Purchaser, all participants of the Purchaser, the Company and/or Mr. D.N. Ananyev shall take all reasonable and necessary measures to properly protect the Company from claims of state tax authorities or other creditors.

4. Clause 5 of the section "Legal terms" shall be amended to read as follows:

"Governance of the Company: governance of the Company shall be carried out on the basis of the following principle of distribution of votes – 51% of the votes shall be held by the company specified by D.N. Ananyev, and 49% of the votes shall be held by the company specified by M.A. Cherkasov and A.V. Dolin. This principle shall be valid until full repayment of loans issued by the Bank specified in the section "Lending limit" or issued subsequently".

5. The Parties will allow A.A. Khrustalyov to participate in all tender committees and construction meetings within the framework of the Project with the right to vote, taking into account when making decisions on issues related to savings within the framework of the Project, increase in costs and/or decrease in profits of the Project, with Party-1 undertaking to be guided solely by the interests of the Project.

6. In all other matters that are not provided for by this Amendment, the Parties shall be guided by provisions of the Indicative Terms.

7. This Amendment shall enter into force upon signature by the Parties and shall be an integral part of the Indicative Terms.

8. This Amendment is made in four (4) counterparts, one for each Party and one (1) for Mr. A.A. Khrustalyov, each shall be deemed to be an original and all of them taken together shall constitute one and the same document. This Amendment may be signed and transmitted as a scanned copy by email, and shall be in full force and effect and binding on all Parties. Any documents under this Amendment sent by the Parties to each other in the form of a scanned copy by email shall be effective until the original document sent by email is received by the relevant Party.

## SIGNATURES OF THE PARTIES:

| _(Signature)_ | _(Signature)_ | _(Signature)_ |
|---|---|---|
| D.N. Ananyev | A.V. Dolin | M.A. Cherkasov |

as

_(Signature)_

A.A. Khrustalyov

*Перевод данного текста выполнен переводчиком Краплиным Денисом Александровичем*
*This text was translated by a translator Kraplin Denis Alexandrovich*


/signature/

| | |
|---|---|
| **Российская Федерация** | **Russian Federation** |

**Город Москва.**
**Двадцать восьмого января две тысячи двадцать первого года.**
Я, Прокошенкова Елена Евгеньевна, нотариус города Москвы, свидетельствую подлинность подписи переводчика Краплина Дениса Александровича.
Подпись сделана в моем присутствии.
Личность подписавшего документ установлена.

**Moscow city.**
**The twenty-eighth of January, two thousand and twenty-first year.**
I, Prokoshenkova Elena Evgenievna, Notary Public of Moscow, hereby certify authenticity of the signature made by the translator Kraplin Denis Alexandrovich.
The signature is made in my presence.
The identity of the person who signed the document is verified.



Зарегистрировано в реестре: № 21/86-н/77-2021- *Ч /553*

Registered in the register under No. 21/86-н/77-2021- *Ч /553*

Уплачено за совершение нотариального действия: 400 руб. 00 коп.

Paid for the performance of a notarial act: 400 rubles 00 kopecks.

Е.Е. Прокошенкова

/signature/ E.E. Prokoshenkova

*Coat-of-arms seal: Notary Public of Moscow Prokoshenkova E. E. * Taxpayer Identification Number 212901853874*

Прошнуровано, пронумеровано и скреплено печатью Ч лист(-а,-ов).

Bound, numbered and sealed Ч sheets

Е.Е. Прокошенкова

/signature/ E.E. Prokoshenkova

*Coat-of-arms seal: Notary Public of Moscow Prokoshenkova E. E. * Taxpayer Identification Number 212901853874*

# EXHIBIT B

# ВЫПИСКА
## из Единого государственного реестра юридических лиц

21.06.2021

дата формирования выписки

№   ЮЭ9965-21-163124271

Настоящая выписка содержит сведения о юридическом лице

### ОБЩЕСТВО С ОГРАНИЧЕННОЙ ОТВЕТСТВЕННОСТЬЮ "КАПИТАЛ ГРУП ДЕВЕЛОПМЕНТ"

полное наименование юридического лица

**ОГРН** | 1 | 1 | 4 | 7 | 7 | 4 | 6 | 4 | 8 | 0 | 2 | 1 | 0 |

включенные в Единый государственный реестр юридических лиц по состоянию на

« 21 »   июня   20 21 г.

число   месяц прописью   год

| № п/п | Наименование показателя | Значение показателя |
|---|---|---|
| 1 | 2 | 3 |
| | **Наименование** | |
| 1 | Полное наименование на русском языке | ОБЩЕСТВО С ОГРАНИЧЕННОЙ ОТВЕТСТВЕННОСТЬЮ "КАПИТАЛ ГРУП ДЕВЕЛОПМЕНТ" |
| 2 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |
| 3 | Сокращенное наименование на русском языке | ООО "КАПИТАЛ ГРУП ДЕВЕЛОПМЕНТ" |
| 4 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |
| | **Место нахождения и адрес юридического лица** | |
| 5 | Место нахождения юридического лица | ГОРОД МОСКВА |
| 6 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 2187749755466 28.09.2018 |
| 7 | Адрес юридического лица | 123112, ГОРОД МОСКВА, НАБЕРЕЖНАЯ ПРЕСНЕНСКАЯ, ДОМ 8, СТРОЕНИЕ 1, ЭТ 16 ПОМ I КОМ 45 |
| 8 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 2187749755466 28.09.2018 |
| | **Сведения о регистрации** | |
| 9 | Способ образования | Создание юридического лица |
| 10 | ОГРН | 1147746480210 |
| 11 | Дата регистрации | 29.04.2014 |

| 12 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210<br>29.04.2014 |
|---|---|---|
| | | |
| **Сведения о регистрирующем органе по месту нахождения юридического лица** | | |
| 13 | Наименование регистрирующего органа | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| 14 | Адрес регистрирующего органа | 125373, г.Москва, Походный проезд, домовладение 3, стр.2 |
| 15 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210<br>29.04.2014 |
| | | |
| **Сведения о лице, имеющем право без доверенности действовать от имени юридического лица** | | |
| 16 | ГРН и дата внесения в ЕГРЮЛ сведений о данном лице | 9167746980689<br>29.04.2016 |
| | | |
| 17 | Фамилия<br>Имя<br>Отчество | ГРЕБЕНЬКОВА<br>МАРИЯ<br>ПАВЛОВНА |
| 18 | ИНН | 732591606117 |
| 19 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 9167746980689<br>29.04.2016 |
| | | |
| 20 | Должность | ГЕНЕРАЛЬНЫЙ ДИРЕКТОР |
| 21 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 9167746980689<br>29.04.2016 |
| | | |
| **Сведения об уставном капитале / складочном капитале / уставном фонде / паевом фонде** | | |
| 22 | Вид | УСТАВНЫЙ КАПИТАЛ |
| 23 | Размер (в рублях) | 30000 |
| 24 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 6147747073446<br>30.06.2014 |
| | | |
| **Сведения об участниках / учредителях юридического лица** | | |
| **1** | | |
| 25 | ГРН и дата внесения в ЕГРЮЛ сведений о данном лице | 6147747073446<br>30.06.2014 |
| | | |
| 26 | Фамилия<br>Имя<br>Отчество | ДОРОНИН<br>ВЛАДИСЛАВ<br>отсутствует |
| 27 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 6147747073446<br>30.06.2014 |
| | | |
| 28 | Номинальная стоимость доли (в рублях) | 10000 |
| 29 | Размер доли (в простых дробях) | 1/3 |
| 30 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 6147747073446<br>30.06.2014 |

| | **2** | |
|---|---|---|
| 31 | ГРН и дата внесения в ЕГРЮЛ сведений о данном лице | 6147747073446<br>30.06.2014 |
| | | |
| 32 | Фамилия<br>Имя<br>Отчество | ТЁ<br>ПАВЕЛ<br>ВЛАДИМИРОВИЧ |
| 33 | ИНН | 770300643207 |
| 34 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 6147747073446<br>30.06.2014 |
| | | |
| 35 | Номинальная стоимость доли (в рублях) | 10000 |
| 36 | Размер доли (в простых дробях) | 1/3 |
| 37 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 7147747321870<br>08.08.2014 |
| | | |
| | **3** | |
| 38 | ГРН и дата внесения в ЕГРЮЛ сведений о данном лице | 6147747073446<br>30.06.2014 |
| | | |
| 39 | Фамилия<br>Имя<br>Отчество | БЕРМАН<br>ЭДУАРД<br>БОРИСОВИЧ |
| 40 | ИНН | 771921205600 |
| 41 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 6197746568530<br>08.02.2019 |
| | | |
| 42 | Номинальная стоимость доли (в рублях) | 10000 |
| 43 | Размер доли (в простых дробях) | 1/3 |
| 44 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 7147747321870<br>08.08.2014 |
| | | |
| | **Сведения об учете в налоговом органе** | |
| 45 | ИНН юридического лица | 7703810442 |
| 46 | КПП юридического лица | 770301001 |
| 47 | Дата постановки на учет в налоговом органе | 29.04.2014 |
| 48 | Сведения о налоговом органе, в котором юридическое лицо состоит (для юридических лиц, прекративших деятельность - состояло) на учете | Инспекция Федеральной налоговой службы № 3 по г.Москве |
| 49 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 9147746076250<br>29.04.2014 |
| | | |
| | **Сведения о регистрации в качестве страхователя в территориальном органе Пенсионного фонда Российской Федерации** | |
| 50 | Регистрационный номер | 087103126027 |
| 51 | Дата регистрации в качестве страхователя | 05.05.2014 |

| 52 | Наименование территориального органа Пенсионного фонда Российской Федерации | Государственное учреждение - Главное Управление Пенсионного фонда РФ №10 Управление №3 по г. Москве и Московской области муниципальный район Пресненское, Арбат г.Москвы |
| 53 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 9147746228192 06.05.2014 |

### Сведения о регистрации в качестве страхователя в исполнительном органе Фонда социального страхования Российской Федерации

| 54 | Регистрационный номер | 773604717577181 |
| 55 | Дата регистрации в качестве страхователя | 05.12.2017 |
| 56 | Наименование исполнительного органа Фонда социального страхования Российской Федерации | Филиал №18 Государственного учреждения - Московского регионального отделения Фонда социального страхования Российской Федерации |
| 57 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 7187746848282 30.01.2018 |

### Сведения о видах экономической деятельности по Общероссийскому классификатору видов экономической деятельности

#### *Сведения об основном виде деятельности*

*(ОКВЭД ОК 029-2014 (КДЕС Ред. 2))*

| 58 | Код и наименование вида деятельности | 70.22 Консультирование по вопросам коммерческой деятельности и управления |
| 59 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |

#### *Сведения о дополнительных видах деятельности*

*(ОКВЭД ОК 029-2014 (КДЕС Ред. 2))*

**1**

| 60 | Код и наименование вида деятельности | 64.99 Предоставление прочих финансовых услуг, кроме услуг по страхованию и пенсионному обеспечению, не включенных в другие группировки |
| 61 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |

**2**

| 62 | Код и наименование вида деятельности | 68.10 Покупка и продажа собственного недвижимого имущества |
| 63 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |

**3**

| 64 | Код и наименование вида деятельности | 68.10.1 Подготовка к продаже собственного недвижимого имущества |
| 65 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |

| | | 4 | |
|---|---|---|---|
| 66 | Код и наименование вида деятельности | 68.20 Аренда и управление собственным или арендованным недвижимым имуществом | |
| 67 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 | |

| | | 5 | |
|---|---|---|---|
| 68 | Код и наименование вида деятельности | 68.31 Деятельность агентств недвижимости за вознаграждение или на договорной основе | |
| 69 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 | |

| | | 6 | |
|---|---|---|---|
| 70 | Код и наименование вида деятельности | 70.10.2 Деятельность по управлению холдинг-компаниями | |
| 71 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 | |

| | | 7 | |
|---|---|---|---|
| 72 | Код и наименование вида деятельности | 71.11.1 Деятельность в области архитектуры, связанная с созданием архитектурного объекта | |
| 73 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 | |

| | | 8 | |
|---|---|---|---|
| 74 | Код и наименование вида деятельности | 82.99 Деятельность по предоставлению прочих вспомогательных услуг для бизнеса, не включенная в другие группировки | |
| 75 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 | |

**Сведения о записях, внесенных в Единый государственный реестр юридических лиц**

| | | 1 | |
|---|---|---|---|
| 76 | ГРН и дата внесения записи в ЕГРЮЛ | 1147746480210 29.04.2014 | |
| 77 | Причина внесения записи в ЕГРЮЛ | Создание юридического лица | |
| 78 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве | |

| | Сведения о документах, представленных при внесении записи в ЕГРЮЛ | | |
|---|---|---|---|
| 79 | Наименование документа | Р11001 ЗАЯВЛЕНИЕ О СОЗДАНИИ ЮЛ | |
| 80 | Наименование документа | УСТАВ ЮЛ | |
| 81 | Наименование документа | РЕШЕНИЕ О СОЗДАНИИ ЮЛ | |

| 82 | Наименование документа | ПИСЬМО1+КОП.СВИД.1+РЕШЕНИЕ 2 |
|---|---|---|
| 83 | Наименование документа | ДОКУМЕНТ ОБ ОПЛАТЕ ГОСУДАРСТВЕННОЙ ПОШЛИНЫ |
| 84 | Номер документа | 4516703534 |
| 85 | Дата документа | 24.04.2014 |
| 86 | Наименование документа | ДОВЕРЕННОСТЬ |
| | Сведения о свидетельстве, подтверждающем факт внесения записи в ЕГРЮЛ | |
| 87 | Серия, номер и дача выдачи свидетельства | 77 015572573 30.04.2014 |
| **2** | | |
| 88 | ГРН и дата внесения записи в ЕГРЮЛ | 9147746076250 29.04.2014 |
| 89 | Причина внесения записи в ЕГРЮЛ | Представление сведений об учете юридического лица в налоговом органе |
| 90 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| **3** | | |
| 91 | ГРН и дата внесения записи в ЕГРЮЛ | 9147746136683 05.05.2014 |
| 92 | Причина внесения записи в ЕГРЮЛ | Представление сведений о регистрации юридического лица в качестве страхователя в исполнительном органе Фонда социального страхования Российской Федерации |
| 93 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| **4** | | |
| 94 | ГРН и дата внесения записи в ЕГРЮЛ | 9147746228192 06.05.2014 |
| 95 | Причина внесения записи в ЕГРЮЛ | Представление сведений о регистрации юридического лица в качестве страхователя в территориальном органе Пенсионного фонда Российской Федерации |
| 96 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| **5** | | |
| 97 | ГРН и дата внесения записи в ЕГРЮЛ | 6147747073446 30.06.2014 |
| 98 | Причина внесения записи в ЕГРЮЛ | Государственная регистрация изменений, внесенных в учредительный документ юридического лица, и внесение изменений в сведения о юридическом лице, содержащиеся в ЕГРЮЛ |
| 99 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |

| | Сведения о документах, представленных при внесении записи в ЕГРЮЛ | |
|---|---|---|
| 100 | Наименование документа | Р13001 ЗАЯВЛЕНИЕ ОБ ИЗМЕНЕНИЯХ, ВНОСИМЫХ В УЧРЕД.ДОКУМЕНТЫ |
| 101 | Наименование документа | УСТАВ ЮЛ |
| 102 | Наименование документа | ЗАЯВЛ.3 КВИТ.3 |
| 103 | Наименование документа | ДОКУМЕНТ ОБ ОПЛАТЕ ГОСУДАРСТВЕННОЙ ПОШЛИНЫ |
| 104 | Номер документа | 4569129378 |
| 105 | Дата документа | 24.06.2014 |
| 106 | Наименование документа | РЕШЕНИЕ О ВНЕСЕНИИ ИЗМЕНЕНИЙ В УЧРЕДИТЕЛЬНЫЕ ДОКУМЕНТЫ |
| 107 | Номер документа | 01/14 |
| 108 | Наименование документа | ДОВЕРЕННОСТЬ |
| | **6** | |
| 109 | ГРН и дата внесения записи в ЕГРЮЛ | 7147747321870 08.08.2014 |
| 110 | Причина внесения записи в ЕГРЮЛ | Изменение сведений о юридическом лице, содержащихся в Едином государственном реестре юридических лиц |
| 111 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| | Сведения о документах, представленных при внесении записи в ЕГРЮЛ | |
| 112 | Наименование документа | Р14001 ЗАЯВЛЕНИЕ ОБ ИЗМ.СВЕДЕНИЙ, НЕ СВЯЗАННЫХ С ИЗМ. УЧРЕД.ДОКУМЕНТОВ (П.2.1) |
| 113 | Наименование документа | ПРОТОКОЛ 2,ДОГОВОР 4 ,КВИТАНЦИЯ 2 ,ЗАЯВЛЕНИЕ 01 |
| 114 | Наименование документа | Доверенность |
| | **7** | |
| 115 | ГРН и дата внесения записи в ЕГРЮЛ | 9167746980689 29.04.2016 |
| 116 | Причина внесения записи в ЕГРЮЛ | Изменение сведений о юридическом лице, содержащихся в Едином государственном реестре юридических лиц |
| 117 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| | Сведения о документах, представленных при внесении записи в ЕГРЮЛ | |
| 118 | Наименование документа | Р14001 ЗАЯВЛЕНИЕ ОБ ИЗМ.СВЕДЕНИЙ, НЕ СВЯЗАННЫХ С ИЗМ. УЧРЕД.ДОКУМЕНТОВ (П.2.1) |

| 119 | Наименование документа | ДОВЕРЕННОСТЬ МАКЕЕВА Т.С. |
|---|---|---|
| | **8** | |
| 120 | ГРН и дата внесения записи в ЕГРЮЛ | 7187746848282 30.01.2018 |
| 121 | Причина внесения записи в ЕГРЮЛ | Представление сведений о регистрации юридического лица в качестве страхователя в исполнительном органе Фонда социального страхования Российской Федерации |
| 122 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| | **9** | |
| 123 | ГРН и дата внесения записи в ЕГРЮЛ | 6187747848854 07.04.2018 |
| 124 | Причина внесения записи в ЕГРЮЛ | Представление сведений о выдаче или замене документов, удостоверяющих личность гражданина Российской Федерации на территории Российской Федерации |
| 125 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| | **10** | |
| 126 | ГРН и дата внесения записи в ЕГРЮЛ | 2187749755466 28.09.2018 |
| 127 | Причина внесения записи в ЕГРЮЛ | Государственная регистрация изменений, внесенных в учредительный документ юридического лица, и внесение изменений в сведения о юридическом лице, содержащиеся в ЕГРЮЛ |
| 128 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| | | |
| | Сведения о документах, представленных при внесении записи в ЕГРЮЛ | |
| 129 | Наименование документа | Р13001 ЗАЯВЛЕНИЕ ОБ ИЗМЕНЕНИЯХ, ВНОСИМЫХ В УЧРЕД.ДОКУМЕНТЫ |
| | | |
| 130 | Наименование документа | ДОКУМЕНТ ОБ ОПЛАТЕ ГОСУДАРСТВЕННОЙ ПОШЛИНЫ |
| 131 | Номер документа | 153 |
| 132 | Дата документа | 20.09.2018 |
| | | |
| 133 | Наименование документа | УСТАВ ЮЛ В НОВОЙ РЕДАКЦИИ |
| | | |
| 134 | Наименование документа | ПРОТОКОЛ ОБЩЕГО СОБРАНИЯ УЧАСТНИКОВ ЮЛ |
| | | |
| 135 | Наименование документа | ИНФОРМАЦ ПИСЬМО 1, КОПИЯ СВИД ЕГРП 1 |

| 136 | Наименование документа | КОПИЯ УВЕДОМЛЕНИЯ 1, СОПРОВОД ПИСЬМО 1 |
|---|---|---|
| | | |
| 137 | Наименование документа | ДОВЕРЕННОСТЬ Н/К НА СИТНИКОВУ Г А |
| **11** | | |
| 138 | ГРН и дата внесения записи в ЕГРЮЛ | 6197746568530 08.02.2019 |
| 139 | Причина внесения записи в ЕГРЮЛ | Представление сведений о выдаче или замене документов, удостоверяющих личность гражданина Российской Федерации на территории Российской Федерации |
| 140 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |

Выписка сформирована с использованием сервиса «Предоставление сведений из ЕГРЮЛ/ЕГРИП», размещенного на официальном сайте ФНС России в сети Интернет по адресу: https://egrul.nalog.ru



ДОКУМЕНТ ПОДПИСАН
УСИЛЕННОЙ КВАЛИФИЦИРОВАННОЙ
ЭЛЕКТРОННОЙ ПОДПИСЬЮ

Сертификат: 6414823159561233624993008053088219434 9
Владелец: МИ ФНС России по ЦОД
Действителен: с 21.01.2021 до 21.01.2022

# EXTRACT

## from the Unified State Register of Legal Entities

06/21/2021                                                                                    No. ЮЭ9965-21
_____                                                          163124271
Date of  Extract

This extract contains information about the legal entity

CAPITAL GROUP DEVELOPMENT LIMITED LIABILITY COMPANY
Full name of the legal entity

**OGRN code (Primary State Registration Number):**  | 1 | 1 | 4 | 7 | 7 | 4 | 6 | 4 | 8 | 0 | 2 | 1 | 0 |

Included into the Unified State Register of Legal Entities as of
June___  21___ 2021_____
Month    Date    Year

| # | Item | Description |
|---|------|-------------|
| 1 | 2 | 3 |
| **Name** | | |
| 1 | Full name | CAPITAL GROUP DEVELOPMENT LIMITED LIABILITY COMPANY |
| 2 | Abbreviated name | CAPITAL GROUP DEVELOPMENT, LLC |
| 3 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210 04/29/2014 |
| **Information about the Status of the Legal Entity** | | |
| 4 | Status | ACTING |
| 5 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210 04/29/2014 |
| **Address (Location)** | | |
| 6 | Zip code | 123112 |
| 7 | Registered office of the legal entity | FLOOR 16 OFFICE I ROOM 45,MOSCOW BUILDING 1, HOUSE 8, PRESNENSKAYA EMBANKMENT, MOSCOW, 123112 |
| 8 | State Registration Number and the date when the  indicated data was  recorded  into the  Unified State Register of Legal Entities | 2187749755466 09/28/2018 |
| | | |
| 9 | Method of incorporation | Incorporation of the legal entity |
| 10 | OGRN code | 1147746480210 |

| 11 | Date of registration | 04/29/2014 |
|---|---|---|
| 12 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210<br>04/29/2014 |

|  | | |
|---|---|---|
| **Information about Registration Authority Having Jurisdiction over the Registered Office of the Legal Entity** | | |
| 13 | Name of the registration authority | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| 14 | Address of the registration authority | Bld. 2, House 3, Pokhodnyi pr., Moscow 125373 |
| 15 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210<br>04/29/2014 |

|  | | |
|---|---|---|
| **Information about the Person Who Has the Right to Act in the Name of the Legal Entity without a Power of Attorney** | | |
| 16 | State Registration Number and the date information about the person indicated above was recorded into the Unified State Register of Legal Entities | 9167746980689<br>04/29/2016 |
| | | |
| 17 | Last name<br>First name<br>Patronymic | GREBENKOVA<br>MARIA<br>PAVLOVNA |
| 18 | Taxpayer Identification Number | 732591606117 |
| 19 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 9167746980689<br>04/29/2016 |
| | | |
| 20 | Position held | DIRECTOR GENERAL |
| 21 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 9167746980689<br>04/29/2016 |

|  | | |
|---|---|---|
| **Information about the Authorized Capital/Contributed Capital/Authorized Fund/Mutual Fund** | | |
| 22 | Type | AUTHORIZED CAPITAL |
| 23 | Amount (in rubles) | 30,000 |
| 24 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 6147747073446<br>06/30/2014 |

|  | **Information about Founders (Members) of the Legal Entity** | |
|---|---|---|
|  | **1** | |
| 25 | State Registration Number and the date of the person's data entry into the Unified State Register of Legal Entities | 6147747073446 06/30/2014 |
|  |  |  |
| 26 | Last name First name Patronymic | DORONIN VLADISLAV N/A |
| 27 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 6147747073446 06/30/2014 |
|  |  |  |
| 28 | Nominal cost of share (in rubles) | 10,000 |
| 29 | Value of share in common fractions | 1/3 |
| 30 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 6147747073446 06/30/2014 |
|  | **2** | |
| 31 | State Registration Number and the date of the person's data entry into the Unified State Register of Legal Entities | 6147747073446 06/30/2014 |
|  |  |  |
| 32 | Last name First name Patronymic | TYO PAVEL VLADIMIROVICH |
| 33 | Taxpayer Identification Number | 770300643207 |
| 34 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 6147747073446 06/30/2014 |
|  |  |  |
| 35 | Nominal cost of share (in rubles) | 10,000 |
| 36 | Value of share in common fractions | 1/3 |
| 37 | State Registration Number and the date of the indicated data | 7147747321870 08/08/2014 |

| | entry into the Unified State Register of Legal Entities | |
|---|---|---|
| | **3** | |
| 38 | State Registration Number and the date of the person's data entry into the Unified State Register of Legal Entities | 6147747073446 06/30/2014 |
| | | |
| 39 | Last name First name Patronymic | BERMAN EDUARD BORISOVICH |
| 40 | Taxpayer Identification Number | 771921205600 |
| 41 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 6197746568530 02/08/2019 |
| | | |
| 42 | Nominal cost of share (in rubles) | 10,000 |
| 43 | Value of share in common fractions | 1/3 |
| 44 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 7147747321870 08/08/2014 |
| | | |
| | **Information about Registration at the Tax Authority** | |
| 45 | Taxpayer Identification Number of the legal entity | 7703810442 |
| 46 | Tax Registration Reason Code of the legal entity | 770301001 |
| 47 | Date of registration | 04/29/2014 |
| 48 | Information about the tax authority the legal entity is (was for the legal entities which stopped their activities) registered in | Inspectorate of the Federal Tax Service No. 3 for Moscow |
| 49 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 9147746076250 04/29/2014 |
| | | |
| | **Information about Registration As an Insurant at the Territorial Agency of the Pension Fund of the Russian Federation** | |
| 50 | Registration number | 087103126027 |
| 51 | Date of registration as an insurant | 05/05/2014 |
| 52 | Name of the territorial agency of the Pension Fund of the Russian Federation | State Institution Central Administration of Pension Fund of the Russian Federation No. 10, Office No. 3 for Moscow and Moscow Region, Presnenskoye Municipal District, Arbat, Moscow |

| 53 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 9147746228192 05/06/2014 |
|---|---|---|
|  | **Information about Registration As an Insurant at the Executive Agency of the Social Insurance Fund of the Russian Federation** | |
| 54 | Registration number | 773604717577181 |
| 55 | Date of registration as an insurant | 12/05/2017 |
| 56 | Name of the executive agency of the Social Insurance Fund of the Russian Federation | Branch No. 18 of the State Institution Moscow regional office of the Social Insurance Fund of the Russian Federation |
| 57 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 7187746848282 01/30/2018 |

**Information on the Type of Business Authorized According to Russian Industry Classification System (OKVED)**

*Information about the Principal Activity*

*(OKVED OK 029-2014 (Classification of Economic Activities of the European Community), Rev. 2))*

| 58 | Code and name of activity | 70.22 Consulting on commerce and management issues |
|---|---|---|
| 59 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210 04/29/2014 |

*Information about Supplementary Business Activities*

*(OKVED OK 029-2014 (Classification of Economic Activities of the European Community), Rev. 2))*

**1**

| 60 | Code and name of activity | 64.9 Rendering other financial services, except for those related to insurance and pension fund scheme not elsewhere classified |
|---|---|---|
| 61 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210 04/29/2014 |

**2**

| 62 | Code and name of activity | 68.10 Buying and selling of own real estate |
|---|---|---|
| 63 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210 04/29/2014 |

**3**

| 64 | Code and name of activity | 68. 68.10 Preparation for buying and selling of own real estate |
|---|---|---|
| 65 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210<br>04/29/2014 |

| | **4** | |
|---|---|---|
| 66 | Code and name of activity | 68.20 Renting and operating of own or leased real estate |
| 67 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210<br>04/29/2014 |

| | **5** | |
|---|---|---|
| 68 | Code and name of activity | 68.31 Real estate agency services on a fee or contract basis |
| 69 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210<br>04/29/2014 |

| | **6** | |
|---|---|---|
| 70 | Code and name of activity | 70.10.2 Activity related to management of holding companies |
| 71 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210<br>04/29/2014 |

| | **7** | |
|---|---|---|
| 72 | Code and name of activity | 71.11.1 Architectural activities related to creation of an architectural structure |
| 73 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210<br>04/29/2014 |

| | **8** | |
|---|---|---|
| 74 | Code and name of activity | 82.99 Rendering other ancillary services for business not elsewhere classified |
| 75 | State Registration Number and the date of the indicated data entry into the Unified State | 1147746480210<br>04/29/2014 |

| | Register of Legal Entities | |
|---|---|---|
| | | |

| | **Information about Data Entered into Unified State Register of Legal Entities** | |
|---|---|---|
| | **1** | |
| 76 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 1147746480210<br>04/29/2014 |
| 77 | Reason for making an entry into the Unified State Register of Legal Entities | Incorporation of the legal entity |
| 78 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| | | |
| | Information about the documents furnished during making the entry into the Unified State Register of Legal Entities | |
| 79 | Name of document | P11001 APPLICATION FOR A LEGAL ENTITY INCORPORATION |
| | | |
| 80 | Document title | CHARTER OF THE LEGAL ENTITY |
| | | |
| 81 | Document title | DECISION ABOUT THE LEGAL ENTITY INCORPORATION |
| | | |
| 82 | Name of document | LETTER1 + CERTIFICATE COPY+DECISION 2 |
| | | |
| 83 | Name of document | DOCUMENT CONFIRMING PAYMENT OF THE STATE DUTY |
| 84 | Document number | 4516703534 |
| 85 | Date of document issue | 04/24/2014 |
| | | |
| 86 | Name of document | POWER OF ATTORNEY |
| | | |
| | Information about the certificate confirming making the entry in the Unified State Register of Legal Entities | |
| 87 | Certificate series, number, and date of issue | 77/015572573<br>04/30/2014 |
| | **2** | |
| 88 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 9147746076250<br>04/29/2014 |

| 89 | Reason for making an entry into the Unified State Register of Legal Entities | Furnishing information about the registration of the legal entity at a tax authority |
|---|---|---|
| 90 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| **3** | | |
| 91 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 9147746136683 05/05/2014 |
| 92 | Reason for making an entry into the Unified State Register of Legal Entities | Furnishing information about the registration of the legal entity as an insurant at the executive agency of the Social Insurance Fund of the Russian Federation |
| 93 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| **4** | | |
| 94 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 9147746228192 05/06/2014 |
| 95 | Reason for making an entry into the Unified State Register of Legal Entities | Furnishing information about the registration of the legal entity as an insurant at the territorial agency of the Pension Fund of the Russian Federation |
| 96 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| **5** | | |
| 97 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 6147747073446 06/30/2014 |
| 98 | Reason for making an entry into the Unified State Register of Legal Entities | Official registration of alterations entered into instruments of incorporation of the legal entity and making amendments in the data on the legal entity in the Unified State Register of Legal Entities |
| 99 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| | Information about the documents furnished during making the entry into the Unified State Register of Legal Entities | |

| 100 | Name of document | P13001 APPLICATION ABOUT ALTERATIONS ENTERED INTO CONSTITUENT DOCUMENTS |
| --- | --- | --- |
| 101 | Name of document | CHARTER OF THE LEGAL ENTITY |
| 102 | Name of document | APPLICATION 3 RECEIPT.3 |
| 103 | Name of document | DOCUMENT CONFIRMING PAYMENT OF THE STATE DUTY |
| 104 | Document number | 4569129378 |
| 105 | Date of document issue | 06/24/2014 |
| 106 | Name of document | DECISION ABOUT ENTERING ALTERATIONS INTO CONSTITUENT DOCUMENTS |
| 107 | Document number | 01/14 |
| 108 | Name of document | POWER OF ATTORNEY |
| | **6** | |
| 109 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 7147747321870 08/08/2014 |
| 110 | Reason for making an entry into the Unified State Register of Legal Entities | Changing of the data on the legal entity contained at the Uniform Government Register of Legal Entities |
| 111 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| | Information about the documents furnished during making the entry into the Unified State Register of Legal Entities | |
| 112 | Name of document | P14001 APPLICATION ABOUT CHANGING THE DATA NOT RELATED TO ALTERATIONS OF CONSTITUENT DOCUMENTS (P.2.1) |
| 113 | Name of document | MINUTES 2, ARTICLES OF INCORPORATION 4 , RECEIPT 2, APPLICATION 01 |
| 114 | Name of document | Power of Attorney |
| | **7** | |
| 115 | State Registration Number and the date of making an entry into the Unified State Register | 9167746980689 04/29/2016 |

|  | of Legal Entities |  |
|---|---|---|
| 116 | Reason for making an entry into the Unified State Register of Legal Entities | Changing of the data on the legal entity contained at the Uniform Government Register of Legal Entities |
| 117 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
|  |  |  |
|  | Information about the documents furnished during making the entry into the Unified State Register of Legal Entities | |
| 118 | Name of document | P14001 APPLICATION ABOUT CHANGING THE DATA NOT RELATED TO ALTERATIONS OF CONSTITUENT DOCUMENTS (P.2.1) |
|  |  |  |
| 119 | Name of document | POWER OF ATTORNEY BY MAKEEV T. S. |
| 8 | | |
| 120 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 7187746848282 01/30/2018 |
| 121 | Reason for making an entry into the Unified State Register of Legal Entities | Furnishing information about the registration of the legal entity as an insurant at the executive agency of the Social Insurance Fund of the Russian Federation |
| 122 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| 9 | | |
| 123 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 6187747848854 04/07/2018 |
| 124 | Reason for making an entry into the Unified State Register of Legal Entities | Furnishing information about issuance or replacement of documents certifying the identity of the citizen of the Russian Federation on the territory of the Russian Federation |
| 125 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| 10 | | |
| 126 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 2187749755466 09/28/2018 |

| 127 | Reason for making an entry into the Unified State Register of Legal Entities | Official registration of alterations entered into instruments of incorporation of the legal entity and making amendments in the data on the legal entity in the Unified State Register of Legal Entities |
|---|---|---|
| 128 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
|  | Information about the documents furnished during making the entry into the Unified State Register of Legal Entities | |
| 129 | Name of document | P13001 APPLICATION ABOUT ALTERATIONS ENTERED INTO CONSTITUENT DOCUMENTS |
| 130 | Name of document | DOCUMENT CONFIRMING PAYMENT OF THE STATE DUTY |
| 131 | Document number | 153 |
| 132 | Date of document issue | 09/20/2018 |
| 133 | Name of document | RESTATED CHARTER OF THE LEGAL ENTITY |
| 134 | Name of document | MINUTES OF THE GENERAL MEETING OF MEMBERS OF THE LEGAL ENTITY |
| 135 | Name of document | LETTER OF INFORMATION 1, COPY OF CERTIFICATE OF THE UNIFIED PUBLIC REGISTER OF REAL PROPERTY TITLES AND TRANSACTIONS THERETO 1 |
| 136 | Name of document | NOTIFICATION COPY 1, COVERING LETTER 1 |
| 137 | Name of document | POWER OF ATTORNEY H/K ISSUED FOR G.A. SITNIKOVA |
|  | **11** | |
| 138 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 6197746568530 02/08/2019 |
| 139 | Reason for making an entry into the Unified State Register of Legal Entities | Furnishing information about issuance or replacement of documents certifying the identity of the citizen of the Russian Federation on the territory of the Russian Federation |

| 140 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
|---|---|---|

The Extract is formed with the use of the "Representing Information from the Unified State Register of Legal Entities/ Unified State Register of Private Entrepreneurs" service hosted at the official website of the Federal Tax Authority of Russia in the Internet at https://egrul.nalog.ru

[Stamp: The coat of Arms of the Russian Federation
THE DOCUMENT IS SIGNED WITH ENCRYPTED DIGITAL SIGNATURE
Certificate: 64148231595612336249930080530882194349
Owner: Interdistrict Inspectorate of Federal Tax Service for Data Storage and Processing Center
Valid: from 01/21/2021 till 01/21/2022]



Lango, Inc.
1460 Broadway | New York, NY 10036
213.444.5373 | Hello@lango.co | www.lango.co

#2021_06_NXPB-024

## CERTIFICATE OF TRANSLATION ACCURACY

Translation from <u>Russian</u> to <u>English</u>

We, Lango, Inc, hereby certify the below-mentioned document(s) are translated by experienced and qualified bilingual translators with comprehensive knowledge of their source and target languages, and that each translated document is prepared as an exact, accurate and true translation of the original document.

- State register of legal entities (Capital Group Development LLC)
- State register of legal entities (Capital Group Development LLC) 2

Lango and its partners are members of the following associations:








*This is to certify the correctness of only the translation. We do not guarantee the original document to be genuine or that the statements in the original document are true. Lango, Inc. assumes no liability for the use of the translated document by the customer or any third party (including end users of the translation).*

Jeffrey Daniel Schmidt
Chief Revenue Officer – Lango, Inc

Date: June 23, 2021



Сведения о юридическом лице

## ОБЩЕСТВО С ОГРАНИЧЕННОЙ ОТВЕТСТВЕННОСТЬЮ "КАПИТАЛ ГРУП ДЕВЕЛОПМЕНТ"

ОГРН: 1147746480210
ИНН/КПП: 7703810442/770301001
по состоянию на 21.06.2021

| | Наименование | |
|---|---|---|
| 1 | Полное наименование | ОБЩЕСТВО С ОГРАНИЧЕННОЙ ОТВЕТСТВЕННОСТЬЮ "КАПИТАЛ ГРУП ДЕВЕЛОПМЕНТ" |
| 2 | Сокращенное наименование | ООО "КАПИТАЛ ГРУП ДЕВЕЛОПМЕНТ" |
| 3 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |
| | **Сведения о состоянии юридического лица** | |
| 4 | Состояние | ДЕЙСТВУЮЩЕЕ |
| 5 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |
| | **Адрес (место нахождения)** | |
| 6 | Почтовый индекс | 123112 |
| 7 | Субъект Российской Федерации | ГОРОД МОСКВА |
| 8 | Улица (проспект, переулок и т.п.) | НАБЕРЕЖНАЯ ПРЕСНЕНСКАЯ |
| 9 | Дом (владение и т.п.) | ДОМ 8 |
| 10 | Корпус (строение и т.п.) | СТРОЕНИЕ 1 |
| 11 | Офис (квартира и т.п.) | ЭТ 16 ПОМ I КОМ 45 |
| 12 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 2187749755466 28.09.2018 |
| | **Сведения о регистрации** | |
| 13 | Способ образования | Создание юридического лица |
| 14 | ОГРН | 1147746480210 |
| 15 | Дата присвоения ОГРН | 29.04.2014 |
| 16 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |
| | **Сведения о регистрирующем органе по месту нахождения юридического лица** | |
| 17 | Наименование регистрирующего органа | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| 18 | Адрес регистрирующего органа | 125373, г.Москва, Походный проезд, домовладение 3, стр.2 |
| 19 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |
| | **Сведения об учете в налоговом органе** | |

| 20 | ИНН | 7703810442 |
|----|-----|-----------|
| 21 | КПП | 770301001 |
| 22 | Дата постановки на учет | 29.04.2014 |
| 23 | Наименование налогового органа | Инспекция Федеральной налоговой службы № 3 по г.Москве |
| 24 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 9147746076250 29.04.2014 |
| **Сведения о регистрации в качестве страхователя в территориальном органе Пенсионного фонда Российской Федерации** | | |
| 25 | Регистрационный номер | 087103126027 |
| 26 | Дата регистрации | 05.05.2014 |
| 27 | Наименование территориального органа Пенсионного фонда | Государственное учреждение - Главное Управление Пенсионного фонда РФ №10 Управление №3 по г. Москве и Московской области муниципальный район Пресненское, Арбат г.Москвы |
| 28 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 9147746228192 06.05.2014 |
| **Сведения о регистрации в качестве страхователя в исполнительном органе Фонда социального страхования Российской Федерации** | | |
| 29 | Регистрационный номер | 773604717577181 |
| 30 | Дата регистрации | 05.12.2017 |
| 31 | Наименование исполнительного органа Фонда социального страхования | Филиал №18 Государственного учреждения - Московского регионального отделения Фонда социального страхования Российской Федерации |
| 32 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 7187746848282 30.01.2018 |
| **Сведения об уставном капитале (складочном капитале, уставном фонде, паевых взносах)** | | |
| 33 | Вид | УСТАВНЫЙ КАПИТАЛ |
| 34 | Размер (в рублях) | 30000 |
| 35 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 6147747073446 30.06.2014 |
| **Сведения о лице, имеющем право без доверенности действовать от имени юридического лица** | | |
| | | |
| 36 | ГРН и дата внесения в ЕГРЮЛ сведений о данном лице | 9167746980689 29.04.2016 |
| 37 | Фамилия | ГРЕБЕНЬКОВА |
| 38 | Имя | МАРИЯ |
| 39 | Отчество | ПАВЛОВНА |
| 40 | ИНН | 732591606117 |

| 41 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 9167746980689 29.04.2016 |
|----|----|----|
| 42 | Должность | ГЕНЕРАЛЬНЫЙ ДИРЕКТОР |
| 43 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 9167746980689 29.04.2016 |
| **Сведения об учредителях (участниках) юридического лица** | | |
| **1** | | |
| 44 | ГРН и дата внесения в ЕГРЮЛ сведений о данном лице | 6147747073446 30.06.2014 |
| 45 | Фамилия | ДОРОНИН |
| 46 | Имя | ВЛАДИСЛАВ |
| 47 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 6147747073446 30.06.2014 |
| | | |
| 48 | Номинальная стоимость доли (в рублях) | 10000 |
| 49 | Размер доли в простых дробях | 1/3 |
| 50 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 6147747073446 30.06.2014 |
| **2** | | |
| 51 | ГРН и дата внесения в ЕГРЮЛ сведений о данном лице | 6147747073446 30.06.2014 |
| 52 | Фамилия | ТЁ |
| 53 | Имя | ПАВЕЛ |
| 54 | Отчество | ВЛАДИМИРОВИЧ |
| 55 | ИНН | 770300643207 |
| 56 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 6147747073446 30.06.2014 |
| | | |
| 57 | Номинальная стоимость доли (в рублях) | 10000 |
| 58 | Размер доли в простых дробях | 1/3 |
| 59 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 7147747321870 08.08.2014 |
| **3** | | |
| 60 | ГРН и дата внесения в ЕГРЮЛ сведений о данном лице | 6147747073446 30.06.2014 |
| 61 | Фамилия | БЕРМАН |
| 62 | Имя | ЭДУАРД |
| 63 | Отчество | БОРИСОВИЧ |
| 64 | ИНН | 771921205600 |

| 65 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 6197746568530 08.02.2019 |
|----|---|---|
| | | |
| 66 | Номинальная стоимость доли (в рублях) | 10000 |
| 67 | Размер доли в простых дробях | 1/3 |
| 68 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 7147747321870 08.08.2014 |

**Сведения о видах экономической деятельности по Общероссийскому классификатору видов экономической деятельности**
**ОКВЭД ОК 029-2014 (КДЕС Ред. 2)**

*Сведения об основном виде деятельности*

| 69 | Код и наименование вида деятельности | 70.22 Консультирование по вопросам коммерческой деятельности и управления |
|----|---|---|
| 70 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |

*Сведения о дополнительных видах деятельности*

| | 1 | |
|----|---|---|
| 71 | Код и наименование вида деятельности | 64.99 Предоставление прочих финансовых услуг, кроме услуг по страхованию и пенсионному обеспечению, не включенных в другие группировки |
| 72 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |
| | 2 | |
| 73 | Код и наименование вида деятельности | 68.10 Покупка и продажа собственного недвижимого имущества |
| 74 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |
| | 3 | |
| 75 | Код и наименование вида деятельности | 68.10.1 Подготовка к продаже собственного недвижимого имущества |
| 76 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |
| | 4 | |
| 77 | Код и наименование вида деятельности | 68.20 Аренда и управление собственным или арендованным недвижимым имуществом |
| 78 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |
| | 5 | |

Выписка из ЕГРЮЛ ФНС России на 21.06.2021      ОГРН: 1147746480210

| | | |
|---|---|---|
| 79 | Код и наименование вида деятельности | 68.31 Деятельность агентств недвижимости за вознаграждение или на договорной основе |
| 80 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |
| | **6** | |
| 81 | Код и наименование вида деятельности | 70.10.2 Деятельность по управлению холдинг-компаниями |
| 82 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |
| | **7** | |
| 83 | Код и наименование вида деятельности | 71.11.1 Деятельность в области архитектуры, связанная с созданием архитектурного объекта |
| 84 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |
| | **8** | |
| 85 | Код и наименование вида деятельности | 82.99 Деятельность по предоставлению прочих вспомогательных услуг для бизнеса, не включенная в другие группировки |
| 86 | ГРН и дата внесения в ЕГРЮЛ записи, содержащей указанные сведения | 1147746480210 29.04.2014 |
| | **Сведения о записях, внесенных в ЕГРЮЛ** | |
| | **1** | |
| 87 | ГРН и дата внесения записи в ЕГРЮЛ | 1147746480210 29.04.2014 |
| 88 | Причина внесения записи в ЕГРЮЛ | Создание юридического лица |
| 89 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| | Сведения о документах, представленных при внесении записи в ЕГРЮЛ | |
| 90 | Наименование документа | Р11001 ЗАЯВЛЕНИЕ О СОЗДАНИИ ЮЛ |
| 91 | Наименование документа | УСТАВ ЮЛ |
| 92 | Наименование документа | РЕШЕНИЕ О СОЗДАНИИ ЮЛ |
| 93 | Наименование документа | ПИСЬМО1+КОП.СВИД.1+РЕШЕНИЕ 2 |
| 94 | Наименование документа | ДОКУМЕНТ ОБ ОПЛАТЕ ГОСУДАРСТВЕННОЙ ПОШЛИНЫ |

| 95 | Номер документа | 4516703534 |
|---|---|---|
| 96 | Дата документа | 24.04.2014 |
| | | |
| 97 | Наименование документа | ДОВЕРЕННОСТЬ |
| | | |
| | Сведения о свидетельстве, подтверждающем факт внесения записи в ЕГРЮЛ | |
| 98 | Серия, номер и дата выдачи свидетельства | 77 015572573 30.04.2014 |
| | 2 | |
| 99 | ГРН и дата внесения записи в ЕГРЮЛ | 9147746076250 29.04.2014 |
| 100 | Причина внесения записи в ЕГРЮЛ | Представление сведений об учете юридического лица в налоговом органе |
| 101 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| | 3 | |
| 102 | ГРН и дата внесения записи в ЕГРЮЛ | 9147746136683 05.05.2014 |
| 103 | Причина внесения записи в ЕГРЮЛ | Представление сведений о регистрации юридического лица в качестве страхователя в исполнительном органе Фонда социального страхования Российской Федерации |
| 104 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| | 4 | |
| 105 | ГРН и дата внесения записи в ЕГРЮЛ | 9147746228192 06.05.2014 |
| 106 | Причина внесения записи в ЕГРЮЛ | Представление сведений о регистрации юридического лица в качестве страхователя в территориальном органе Пенсионного фонда Российской Федерации |
| 107 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| | 5 | |
| 108 | ГРН и дата внесения записи в ЕГРЮЛ | 6147747073446 30.06.2014 |
| 109 | Причина внесения записи в ЕГРЮЛ | Государственная регистрация изменений, внесенных в учредительный документ юридического лица, и внесение изменений в сведения о юридическом лице, содержащиеся в ЕГРЮЛ |

| 110 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
|---|---|---|
| | Сведения о документах, представленных при внесении записи в ЕГРЮЛ | |
| 111 | Наименование документа | Р13001 ЗАЯВЛЕНИЕ ОБ ИЗМЕНЕНИЯХ, ВНОСИМЫХ В УЧРЕД.ДОКУМЕНТЫ |
| 112 | Наименование документа | УСТАВ ЮЛ |
| 113 | Наименование документа | ЗАЯВЛ.3 КВИТ.3 |
| 114 | Наименование документа | ДОКУМЕНТ ОБ ОПЛАТЕ ГОСУДАРСТВЕННОЙ ПОШЛИНЫ |
| 115 | Номер документа | 4569129378 |
| 116 | Дата документа | 24.06.2014 |
| 117 | Наименование документа | РЕШЕНИЕ О ВНЕСЕНИИ ИЗМЕНЕНИЙ В УЧРЕДИТЕЛЬНЫЕ ДОКУМЕНТЫ |
| 118 | Номер документа | 01/14 |
| 119 | Наименование документа | ДОВЕРЕННОСТЬ |

**6**

| 120 | ГРН и дата внесения записи в ЕГРЮЛ | 7147747321870 08.08.2014 |
|---|---|---|
| 121 | Причина внесения записи в ЕГРЮЛ | Изменение сведений о юридическом лице, содержащихся в Едином государственном реестре юридических лиц |
| 122 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| | Сведения о документах, представленных при внесении записи в ЕГРЮЛ | |
| 123 | Наименование документа | Р14001 ЗАЯВЛЕНИЕ ОБ ИЗМ.СВЕДЕНИЙ, НЕ СВЯЗАННЫХ С ИЗМ. УЧРЕД.ДОКУМЕНТОВ (П.2.1) |
| 124 | Наименование документа | ПРОТОКОЛ 2,ДОГОВОР 4 ,КВИТАНЦИЯ 2 ,ЗАЯВЛЕНИЕ 01 |
| 125 | Наименование документа | Доверенность |

**7**

| 126 | ГРН и дата внесения записи в ЕГРЮЛ | 9167746980689<br>29.04.2016 |
|---|---|---|
| 127 | Причина внесения записи в ЕГРЮЛ | Изменение сведений о юридическом лице, содержащихся в Едином государственном реестре юридических лиц |
| 128 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| | | |
| | Сведения о документах, представленных при внесении записи в ЕГРЮЛ | |
| 129 | Наименование документа | Р14001 ЗАЯВЛЕНИЕ ОБ ИЗМ.СВЕДЕНИЙ, НЕ СВЯЗАННЫХ С ИЗМ. УЧРЕД.ДОКУМЕНТОВ (П.2.1) |
| | | |
| 130 | Наименование документа | ДОВЕРЕННОСТЬ МАКЕЕВА Т.С. |
| | | |
| | **8** | |
| 131 | ГРН и дата внесения записи в ЕГРЮЛ | 7187746848282<br>30.01.2018 |
| 132 | Причина внесения записи в ЕГРЮЛ | Представление сведений о регистрации юридического лица в качестве страхователя в исполнительном органе Фонда социального страхования Российской Федерации |
| 133 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| | **9** | |
| 134 | ГРН и дата внесения записи в ЕГРЮЛ | 6187747848854<br>07.04.2018 |
| 135 | Причина внесения записи в ЕГРЮЛ | Представление сведений о выдаче или замене документов, удостоверяющих личность гражданина Российской Федерации на территории Российской Федерации |
| 136 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
| | **10** | |
| 137 | ГРН и дата внесения записи в ЕГРЮЛ | 2187749755466<br>28.09.2018 |
| 138 | Причина внесения записи в ЕГРЮЛ | Государственная регистрация изменений, внесенных в учредительный документ юридического лица, и внесение изменений в сведения о юридическом лице, содержащиеся в ЕГРЮЛ |

| 139 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |
|---|---|---|
| | Сведения о документах, представленных при внесении записи в ЕГРЮЛ | |
| 140 | Наименование документа | Р13001 ЗАЯВЛЕНИЕ ОБ ИЗМЕНЕНИЯХ, ВНОСИМЫХ В УЧРЕД.ДОКУМЕНТЫ |
| 141 | Наименование документа | ДОКУМЕНТ ОБ ОПЛАТЕ ГОСУДАРСТВЕННОЙ ПОШЛИНЫ |
| 142 | Номер документа | 153 |
| 143 | Дата документа | 20.09.2018 |
| 144 | Наименование документа | УСТАВ ЮЛ В НОВОЙ РЕДАКЦИИ |
| 145 | Наименование документа | ПРОТОКОЛ ОБЩЕГО СОБРАНИЯ УЧАСТНИКОВ ЮЛ |
| 146 | Наименование документа | ИНФОРМАЦ ПИСЬМО 1, КОПИЯ СВИД ЕГРП 1 |
| 147 | Наименование документа | КОПИЯ УВЕДОМЛЕНИЯ 1, СОПРОВОД ПИСЬМО 1 |
| 148 | Наименование документа | ДОВЕРЕННОСТЬ Н/К НА СИТНИКОВУ Г А |
| | | **11** |
| 149 | ГРН и дата внесения записи в ЕГРЮЛ | 6197746568530 08.02.2019 |
| 150 | Причина внесения записи в ЕГРЮЛ | Представление сведений о выдаче или замене документов, удостоверяющих личность гражданина Российской Федерации на территории Российской Федерации |
| 151 | Наименование регистрирующего органа, которым запись внесена в ЕГРЮЛ | Межрайонная инспекция Федеральной налоговой службы № 46 по г. Москве |

Information about the Legal Entity

CAPITAL GROUP DEVELOPMENT LIMITED LIABILITY COMPANY

OGRN code (Primary State Registration Number): 1147746480210
TIN (taxpayer identification number) / RRC (registration reason code) 7703810442/770301001
as of 06/21/2021

| | Name | |
|---|---|---|
| 1 | Full name | CAPITAL GROUP DEVELOPMENT LIMITED LIABILITY COMPANY |
| 2 | Abbreviated name | CAPITAL GROUP DEVELOPMENT, LLC |
| 3 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210 04/29/2014 |
| | **Information about the Status of the Legal Entity** | |
| 4 | Status | ACTIVE |
| 5 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210 04/29/2014 |
| | **Address (Location)** | |
| 6 | Zip code | 123112 |
| 7 | Constituent entity of the Russian Federation | MOSCOW |
| 8 | Street (prospect, lane. etc.) | PRESNENSKAYA EMBANKMENT, |
| 9 | House (property., etc.) | HOUSE 8, |
| 10 | Building (structure, etc.) | BUILDING 1 |
| 11 | Office (apartment, etc.) | FLOOR 16 OFFICE I ROOM 45 |
| 12 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 2187749755466 09/28/2018 |
| | **Registration Data** | |
| 13 | Method of incorporation | Incorporation of the legal entity |
| 14 | OGRN code | 1147746480210 |
| 15 | Date of OGRN code assignment | 04/29/2014 |
| 16 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210 04/29/2014 |
| | **Information about Registration Authority Having Jurisdiction over the Registered Office of the Legal Entity** | |
| 17 | Name of the registration authority | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |

Extract from the Unified State Register of Legal Entities as of 06/21/2021          OGRN code: 1147746480210

| 18 | Address of the registration authority | Bld. 2, House 3, Pokhodnyi pr., Moscow 125373 |
| --- | --- | --- |
| 19 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210<br>04/29/2014 |
| **Information about the Registration at the Tax Authority** | | |
| 20 | Taxpayer Identification Number | 7703810442 |
| 21 | KPP (Tax Registration Reason Code) | 770301001 |
| 22 | Date of registration | 04/29/2014 |
| 23 | Name of tax authority | Inspectorate of the Federal Tax Service No. 3 for Moscow |
| 24 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 9147746076250<br>04/29/2014 |
| **Information about Registration As an Insurant at the Territorial Agency of the Pension Fund of the Russian Federation** | | |
| 25 | Registration number | 087103126027 |
| 26 | Registration date | 05/05/2014 |
| 27 | Name of the territorial agency of the Pension Fund of the Russian Federation | State Institution Central Administration of Pension Fund of the Russian Federation No. 10, Office No. 3 for Moscow and Moscow Region, Presnenskoye Municipal District, Arbat, Moscow |
| 28 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 9147746228192<br>05/06/2014 |
| **Information about Registration As an Insurant at the Executive Agency of the Social Insurance Fund of the Russian Federation** | | |
| 29 | Registration number | 773604717577181 |
| 30 | Registration date | 12/05/2017 |
| 31 | Name of the executive agency of the Social Insurance Fund of the Russian Federation | Branch No. 18 of the State Institution Moscow regional office of the Social Insurance Fund of the Russian Federation |
| 32 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 7187746848282<br>01/30/2018 |
| **Information about the Authorized Capital/Contributed Capital/Authorized Fund/Mutual Fund)** | | |
| 33 | Type | AUTHORIZED CAPITAL |
| 34 | Amount (in rubles) | 30000 |
| 35 | State Registration Number and the date of the indicated data entry into the Unified State | 6147747073446<br>06/30/2014 |

Extract from the Unified State Register of Legal Entities as of 06/21/2021     OGRN code: 1147746480210

|  |  |  |
|---|---|---|
|  | Register of Legal Entities |  |
| | **Information about the Person Who Has the Right to Act in the Name of a Legal Entity without a Power of Attorney** | |
|  |  |  |
| 36 | State Registration Number and the date information about the person indicated above was recorded into the Unified State Register of Legal Entities | 9167746980689<br>04/29/2016 |
| 37 | Last name | GREBENKOVA |
| 38 | First name | MARIA |
| 39 | Patronymic | PAVLOVNA |
| 40 | Taxpayer Identification Number | 732591606117 |
| 41 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 9167746980689<br>04/29/2016 |
| 42 | Position held | DIRECTOR GENERAL |
| 43 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 9167746980689<br>04/29/2016 |
|  | **Information about Founders (Members) of the Legal Entity** | |
|  | **1** | |
| 44 | State Registration Number and the date information about the person indicated above was recorded into the Unified State Register of Legal Entities | 6147747073446<br>06/30/2014 |
| 45 | Last name | DORONIN |
| 46 | First name | VLADISLAV |
| 47 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 6147747073446<br>06/30/2014 |
|  |  |  |
| 48 | Nominal cost of share (in rubles) | 10,000 |
| 49 | Value of share in common fractions | 1/3 |
| 50 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 6147747073446<br>06/30/2014 |
|  | **2** | |
| 51 | State Registration Number and the date information about the person indicated above was | 6147747073446<br>06/30/2014 |

Extract received through SPARK system (http://www.spark-interfax.ru)

| | | |
|---|---|---|
| | recorded into the Unified State Register of Legal Entities | |
| 52 | Last name | TYO |
| 53 | First name | PAVEL |
| 54 | Patronymic | VLADIMIROVICH |
| 55 | Taxpayer Identification Number | 770300643207 |
| 56 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 6147747073446 06/30/2014 |
| | | |
| 57 | Nominal cost of share (in rubles) | 10,000 |
| 58 | Value of share in common fractions | 1/3 |
| 59 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 7147747321870 08/08/2014 |
| | 3 | |
| 60 | State Registration Number and the date information about the person indicated above was recorded into the Unified State Register of Legal Entities | 6147747073446 06/30/2014 |
| 61 | Last name | BERMAN |
| 62 | First name | EDUARD |
| 63 | Patronymic | BORISOVICH |
| 64 | Taxpayer Identification Number | 771921205600 |
| 65 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 6197746568530 02/08/2019 |
| | | |
| 66 | Nominal cost of share (in rubles) | 10,000 |
| 67 | Value of share in common fractions | 1/3 |
| 68 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 7147747321870 08/08/2014 |
| **Information on the Type of Business Authorized According to Russian Industry Classification System (OKVED)** <br> **OKVED OK 029-2014 (Classification of Economic Activities of the European Community), Rev. 2,** | | |
| *Information about the Principal Activity* | | |
| 69 | Code and name of activity | 70.22 Consulting on commerce and management issues |

Extract from the Unified State Register of Legal Entities as of 06/21/2021     OGRN code: 1147746480210

| 70 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210 04/29/2014 |
|---|---|---|

<div align="center">*Information about Supplementary Business Activities*</div>

<div align="center">**1**</div>

| 71 | Code and name of activity | 64.99 Rendering other financial services, except for those related to insurance and pension fund scheme not elsewhere classified |
|---|---|---|
| 72 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210 04/29/2014 |

<div align="center">**2**</div>

| 73 | Code and name of activity | 68.10 Buying and selling of own real estate |
|---|---|---|
| 74 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210 04/29/2014 |

<div align="center">**3**</div>

| 75 | Code and name of activity | 68. 10.1 Preparation for buying and selling of own real estate |
|---|---|---|
| 76 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210 04/29/2014 |

<div align="center">**4**</div>

| 77 | Code and name of activity | 68.20 Renting and operating of own or leased real estate |
|---|---|---|
| 78 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210 04/29/2014 |

<div align="center">**5**</div>

| 79 | Code and name of activity | 68.31 Real estate agency services on a fee or contract basis |
|---|---|---|
| 80 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210 04/29/2014 |

<div align="center">**6**</div>

| 81 | Code and name of activity | 70.10.2 Activity related to management of holding companies |
|---|---|---|
| 82 | State Registration Number and the date of the indicated data entry into the Unified State | 1147746480210 04/29/2014 |

Extract received through SPARK system (http://www.spark-interfax.ru)

Extract from the Unified State Register of Legal Entities as of 06/21/2021       OGRN code: 1147746480210

|     | Register of Legal Entities |     |
| --- | --- | --- |
|     | **7** | |
| 83 | Code and name of activity | 71.11.1 Architectural activities related to creation of an architectural structure |
| 84 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210<br>04/29/2014 |
|     | **8** | |
| 85 | Code and name of activity | 82.99 Activities on the rendering of other ancillary services for business not elsewhere classified |
| 86 | State Registration Number and the date of the indicated data entry into the Unified State Register of Legal Entities | 1147746480210<br>04/29/2014 |
| | **Information about Data Entered into Unified State Register of Legal Entities** | |
| | **1** | |
| 87 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 1147746480210<br>04/29/2014 |
| 88 | Reason for making an entry into the Unified State Register of Legal Entities | Incorporation of the legal entity |
| 89 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
|     |     |     |
|     | Information about the documents furnished during making the entry into the Unified State Register of Legal Entities | |
| 90 | Name of document | P11001 APPLICATION FOR A LEGAL ENTITY INCORPORATION |
|     |     |     |
| 91 | Name of document | CHARTER OF THE LEGAL ENTITY |
|     |     |     |
| 92 | Name of document | DECISION ABOUT THE LEGAL ENTITY INCORPORATION |
|     |     |     |
| 93 | Name of document | LETTER1 + CERTIFICATE COPY+DECISION 2 |
|     |     |     |

Extract received through SPARK system (http://www.spark-interfax.ru)

| 94 | Name of document | DOCUMENT CONFIRMING PAYMENT OF THE STATE DUTY |
|---|---|---|
| 95 | Document number | 4516703534 |
| 96 | Date of the document issue | 04/24/2014 |
| | | |
| 97 | Name of document | POWER OF ATTORNEY |
| | | |
| | | |
| | Information about the certificate confirming making the entry in the Unified State Register of Legal Entities | |
| 98 | Certificate series, number, and date of issue | 77/015572573 04/30/2014 |
| | **2** | |
| 99 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 9147746076250 04/29/2014 |
| 100 | Reason for making an entry into the Unified State Register of Legal Entities | Furnishing information about the registration of the legal entity at a tax authority |
| 101 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| | **3** | |
| 102 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 9147746136683 05/05/2014 |
| 103 | Reason for making an entry into the Unified State Register of Legal Entities | Furnishing information about the registration of the legal entity as an insurant at the executive agency of the Social Insurance Fund of the Russian Federation |
| 104 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| | **4** | |
| 105 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 9147746228192 05/06/2014 |
| 106 | Reason for making an entry into the Unified State Register of Legal Entities | Furnishing information about the registration of the legal entity as an insurant at the territorial agency of the Pension Fund of the Russian Federation |

| 107 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
|---|---|---|
| | **5** | |
| 108 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 6147747073446 06/30/2014 |
| 109 | Reason for making an entry into the Unified State Register of Legal Entities | Official registration of alterations entered into instruments of incorporation of the legal entity and making amendments in the data on the legal entity in the Unified State Register of Legal Entities |
| 110 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| | | |
| | Information about the documents furnished during making the entry into the Unified State Register of Legal Entities | |
| 111 | Name of document | P13001 APPLICATION ABOUT ALTERATIONS ENTERED INTO CONSTITUENT DOCUMENTS |
| | | |
| 112 | Name of document | CHARTER OF THE LEGAL ENTITY |
| | | |
| 113 | Name of document | APPLICATION 3 RECEIPT.3 |
| | | |
| 114 | Name of document | DOCUMENT CONFIRMING PAYMENT OF THE STATE DUTY |
| 115 | Document number | 4569129378 |
| 116 | Date of the document issue | 06/24/2014 |
| | | |
| 117 | Name of document | DECISION ABOUT ENTERING ALTERATIONS INTO CONSTITUENT DOCUMENTS |
| 118 | Document number | 01/14 |
| | | |
| 119 | Name of document | POWER OF ATTORNEY |
| | | |
| | **6** | |
| 120 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 7147747321870 08/08/2014 |

Extract from the Unified State Register of Legal Entities as of 06/21/2021    OGRN code: 1147746480210

| 121 | Reason for making an entry into the Unified State Register of Legal Entities | Changing of the data on the legal entity contained at the Uniform Government Register of Legal Entities |
|---|---|---|
| 122 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| | Information about the documents furnished during making the entry into the Unified State Register of Legal Entities | |
| 123 | Name of document | P14001 APPLICATION ABOUT CHANGING THE DATA NOT RELATED TO ALTERATIONS OF CONSTITUENT DOCUMENTS (P.2.1) |
| 124 | Name of document | MINUTES 2, ARTICLES OF INCORPORATION 4 , RECEIPT 2, APPLICATION 01 |
| 125 | Name of document | Power of Attorney |
| | **7** | |
| 126 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 9167746980689 04/29/2016 |
| 127 | Reason for making an entry into the Unified State Register of Legal Entities | Changing of the data on the legal entity contained at the Uniform Government Register of Legal Entities |
| 128 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| | Information about the documents furnished during making the entry into the Unified State Register of Legal Entities | |
| 129 | Name of document | P14001 APPLICATION ABOUT CHANGING THE DATA NOT RELATED TO ALTERATIONS OF CONSTITUENT DOCUMENTS (P.2.1) |
| 130 | Name of document | POWER OF ATTORNEY BY MAKEEV T. S. |
| | **8** | |

| 131 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 7187746848282<br>01/30/2018 |
|---|---|---|
| 132 | Reason for making an entry into the Unified State Register of Legal Entities | Furnishing information about the registration of the legal entity as an insurant at the executive agency of the Social Insurance Fund of the Russian Federation |
| 133 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| | **9** | |
| 134 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 6187747848854<br>04/07/2018 |
| 135 | Reason for making an entry into the Unified State Register of Legal Entities | Furnishing information about issuance or replacement of documents certifying the identity of the citizen of the Russian Federation on the territory of the Russian Federation |
| 136 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| | **10** | |
| 137 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 2187749755466<br>09/28/2018 |
| 138 | Reason for making an entry into the Unified State Register of Legal Entities | Official registration of alterations entered into instruments of incorporation of the legal entity and making amendments in the data on the legal entity in the Unified State Register of Legal Entities |
| 139 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |
| | | |
| | Information about the documents furnished during making the entry into the Unified State Register of Legal Entities | |
| 140 | Name of document | P13001 APPLICATION ABOUT ALTERATIONS ENTERED INTO CONSTITUENT DOCUMENTS |
| | | |

| 141 | Name of document | DOCUMENT CONFIRMING PAYMENT OF THE STATE DUTY |
|---|---|---|
| 142 | Document number | 153 |
| 143 | Date of the document issue | 09/20/2018 |
| | | |
| 144 | Name of document | RESTATED CHARTER OF THE LEGAL ENTITY |
| | | |
| 145 | Name of document | MINUTES OF THE GENERAL MEETING OF MEMBERS OF THE LEGAL ENTITY |
| | | |
| 146 | Name of document | LETTER OF INFORMATION 1, COPY OF CERTIFICATE OF THE UNIFIED PUBLIC REGISTER OF REAL PROPERTY TITLES AND TRANSACTIONS THERETO 1 |
| | | |
| 147 | Name of document | NOTIFICATION COPY 1, COVERING LETTER 1 |
| | | |
| 148 | Name of document | POWER OF ATTORNEY H/K ISSUED FOR G.A. SITNIKOVA |
| | | |
| | **11** | |
| 149 | State Registration Number and the date of making an entry into the Unified State Register of Legal Entities | 6197746568530 02/08/2019 |
| 150 | Reason for making an entry into the Unified State Register of Legal Entities | Furnishing information about issuance or replacement of documents certifying the identity of the citizen of the Russian Federation on the territory of the Russian Federation |
| 151 | Name of the registration authority which made an entry in the Unified State Register of Legal Entities | Interdistrict Inspectorate of the Federal Tax Service No. 46 for Moscow |



Lango, Inc.
1460 Broadway | New York, NY 10036
213.444.5373 | Hello@lango.co | www.lango.co

#2021_06_NXPB-024

# CERTIFICATE OF TRANSLATION ACCURACY

Translation from <u>Russian</u> to <u>English</u>

We, Lango, Inc, hereby certify the below-mentioned document(s) are translated by experienced and qualified bilingual translators with comprehensive knowledge of their source and target languages, and that each translated document is prepared as an exact, accurate and true translation of the original document.

- State register of legal entities (Capital Group Development LLC)
- State register of legal entities (Capital Group Development LLC) 2

Lango and its partners are members of the following associations:








*This is to certify the correctness of only the translation. We do not guarantee the original document to be genuine or that the statements in the original document are true. Lango, Inc. assumes no liability for the use of the translated document by the customer or any third party (including end users of the translation).*

Jeffrey Daniel Schmidt
Chief Revenue Officer – Lango, Inc

Date: June 23, 2021



# EXHIBIT C



Exhibit No _____

Aman
ĀMAN
34 locations
Aman Resorts International (HQ: Singapore)
Toranomon-Azabudai
Tokyo, Japan
Address NY & FL:
NY: 25 Columbus Circle, 60th Street, New York, NY 10023
FL: 26 Star Island Dr, Miami Beach, FL 33139
Capital Group Art Foundation
CG CAPITAL GROUP
Vladislav Doronin
33%
33%
33%
Pavel Tio
Eduard Berman
Capital Group Development, LLC
CAPITAL INVESTMENTS TRADING LIMITED (BVI)
C.I.T. CAPITAL INVESTMENTS LIMITED (Cyprus, HE114808)
Poultry Farm Krasnogorskaia, JSC
Controlled by Capital Group
Sibaro Trading Limited (Cyprus)
Fuderin Trading & Investments Limited (Cyprus)
Supperstone Holdings Limited (Cyprus)
Capital Group, LLC
Capital Group Marketing, LLC
Citistream Trading & Investments Limited (Cyprus)
80%
OKO Service, LLC
Capital Group, BF charitable foundation
UK Imperial House, LLC
20%
Firma-ADS-424, LLC
OKO Group
Oko Group LLC New York
Oko Group LLC Miami
Oko Group LLC Delaware (US) est. 2015
Projects on OKO's website
2009
Capital City Moscow, Russia
2011
Legend of Tsvetnoy Moscow, Russia
2010
Imperial House Moscow, Russia
2016
Mon Cher Moscow, Russia
Oko Tower
real estate development project
Moscow, Russia
Una Miami, USA
Aman New York New York, USA
Brickell condo tower Miami, USA
Missoni Baia Miami, USA
Capital Hill Residence Barvikha, Russia
2016
Gavril Yushvaev billionaire Russian oligarch
Starlook Consultants Limited (investment: $300M) (Cyprus)
50%
Lisario Trading Limited (Cyprus)
(investment: $300M)
50%
Capital Group's Oko Tower

# EXHIBIT D



# ООО «ТЕРРА ИНВЕСТ»

Общество с ограниченной ответственностью. «Терра Инвест»
109052, Москва г, Подъемная ул, дом № 14, стр. 5
ИНН 7722338070 КПП 772201001 ОГРН 1157746789441

## ДОВЕРЕННОСТЬ

Г. Москва                                     Двадцать седьмое июня две тысячи восемнадцатого года

Настоящей доверенностью Общество с ограниченной ответственностью «Терра Инвест» (ОГРН 1157746789441, дата внесения записи в ЕГРЮЛ 27.08.2015 г., адрес места нахождения 109052, г. Москва, ул. Подъемная, дом 14, стр. 5) в лице Генерального директора Березуевой Галины Владимировны, действующего на основании Устава,
являющееся собственником 500 000 (Пятьсот тысяч) обыкновенных именных акций Акционерного общества «Рождествено» (ОГРН 1167746519698),
уполномочивает:

гр. Российской Федерации **Харитонова Дмитрия Александровича**, паспорт 46 02 617359 выдан Коломенским УВД Московской обл. 12.07.2002, код подразделения 503-034, зарегистрированный по адресу: Московская обл., г.Коломна Малиненское шоссе, д.31;
представлять интересы Общества с ограниченной ответственностью «Терра Инвест» (далее по тексту – «Представляемый») в Акционерном обществе «Рождествено» (ОГРН 1167746519698, ИНН 7702401983), на всех Общих собраниях акционеров (далее по тексту – «собрание») Акционерного общества «Рождествено» и совершать от имени Представляемого следующие действия:

- регистрироваться в качестве участника собрания;
- голосовать по своему усмотрению, всеми принадлежащими Обществу на праве собственности голосующими акциями по всем вопросам повестки дня собрания, включая в том числе вопросы ликвидации, реорганизации, одобрения крупных, с заинтересованностью и иных сделок;
- участвовать в обсуждении вопросов повестки дня собрания, возникающих в ходе проведения общих собраний акционеров;
- подавать и подписывать от имени Представляемого протоколы, различного рода документы, заявления, получать необходимые справки и другие документы, копии протоколов общих собраний акционеров, учредительных документов и иных документов, предусмотренных ст.ст. 89-91 Федерального закона № 208-ФЗ «Об акционерных обществах», ст.67 Гражданского кодекса Российской Федерации и законодательством Российской Федерации;
- получать, сдавать в Счетную комиссию, Регистратору и подписывать бюллетени для голосования по всем вопросам повестки дня;
- знакомиться с документами в соответствии со ст.ст. 89-91 Федерального закона №208-ФЗ «Об акционерных обществах» и действующим законодательством Российской Федерации, а также с информацией (материалами) к общим собраниям акционеров;
- предоставлять, получать любые документы;
- а также осуществлять любые другие полномочия акционера АО «Рождествено» от имени Представляемого и совершать любые действия в рамках осуществления указанных выше полномочий.

Доверенность выдана до двадцать седьмого июня две тысячи двадцатого года без права передоверия.

Генеральный директор                                                                    Г.В. Березуева
ООО «Терра Инвест»

# TERRA INVEST LLC

Terra Invest Limited Liability Company
Podyomnaya St. 14, building 5, Moscow, 109052
Taxpayer Identification Number 7722338070, Taxpayer Record Validity Code 772201001, Principal Tax Registration Number 1157746789441

## POWER OF ATTORNEY

Moscow

**Twenty-seventh of July, two thousand and eighteen**

By this Power of Attorney, **Terra Invest Limited Liability Company** (Principal Tax Registration Number 1157746789441, date of the entry in the Unified State Register of Legal Entities: 27 August 2015, business address: Podyomnaya St. 14, building 5, Moscow, 109052), represented by Galina Vladimirovna Berezueva, its General Director, acting on the basis of the Charter,

who holds five hundred thousand (500,000) ordinary registered shares of Rozhdestveno Joint Stock Company (Principal Tax Registration Number 1167746519698),

authorizes:

**Dmitry Aleksandrovich Kharitonov**, citizen of the Russian Federation, passport 46 02 617359 issued by the Kolomna Internal Affairs Department of the Moscow Region on 12 July 2002, division code 503-034, registered at 31 Malinenskoye highway, Kolomna, Moscow Region,

to represent **Terra Invest Limited Liability Company** (the "Principal") before Rozhdestveno Joint Stock Company (Principal Tax Registration Number 1167746519698, Taxpayer Identification Number 7702401983) at all General Shareholders Meetings (the "meeting") of Rozhdestveno Joint Stock Company and to perform the following actions on behalf of the Principal:

- to register as a participant of the meeting;
- to vote at its discretion with all voting shares owned by the Company on all issues on the agenda of the meeting, including, but not limited to, liquidation, reorganization, approval of major, interested-party and other transactions;
- to participate in the discussion of issues on the agenda of the meeting that arise during the general shareholders meetings;
- to submit and sign on behalf of the Principal any minutes, various documents and applications, to receive the necessary certificates and other documents, copies of minutes of general shareholders meetings, constituent documents and other documents provided for in Articles 89 – 91 of Federal Law No. 208-FZ "On Joint Stock Companies", Article 67 of the Civil Code of the Russian Federation and legislation of the Russian Federation; to receive, submit to the Counting Commission and the Registrar and sign voting ballots on all issues of the agenda;
- to get acquainted with documents in accordance with Articles 89 – 91 of Federal Law No. 208-FZ "On Joint Stock Companies" and the current legislation of the Russian Federation, as well as with information (materials) for general shareholders meetings; to provide and receive any documents; and
- to exercise any other powers of the shareholder of Rozhdestveno JSC on behalf of the Principal and to perform any actions when exercising these powers.

This Power of Attorney is valid until the twenty-seventh of July two thousand and twenty without the right of substitution.

General Director
of Terra Invest LLC

(*signature*)   G.V. Berezueva

[Seal: Terra Invest Limited Liability Company * Terra Invest LLC, 1157746789441, Moscow * Terra Invest]

*Перевод данного текста с русского языка на английский язык выполнен переводчиком Сироткиной Марией Олеговной*

*/signature/*

### Российская Федерация
### Город Москва
**Второго июля две тысячи двадцать первого года**

Я, Ребрина Елена Дмитриевна, временно исполняющая обязанности нотариуса города Москвы Акимова Глеба Борисовича, свидетельствую подлинность подписи переводчика Сироткиной Марии Олеговны.

Подпись сделана в моем присутствии.

Личность подписавшего документ установлена.

Зарегистрировано в реестре: № 77/09 – н/77 – 2021 – 50 - 334

Уплачено за совершение нотариального действия: 400 руб. 00 коп.

Е.Д. Ребрина

Прошнуровано, пронумеровано и скреплено печатью ___ лист(-а, -ов).

ВРИО нотариуса:

This text is translated from Russian into English by the translator Sirotkina Mariya Olegovna

**Russian Federation**
**City of Moscow**
**The 2nd of July, two thousand and twenty-one**

I, Rebrina Elena Dmitrievna, temporarily performing duties of Notary of Moscow Akimov Gleb Borisovich, hereby certify that this is a true signature of Sirotkina Mariya Olegovna, the translator, made in my presence. The personality of the translator is identified.

Registered under No._____

Paid for the notarial act: 400 roubles.

Acting Notary      /signature/  E.D. Rebrina

Official seal: * Notary Public G. B. Akimov  * Notarial district City of Moscow. * Taxpayer Individual Number: 770400047857 *.

Laced, numbered and sealed a total of ___ sheets

Acting Notary     /signature/

Official seal: * Notary Public G. B. Akimov  * Notarial district City of Moscow. * Taxpayer Individual Number: 770400047857 *.



Российская Федерация
Город Москва

0 2 ИЮЛ 2021 _____ года

Я, Ребрина Елена Дмитриевна, временно исполняющая
обязанности нотариуса города Москвы Азимова Глеба Борисовича,
свидетельствую верность копии с представленного мне документа.

Зарегистрировано в реестре: № 77/09-н/77-2021- 46
Уплачено за совершение нотариального действия: 470 руб. 00 коп.

Е.Д. Ребрина

Всего прошнуровано,
пронумеровано и скреплено
печатью

_____ листов.

ВРИО нотариуса

## APOSTILLE

(Convention de la Haye du 5 octobre 1961)

1. Страна: Российская Федерация

   Настоящий официальный документ

2. был подписан _____

   _____ *Ребриной Е.Д.*
   (фамилия)

3. выступающим в качестве _____

   *вр.и.о. нотариуса Акимова Г.Б.*

   (название должности)

4. скреплен печатью/штампом

   *нотариуса г. Москвы Акимова Г.Б.*

   _____

   (название учреждения)

### УДОСТОВЕРЕНО

5. в городе _____ *Москва* _____ 6. _____ *06.07.2021 г.*
   (дата)

7. *Супруном А.Н. помощником начальника Главного управления Министерства*
   *юстиции Российской Федерации по Москве*
   (название удостоверяющего органа)

8. за № _____ 77/23063-21

9. печать/штамп

10. подпись

Настоящий апостиль удостоверяет подлинность подписи и должность лица, подписавшего документ, и, в надлежащем случае, подлинность печати или штампа, которыми скреплен этот документ. Апостиль не удостоверяет содержание документа, в отношении которого был выпущен./ This Apostille only certifies the authenticity of the signature and the capacity of the person who has signed the public document, and, where appropriate, the identity of the seal or stamp which the public document bears. This Apostille does not certify the content of the document for which it was issued.



Прошито, пронумеровано и скреплено печатью

_4_ ( _четыре_ ) лист _а_

Помощник начальника
Главного управления Министерства юстиции
Российской Федерации по Москве

_____ А.Н. Супрун

# EXHIBIT E

**МИНИСТЕРСТВО ЮСТИЦИИ
РОССИЙСКОЙ ФЕДЕРАЦИИ**



**федеральное бюджетное учреждение
РОССИЙСКИЙ ФЕДЕРАЛЬНЫЙ ЦЕНТР
СУДЕБНОЙ ЭКСПЕРТИЗЫ
ПРИ МИНИСТЕРСТВЕ ЮСТИЦИИ
РОССИЙСКОЙ ФЕДЕРАЦИИ**

Нотариусу
Алексееву С.Д.

г. Москва, Кутузовский пр-т, 4/2

109028, г. Москва, Хохловский пер., д.13, стр.2
тел.: (495) 916-21-55, факс: (495) 916-26-29
e-mail: info@sudexpert.ru

ОКПО 02844624   ОГРН 1027700335849
ИНН 7704055136   КПП 770901001

01.04.2021   № 1177/07-7-21

На № _____ от _____

Направляется заключение эксперта № 1177/07-7-21 от 01.04.2021 с приложением — фототаблицей, данное на основании постановления нотариуса от 24.03.2021 о назначении экспертизы.

Возвращаем присланные на исследование документы:

- копию доверенности от 27.06.2018 от имени ООО «Терра Инвест» о передаче полномочий Харитонову Д.А. на представление интересов ООО «Терра Инвест» (1 л.);

- Форму 2.2 в ПАО «Сбербанк России» - карточка с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В., в том числе на флэш-носителе (1 л.);

- Письмо б/н от 20.01.2020г. в ООО «Фридом», АО «Рождествено», ООО «Рождествено» (1 л.);

- Письмо б/н от 04.02.2020г. в ООО «Рождествено (8 л.);

- Письмо б/н от 06.02.2020г. в ООО «Фридом», АО «Рождествено», ООО «Рождествено» (1 л.);

- Письмо б/н от 21.02.2020 в АО «Рождествено», ООО «Рождествено» (1 л.);

- Письмо б/н от 28.02.2020г. в АО «Рождествено», ООО «Рождествено» (1 л.);

- Письмо б/н от 02.03.2020г. в АО «Рождествено», ООО «Рождествено» (1 л.);

- Письмо б/н от 04.03.2020г. в АО «Рождествено», ООО «Рождествено» (1 л.);

- Форма 1.29 от 12.12.2019 г. в ПАО «Сбербанк России» с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В. (1 л.),

- Форма 2.2 от 12.12.2019 г. в ПАО «Сбербанк России» с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В. в двух экземплярах (на 5 л. каждый экземпляр).

Сообщаем, что производство экспертизы оплачено представителем ООО «Терра Инвест».

Приложение:

1) заключение эксперта № 1177/07-7-21 от 01.04.2021 с подпиской эксперта и фототаблицей всего на 10 л.;

2) исследуемые документы всего на 27 л.;

3) прочие документы на 15 л.

Заместитель директора                                        Бочаров Г.Г.

Торопова Марина Владимировна
8-495-181-57-57 доб. 2701

# МИНИСТЕРСТВО ЮСТИЦИИ РОССИЙСКОЙ ФЕДЕРАЦИИ

### ФЕДЕРАЛЬНОЕ БЮДЖЕТНОЕ УЧРЕЖДЕНИЕ
### РОССИЙСКИЙ ФЕДЕРАЛЬНЫЙ ЦЕНТР СУДЕБНОЙ ЭКСПЕРТИЗЫ
### ПРИ МИНИСТЕРСТВЕ ЮСТИЦИИ РОССИЙСКОЙ ФЕДЕРАЦИИ

109028, Москва, Хохловский пер., д.13, стр.2     тел. (495) 916-21-55, факс (495) 916-26-29
e-mail: info@sudexpert.ru

## ПОДПИСКА ЭКСПЕРТА

Мне, работнику федерального бюджетного учреждения Российский федеральный центр судебной экспертизы при Министерстве юстиции Российской Федерации:

- заведующему учебно-методическим отделом, ведущему государственному судебному эксперту Тороповой Марине Владимировне, к.ю.н., имеющей высшее химическое и юридическое образование, дополнительное профессиональное образование по экспертным специальностям 3.1 "Исследование реквизитов документов" и 3.2 "Исследование материалов документов", право самостоятельного производства экспертиз по специальностям 3.1 и 3.2, общий стаж экспертной работы с 1987 года;

в связи с производством экспертизы № 1177/07-7-21, назначенной постановлением от 24.03.2021 нотариуса Алексеева С.Д. о назначении экспертизы, руководителем ФБУ РФЦСЭ при Минюсте России в соответствии со ст. 14 Федерального закона от 31.05.2001 № 73-ФЗ «О государственной судебно-экспертной деятельности в Российской Федерации» разъяснены права и обязанности эксперта, предусмотренные ст. 16 и 17 этого закона.

Об ответственности за дачу заведомо ложного заключения по ст. 307 УК РФ предупреждена.

Эксперт:                                                        Торопова М.В.

«24» марта 2021 года.

**МИНИСТЕРСТВО ЮСТИЦИИ РОССИЙСКОЙ ФЕДЕРАЦИИ
ФЕДЕРАЛЬНОЕ БЮДЖЕТНОЕ УЧРЕЖДЕНИЕ
РОССИЙСКИЙ ФЕДЕРАЛЬНЫЙ ЦЕНТР СУДЕБНОЙ ЭКСПЕРТИЗЫ
ПРИ МИНИСТЕРСТВЕ ЮСТИЦИИ РОССИЙСКОЙ ФЕДЕРАЦИИ**

109028, Москва, Хохловский пер., д.13, стр.2 тел. (495) 916-21-55, факс (495) 916-26-29
e-mail: info@sudexpert.ru

# ЗАКЛЮЧЕНИЕ ЭКСПЕРТА

по постановлению нотариуса Алексеева С.Д. о назначении экспертизы

«01» апреля 2021 года                                № 1177/07-7-21

Экспертиза начата: 09-00; 24.03.2021
Экспертиза окончена: 13-00; 01.04.2021

24.03.2021 в ФБУ РФЦСЭ при Минюсте России при постановлении нотариуса от 24.03.2021 Алексеева С.Д. о назначении экспертизы для производства судебно-технической экспертизы документов поступили подлежащие исследованию документы:

- копия доверенности от 27.06.2018 от имени ООО «Терра Инвест» о передаче полномочий Харитонову Д.А. на представление интересов ООО «Терра Инвест» ((далее – копия доверенности от 27.06.2018) на 1 л.;

- Форма 2.2 в ПАО «Сбербанк России» - карточка с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В., в том числе на флэш-носителе (далее – копия документа с флэш-носителя с подписью Березуевой Г.В. и оттиском печати ООО «Терра Инвест») на 1 л.;

- Письмо б/н от 20.01.2020г. в ООО «Фридом», АО «Рождествено», ООО «Рождествено» (1 л.);

- Письмо б/н от 04.02.2020г. в ООО «Рождествено (8 л.);

- Письмо б/н от 06.02.2020г. в ООО «Фридом», АО «Рождествено», ООО «Рождествено» (1 л.);

- Письмо б/н от 21.02.2020 в АО «Рождествено», ООО «Рождествено» (1 л.);

- Письмо б/н от 28.02.2020г. в АО «Рождествено», ООО «Рождествено» (1 л.);

- Письмо б/н от 02.03.2020г. в АО «Рождествено», ООО «Рождествено» (1 л.);

- Письмо б/н от 04.03.2020г. в АО «Рождествено», ООО «Рождествено» (1 л.);

- Форма 1.29 от 12.12.2019 г. в ПАО «Сбербанк России» с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В. (1 л.),

заключение эксперта № 1177/07-7-21

- Форма 2.2 от 12.12.2019 г. в ПАО «Сбербанк России» с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В. в двух экземплярах (на 5 л. каждый экземпляр).

Производство экспертизы поручено:

- заведующему учебно-методическим отделом, ведущему государственному судебному эксперту Тороповой Марине Владимировне, к.ю.н., имеющей высшее химическое и юридическое образование, дополнительное профессиональное образование по экспертным специальностям 3.1 "Исследование реквизитов документов" и 3.2 "Исследование материалов документов", право самостоятельного производства экспертиз по специальностям 3.1 и 3.2, общий стаж экспертной работы с 1987 года.

Эксперт Торопова М.В. предупреждена об ответственности за дачу заведомо ложного заключения по ст. 307 УК РФ.

На разрешение эксперта поставлен вопрос:

1. Изготовлена ли доверенность, выданная 27.06.2018 в пользу Харитонова Д.А. от имени ООО «Терра Инвест», путем технического монтажа с копированием изображений оттиска печати ООО «Терра Инвест» и (или) подписи Березуевой Г.В. из Формы 2.2 в ПАО «Сбербанк России» с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В. или других документов, представленных в качестве образцов?

После производства экспертизы документы были отмечены оттиском штампа "ФБУ РФЦСЭ".

# ИССЛЕДОВАНИЕ

*При производстве экспертизы использовалась следующая методическая литература:*

*Тросман Э.А., Черткова Т.Б. и др. Состав и свойства материалов письма // Справочное пособие для экспертов. – М.: ФБУ РФЦСЭ при Минюсте России, 2017.*

*Исследование денежных билетов, ценных бумаг и документов, изготовленных средствами электрофотографии. // Методические рекомендации. – М., ЭКЦ МВД РФ, 1998.*

*Торопова М.В. Экспертные технологии исследования документов, изготовленных путем монтажа // Судебная экспертиза, № 1(37), 2014, С. 54-63.*

*Производство судебной компьютерно-технической экспертизы. Методические рекомендации. Ч. IV. / под общ. ред. Усова А.И. колл. авт.– М.: РФЦСЭ, 2011.*

На исследование поступили документы, перечисленные во вводной части заключения эксперта.

Копия доверенности от 27.06.2018 представляет собой лист формата А4, на котором имеются следующие реквизиты: - бланк ООО «Терра Инвест», печатный

текст доверенности, изображение подписи Березуевой Г.В., изображение оттиска печати ООО «Терра Инвест». Все реквизиты имеют серо-черный цвет. Копия документа оставлена в наблюдательном производстве ЛСТЭД.

При микроскопическом исследовании копии доверенности от 27.06.2018 (микроскоп МБС-10, увеличение от 8 крат) установлено, что:

- штрихи всех реквизитов матовые, образованы в результате наложения микроточек базовых цветов (черного, голубого, малинового и желтого); - края штрихов неровные, с микроизвилистостями, нечеткими окончаниями элементов; красящее вещество штрихов частично проникает в толщу бумаги, образует достаточно равномерный тонкий слой на её поверхности.

Описанные признаки в совокупности свидетельствуют о том, что копия доверенности от 27.06.2018 отпечатана способом цветной струйной печати на печатающем устройстве струйного типа.

Копия документа с флэш-носителя с подписью Березуевой Г.В. и оттиском печати ООО «Терра Инвест» (на отдельном листе) представляет собой лист бумаги формата А4 в верхней части которого имеются: - печатный текст «Генеральный директор ООО «Терра Инвест» Березуева Галина Владимировна», ««___»____201_г.», подстрочные линии и подстрочный текст «Должность и ФИО (полностью) уполномоченного лица Участника сделки)» и «(подпись)»; - изображение подписи Березуевой Г.В.; - изображение оттиска печати ООО «Терра Инвест». Печатный текст выполнен красящим веществом серо-черного цвета, подпись и оттиск печати – синего цвета.

При микроскопическом исследовании (микроскоп МБС-10, увеличение от 8-ми крат) установлено, что копия документа с флэш-носителя с подписью Березуевой Г.В. и оттиском печати ООО «Терра Инвест» (на отдельном листе) отпечатана способом цветной струйной печати на печатающем устройстве струйного типа (описание признаков способа печати см. выше).

Остальные представленные на исследование документы (письма, формы 1.29, 2.2), перечисленные во вводной части, являются оригиналами, выполнены на листах формата А4, состоят из печатных реквизитов (текста, бланка) рукописных реквизитов (записей, подписей), оттисков печати ООО «Терра Инвест».

При микроскопическом исследовании реквизитов указанных документов (микроскоп МБС-10, увеличение от 8-ми крат) установлено, что:

- штрихи печатных текстов образованы из спекшихся микрочастиц, лежащих на поверхности бумаги, имеют неравномерный глянцевый блеск; - вокруг штрихов и по всему листу имеется осыпь из отдельных микрочастиц; - микрочастицы либо одного цвета (при монохромной печати), либо базовых цветов (при цветной печати);

- красящее вещество в штрихах записей и подписей Березуевой Г.В. располагается на поверхности бумаги, не проникая в её толщу, распределено в штрихах неравномерно (интенсивно окрашенные участки чередуются со слабоокрашенными и неокрашенными), имеет специфический блеск, не

заключение эксперта № 1177/07-7-21

растворяется в воде; - в штрихах видны следы неравномерного давления пишущего шарика; - ступенчатости, дискретности, отдельных микроточек разного цвета в штрихах не наблюдается;

- красящее вещество в штрихах оттисков печати ООО «Терра Инвест» проникает в толщу бумаги, не имеет блеска; - края штрихов неровные с небольшими расплывы по волокнам; - штрихи окрашены достаточно равномерно, не водянистые; - одноименные знаки в оттисках имеют одинаковую конфигурацию; - расстояния между знаками в словах равномерные; - слова, обозначения расположены симметрично относительно линий; - ступенчатости, дискретности, отдельных микроточек разного цвета в штрихах не наблюдается.

Перечисленные признаки свидетельствуют о том, что представленные на исследование документах (письмах, формах 1.29 и 2.2) печатные тексты выполнены способом электрофотографической печати (монохромной или цветной), подписи Березуевой Г.В. и рукописные записи выполнены пастами для шариковых ручек, оттиски печати нанесены штемпельными красками.

Для ответа на поставленный вопрос на первом этапе исследования проводилось изучение копии доверенности от 27.06.2018 (параметров шрифта, параметров форматирования, характера отображения подписи и оттиска печати). В результате установлено следующее.

Текст копии доверенности выполнен шрифтом "Times New Roman cyr", входящим в набор стандартных шрифтов ("True Type") текстовых редакторов операционной системы "Windows". Высота строчных букв текста – 1,7 мм, прописных букв – 2,4 мм (± 0,05).

Шрифт в копии отобразился со значительными искажениями, в частности, практически утрачены отсечки, спрямлены овалы, полуовалы, утолщены соединительные элементы.

Шрифт «М.П.» в месте расположения изображения оттиска печати отобразился иначе, чем остальной текст, а именно, высота букв 2,5 мм, отсечки отобразились более четко, тонкие и не сливаются с элементом, окончанием которого являются.

Текст в копии доверенности выровнен по ширине, кроме 2-й строки «Г. Москва двадцать седьмое июня две тысячи восемнадцатого года» и строки с подстрочной линией и расшифровкой подписи «Г.В. Березуева».

Расстояние от правого края листа (поле) до границы текста в строке с расшифровкой подписи «Г.В. Березуева» – 27,5 мм, то же, что и до разделительной линии бланка, но не соответствует расстоянию до правой границы основного текста – 31,5 мм, начинающегося словами «Настоящей доверенностью…..», заканчивающегося словами «….указанных выше полномочий.»

Все строки текста параллельны.

Подстрочная линия и расшифровка подписи «Г.В. Березуева» выполнены не в одну строку с текстом фрагмента «Генеральный директор», а смещены вверх на 1,5 мм относительно линии строки фрагмента «Генеральный директор».

Межстрочный интервал между предпоследней строкой основного текста доверенности («Доверенность выдана до двадцать седьмого июня две тысячи

заключение эксперта № 1177/07-7-21

двадцатого года без права..») и линией строки текста «Генеральный директор» составляет 14,5 мм, что не кратно межстрочному интервалу– 3,8 мм, с которым по умолчанию выполнен вышерасположенный текст.

Межстрочный интервал между предпоследней строкой основного текста доверенности и линией строки текста «Г.В. Березуева » составляет 13,0 мм, что также не кратно межстрочному интервалу– 3,8 мм, с которым по умолчанию выполнен вышерасположенный текст.

Расстояние от подстрочной линии до строки с текстом «М.П.» составляет 8,8 + 0,6 мм, до предпоследней строки основного текста – 24,0 мм, что не кратно межстрочному интервалу– 3,8 мм, с которым выполнен вышерасположенный текст.

Несовпадения линий строк нижнего фрагмента текста в копии доверенности показаны на Илл.1 фототаблицы, прилагаемой к заключению эксперта.

Таким образом, нижняя часть текста с реквизитами лица, от имени которого выполнена подпись и указанием на место печати выполнена с использованием иных параметров форматирования, чем те, которые применялись по умолчанию при электронном наборе вышерасположенного текста доверенности (без бланка).

Подпись Березуевой Г.В. отобразилась в копии нечетко, штрихи ступенчатые, с разрывами, нет плавных переходов интенсивностей окраски штрихов, окончания штрихов рваные. Описанные признаки свидетельствуют о том, что изображение подписи Березуевой Г.В. получено в копии путем неоднократного последовательного технического копирования.

Далее проводилось сравнительное исследование копии доверенности от 27.06.2018 с остальными документами.

В результате установлено, что в копии доверенности от 27.06.2018:

- изображение подписи Березуевой Г.В. отличается по конфигурации от подписей Березуевой Г.В.,

- изображение оттиска печати ООО «Терра Инвест» отличается по размеру (окружностей, знаков текста), по наличию и расположению обозначения «М.П.»

от, соответственно, подписей Березуевой Г.В. и оттисков печати ООО «Терра Инвест» в документах:

- Письме б/н от 20.01.2020 г. в ООО «Фридом», АО «Рождествено», ООО «Рождествено»; - Письме б/н от 04.02.2020 г. в ООО «Рождествено; - Письме б/н от 06.02.2020 г. в ООО «Фридом», АО «Рождествено», ООО «Рождествено»; - Письме б/н от 21.02.2020 г. в АО «Рождествено», ООО «Рождествено»; - Письме б/н от 28.02.2020 г. в АО «Рождествено», ООО «Рождествено»; - Письме б/н от 02.03.2020 г. в АО «Рождествено», ООО «Рождествено»; - Письме б/н от 04.03.2020 г. в АО «Рождествено», ООО «Рождествено»; - Форме 1.29 от 12.12.2019 г. в ПАО «Сбербанк России» с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В.; - Форме 2.2 от 12.12.2019 г. в ПАО «Сбербанк России» с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В. в 2-х экземплярах.

заключение эксперта № 1177/07-7-21

Таким образом, подписи Березуевой Г.В. и оттиски печати ООО «Терра Инвест» в документах:

- Письме б/н от 20.01.2020 г. в ООО «Фридом», АО «Рождествено», ООО «Рождествено»; - Письме б/н от 04.02.2020 г. в ООО «Рождествено»; - Письме б/н от 06.02.2020 г. в ООО «Фридом», АО «Рождествено», ООО «Рождествено»; - Письме б/н от 21.02.2020 г. в АО «Рождествено», ООО «Рождествено»; - Письме б/н от 28.02.2020 г. в АО «Рождествено», ООО «Рождествено»; - Письме б/н от 02.03.2020 г. в АО «Рождествено», ООО «Рождествено»; - Письме б/н от 04.03.2020 г. в АО «Рождествено», ООО «Рождествено»; - Форме 1.29 от 12.12.2019 г. в ПАО «Сбербанк России» с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В.; - Форме 2.2 от 12.12.2019 г. в ПАО «Сбербанк России» с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В. в 2-х экземплярах.

не использовались для изготовления копии доверенности от 27.06.2018.

При сравнительном исследовании копии доверенности от 27.06.2018 с копией документа с флэш-носителя с подписью Березуевой Г.В. и оттиском печати ООО «Терра Инвест» установлено следующее.

Изображения подписи Березуевой Г.В. в обеих копиях имеют одинаковые конфигурацию, размеры и характеризуются одинаковыми частными особенностями отображения (утолщениями, утоньшениями, характером окончаний, характером участков пересечения с подстрочной линией, неравномерной интенсивностью участков штрихов) – см. признаки 1–9 на Илл. 2 и 3 фототаблицы, прилагаемой к заключению эксперта.

Расстояние от начала подстрочной линии до участка пересечения с ней первого петлевого элемента подписи одинаково в обеих копиях (30 мм).

При наложении друг на друга подписи практически совпадают (имеется незначительное смещение, которое эксперт объясняет минимальными изменениями масштабирования при переводе из одного формата в другой в процессе сканирования, сохранения, а также при выборе параметров печати).

Изображения оттисков печати ООО «Терра Инвест» в обеих копиях характеризуются одинаковыми размерами, при наложении практически полностью совпадают. Текст «М.П.» по отношению к оттискам расположен одинаково. В то же время по отношению к подписям Березуевой Г.В. оттиски печати ООО «Терра Инвест» в копиях расположены по-разному.

Оценивая в совокупности выявленные признаки, эксперт приходит к следующему выводу.

В копии доверенности от 27.06.2018 и в копии документа с флэш-носителя с подписью Березуевой Г.В. и оттиском печати ООО «Терра Инвест» имеются изображение одной и той же подписи Березуевой Г.В. с подстрочной линией и одного и того же оттиска печати ООО «Терра Инвест» с текстом «М.П.».

заключение эксперта № 1177/07-7-21

В копии доверенности от 27.06.2018 изображение подписи Березуевой Г.В. с подстрочной линией и изображение оттиска печати ООО «Терра Инвест» с текстом «М.П.» были перенесены на документ по отдельности, вероятнее всего, в режиме вставки из другого электронного документа (или графического файла).

Установить изготовлена ли копия доверенности ООО «Терра Инвест» от 27.06.2018 способом технического монтажа путем копирования изображений оттиска печати ООО «Терра Инвест» и (или) подписи Березуевой Г.В. из документа с флэш-носителя с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В. не представляется возможным, вследствие того, что не представлен оригинал данного документа, а только его распечатанная электронная копия.

Подписи Березуевой Г.В. и оттиски печати ООО «Терра Инвест» в документах-оригиналах:

- Письме б/н от 20.01.2020 г. в ООО «Фридом», АО «Рождествено», ООО «Рождествено»; - Письме б/н от 04.02.2020 г. в ООО «Рождествено»; - Письме б/н от 06.02.2020 г. в ООО «Фридом», АО «Рождествено», ООО «Рождествено»; - Письме б/н от 21.02.2020 г. в АО «Рождествено», ООО «Рождествено»; - Письме б/н от 28.02.2020 г. в АО «Рождествено», ООО «Рождествено»; - Письме б/н от 02.03.2020 г. в АО «Рождествено», ООО «Рождествено»; - Письме б/н от 04.03.2020 г. в АО «Рождествено», ООО «Рождествено»; - Форме 1.29 от 12.12.2019 г. в ПАО «Сбербанк России» с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В.; - Форме 2.2 от 12.12.2019 г. в ПАО «Сбербанк России» с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В. в 2-х экземплярах.

не использовались для изготовления копии доверенности от 27.06.2018.

## В Ы В О Д Ы:

1. В копии доверенности от 27.06.2018 от имени ООО «Терра Инвест» о передаче полномочий Харитонову Д.А. представлять интересы ООО «Терра Инвест» и в копии документа с флэш-носителя с подписью Березуевой Г.В. и оттиском печати ООО «Терра Инвест» (названном в постановлении о назначении экспертизы «Форма 2.2 в ПАО «Сбербанк России» - карточка с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В.») имеется изображение одной и той же подписи Березуевой Г.В. с подстрочной линией и одного и того же оттиска печати ООО «Терра Инвест» с печатным текстом «М.П.».

В копии доверенности от 27.06.2018 от имени ООО «Терра Инвест» о передаче полномочий Харитонову Д.А. представлять интересы ООО «Терра Инвест» изображение подписи Березуевой Г.В. с подстрочной линией и изображение оттиска печати ООО «Терра Инвест» с текстом «М.П.» были перенесены на документ по отдельности, вероятнее всего, в режиме вставки из другого электронного документа (или графического файла).

заключение эксперта № 1177/07-7-21

Установить изготовлена ли копия доверенности от имени ООО «Терра Инвест» о передаче полномочий Харитонову Д.А. представлять интересы ООО «Терра Инвест» способом технического монтажа путем копирования изображений оттиска печати ООО «Терра Инвест» и (или) подписи Березуевой Г.В. из документа с флэш-носителя с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В. (названного в постановлении о назначении экспертизы «Форма 2.2 в ПАО «Сбербанк России» - карточка с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В.») не представляется возможным, ввиду непредставления оригинала данного документа.

Подписи Березуевой Г.В. и оттиски печати ООО «Терра Инвест» в документах-оригиналах:

- Письме б/н от 20.01.2020 г. в ООО «Фридом», АО «Рождествено», ООО «Рождествено»; - Письме б/н от 04.02.2020 г. в ООО «Рождествено; - Письме б/н от 06.02.2020 г. в ООО «Фридом», АО «Рождествено», ООО «Рождествено»; - Письме б/н от 21.02.2020 г. в АО «Рождествено», ООО «Рождествено»; - Письме б/н от 28.02.2020 г. в АО «Рождествено», ООО «Рождествено»; - Письме б/н от 02.03.2020 г. в АО «Рождествено», ООО «Рождествено»; - Письме б/н от 04.03.2020 г. в АО «Рождествено», ООО «Рождествено»; - Форме 1.29 от 12.12.2019 г. в ПАО «Сбербанк России» с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В.; - Форме 2.2 от 12.12.2019 г. в ПАО «Сбербанк России» с образцами оттиска печати ООО «Терра Инвест» и подписи Березуевой Г.В. в 2-х экземплярах,

не использовались для изготовления копии доверенности от имени ООО «Терра Инвест» о передаче полномочий Харитонову Д.А. представлять интересы ООО «Терра Инвест».

Эксперт:                                                                 Торопова М.В.

напечатано экземпляров - 2:
1- в адрес нотариуса Алексеева С.Д., адрес: г. Москва, Кутузовский пр-т, 4/2
2 – в наблюдательное производство ЛСТЭД
Торопова Марина Владимировна
8(495) 181-57-57 доб. 2701

заключение эксперта № 1177/07-7-21

**ФОТОТАБЛИЦА** к заключению эксперта №1177/07-7-21 от 01.04.2021.

Представляемого и совершать любые действия в рамках осуществления указанных выше полномочий.

Доверенность выдана до двадцать седьмого июня две тысячи двадцатого года без права передоверия.

Г.В. Березуева

Генеральный директор
ООО «Терра Инвест»

Илл. 1. Отсканированный фрагмент нижней части исследуемой копии доверенности от 27.06.2018.
Красными линиями показано, что текст «Генеральный директор», подстрочная линия и текст «Г.В. Березуева» выполнены не в одну строку.

заключение эксперта № 1177/07-7-21



Илл.2. Изображение подписи от имени Березуевой Г.В. в копии доверенности от 27.06.2018.



Илл.2. Изображение подписи от имени Березуевой Г.В. в копии документа с флэш-носителя с подписью Березуевой Г.В. и оттиском печати ООО «Терра Инвест».

Стрелками отмечены одинаковые особенности отображения подписей в обеих копиях.

Эксперт:                                                      Торопова М.В.

Страница 10 из 10



Пронумеровано, прошито и
скреплено печатью на

**MINISTRY OF JUSTICE OF THE RUSSIAN FEDERATION**

**Federal State-Funded Institution**
**RUSSIAN FEDERAL CENTRE OF FORENSIC SCIENCE UNDER THE MINISTRY OF JUSTICE OF THE RUSSIAN FEDERATION**

109028, Moscow Khokhlovski Pereulok Dom 13 Str. 2
Tel: (495) 916-21-55, fax: (495) 916-26-29
e-mail: info@sudexpert.ru

OKPO Code 02844624      OGRN Number 1027700335849
INN 7704055136   / KPP 770901001

*01 April 2021* No.*1177/07-7-21*

Your ref. _____ dated
_____

To the Notary Public
S.D. Alekseyev

City of Moscow, Kutuzovski Prospekt 4/2

We are sending you herewith Expert Statement No. 1177/07-7-21 dated 01 April 2021 with the attached photo-tables issued on the basis of the notary public's decision dated 24 March 2021 to perform an expert examination.

We are returning the following documents sent in for study:

− A copy of a power of attorney dated 27 June 2018 on behalf of Terra Invest LLC on delegation of authority to D.A. Kharitonov to represent Terra Invest LLC (one sheet);

− Sberbank of Russia PAO form 2.2: Card, including a scan on flash-drive, with samples of the impression of the seal of Terra Invest LLC and the signature of G.V. Berezuyeva (one sheet);

− Letter w/o number dated 20 January 2020 to Freedom LLC, Rozhdestveno JSC, and Rozhdestveno LLC (one sheet);

− Letter w/o number dated 04 February 2020 to Rozhdestveno LLC (eight sheets);

− Letter w/o number dated 06 February 2020 to Freedom LLC, Rozhdestveno JSC, and Rozhdestveno LLC (one sheet);

− Letter w/o number dated 21 February 2020 to Rozhdestveno JSC, and Rozhdestveno LLC (one sheet);

− Letter w/o number dated 28 February 2020 to Rozhdestveno JSC, and Rozhdestveno LLC (one sheet);

− Letter w/o number dated 02 March 2020 to Rozhdestveno JSC, and Rozhdestveno LLC (one sheet);

− Letter w/o number dated 04 March 2020 to Rozhdestveno JSC, and Rozhdestveno LLC (one sheet);

− Sberbank of Russia PAO form 1.29 dated 12 December 2019 with samples of the impression of the seal of Terra Invest LLC and the signature of G.V. Berezuyeva (one sheet);

− Sberbank of Russia PAO form 2.2 dated 12 December 2019 with samples of the impression of the seal of Terra Invest LLC and the signature of G.V. Berezuyeva, in two copies (each copy on five sheets).

We hereby inform you that a representative of Terra Invest LLC paid the expert fee.

Annex:

1) Expert Statement No. 1177/07-7-21 dated 01 April 2021 signed by the expert and a photo-table on 10 sheets in total;

2) Documents submitted for examination on 27 sheets in total;

3) Other documents on 15 sheets.

Deputy Director                    *(Signed)*                    G.G. Bocharov

Marina Vladimirovna Toropova
8-495-181-57-57 ext. 2701

# MINISTRY OF JUSTICE OF THE RUSSIAN FEDERATION

### FEDERAL STATE-FUNDED INSTITUTION
### RUSSIAN FEDERAL CENTRE OF FORENSIC SCIENCE UNDER THE MINISTRY OF JUSTICE OF THE RUSSIAN FEDERATION

| | |
|---|---|
| 109028, Moscow Khokhlovski Pereulok Dom 13 Str. 2 | Tel. (495) 916-21-55, fax (495) 916-26-29<br>e-mail: info@sudexpert.ru |

## SIGNED TESTIMONY OF THE EXPERT

I, employee of the Federal State-Funded Institution "Russian Federal Centre of Forensic Science under the Ministry of Justice of the Russian Federation:

- Head of the Academic Services Department, Leading State Forensic Expert, Marina Vladimirovna Toropova, PhD in Law, who has higher education in chemistry and law, additional professional education in specialties 3.1 "Examination of documents" and 3.2 "Examination of document details", a right to conduct independent expert assessment under specialties 3.1 and 3.2, and a total history of employment as an expert since 1987;

declare that in connection with Expert Assessment No. 1177/07-7-21 performed in pursuance of the order of Notary Public S.D. Alekseev to conduct an expert assessment dated 24 March 2021, the Head of the FBI RFCFS under the Ministry of Justice of Russia in accordance with Article 14 of the Federal Law of 31 May 2001 No. 73-F3 "On State Forensic Activity in the Russian Federation" the rights and duties of the expert specified in Articles 16 and 17 of this law were explained to me.

I understand that a person who intentionally makes a false statement is guilty of an offense under Article 307 of the RF Criminal Code.

| | | |
|---|---|---|
| Expert: | *(Signed)* | (M.V. Toropova) |

24 March 2021

## MINISTRY OF JUSTICE OF THE RUSSIAN FEDERATION
## FEDERAL STATE-FUNDED INSTITUTION
## RUSSIAN FEDERAL CENTRE OF FORENSIC SCIENCE UNDER THE MINISTRY OF JUSTICE OF THE RUSSIAN FEDERATION

109028, Moscow Khokhlovski Pereulok Dom 13 Str. 2 — Tel. (495) 916-21-55, fax (495) 916-26-29
e-mail: info@sudexpert.ru

# EXPERT STATEMENT

### prepared in pursuance of order of the notary public S.D. Alekseyev to perform an expert examination

01 April 2021

No. 1177/07-7-21

The Examination commenced at: 09-00; 24 March 2021
The examination was completed at: 13-00; 01 April 2021

In pursuance of the order by Notary Public S.D. Alekseyev dated 24 March 2021, the Russian Federal Centre of Forensic Science under the Ministry of Justice of the Russian Federation received the following documents for examination on 24 March 2021:

— a copy of the power of attorney dated 27 June 2018 on behalf of Terra Invest LLC authorising D.A. Kharitonov to represent Terra Invest LLC ("Copy of the PoA dated 27 June 2018") on one sheet;

— Sberbank of Russia PAO form 2.2: a card, including a scan on flash-drive, with samples of the impression of the seal of Terra Invest LLC and the signature of G.V. Berezuyeva ("Document Copy on a Flash Drive with the signature of G.V. Berezuyeva and the impression of the seal of Terra Invest LLC) on one sheet;

— Letter w/o number dated 20 January 2020 to Freedom LLC, Rozhdestveno JSC, and Rozhdestveno LLC (one sheet);

— Letter w/o number dated 04 February 2020 to Rozhdestveno LLC (eight sheets);

— Letter w/o number dated 06 February 2020 to Freedom LLC, Rozhdestveno JSC, and Rozhdestveno LLC (one sheet);

— Letter w/o number dated 21 February 2020 to Rozhdestveno JSC, and Rozhdestveno LLC (one sheet);

— Letter w/o number dated 28 February 2020 to Rozhdestveno JSC, and Rozhdestveno LLC (one sheet);

— Letter w/o number dated 02 March 2020 to Rozhdestveno JSC, and Rozhdestveno LLC (one sheet);

— Letter w/o number dated 04 March 2020 to Rozhdestveno JSC, and Rozhdestveno LLC (one sheet);

— Sberbank of Russia PAO form 1.29 dated 12 December 2019 with samples of the impression of the seal of Terra Invest LLC and the signature of G.V. Berezuyeva (one sheet);

– Sberbank of Russia PAO form 2.2 dated 12 December 2019 with samples of the seal of Terra Invest LLC and the signature of G.V. Berezuyeva, in two copies (each copy on five sheets).

The conduct of the examination was assigned to:

– Head of the Academic Services Department, Leading State Forensic Expert Marina Vladimirovna Toropova, PhD in Law, who has higher education in chemistry and law, additional professional education in specialties 3.1 "Examination of documents" and 3.2 "Examination of document details", a right to conduct independent expert assessment under specialties 3.1 and 3.2, and a total history of employment as an expert since 1987.

The Expert M.V. Toropova was warned that a person who intentionally makes a false statement is guilty of the offense under Article 307 of the RF Criminal Code.

The expert was to answer the following question:

1. Was the power of attorney issued on 27 June 2018 to D.A. Kharitonov on behalf of Terra Invest LLC made by montage editing through copying of the impression of the seal of Terra Invest LLC and (or) G.V. Berezuyeva's signature from Form 2.2 for Sberbank of Russia PAO with samples of the impression of the seal of Terra Invest LLC and G.V. Berezuyeva's signature or other documents provided as samples?

The documents were marked with the impression of the seal of FBI RFCFS after completion of the expert examination.

## STUDY

*The following methodological literature was used during the examination:*

*E.A. Trosman, T.B. Chertkova et al. COMPOSITION AND PROPERTIES OF WRITING MATERIALS // AN EXPERT'S GUIDE. – Moscow: FBI RFCFS under the RF Ministry of Justice, 2017.*

Examination of banknotes, securities and documents produced by electrophotography. // Methodological Recommendations. – Moscow. Forensic Science Centre of the Ministry of Internal Affairs of the Russian Federation, 1998

*M.V. Toropova, Expert technologies of examination of documents produced by means of montage editing // Forensic Science, Vol. No. 1 (37) 2014, pp. 54-63.*

*Forensic computer investigations. Methodological Guidelines. PART 4. Under the editorship of A.I. Usov, joint authors. Moscow: RFCFS, 2011.*

The documents listed in the preamble to the expert statement were submitted for examination.

The Copy of tteh PoA dated 27 June 2018 is an A4-size sheet bearing the following details: Letterhead of Terra Invest LLC, printed text of the power of attorney, image of G.V. Berezuyeva's signature, and image of the impression of the seal of Terra Invest LLC. All the details are grey-black. The document copy was added to the file on supervision proceedings of the Laboratory of Forensic Examination of Documents.

A microscopic examination of the copy of the PoA dated 27 June 2018 (MBS-10 microscope, 8x magnification) revealed that:

– the strokes of all details are matt, formed by superposition of microdots of basic colours (black, blue, crimson and yellow); The edges of the strokes are uneven, have micro-curves and indistinct ends of elements; The ink of the strokes partially penetrates the paper and forms a fairly uniform thin layer on its surface.

Expert statement No. 1177/07-7-21

The above features jointly indicate that the copy of the Power of Attorney dated 27 June 2018 was printed by colour inkjet printing on an inkjet-type printer.

The copy of the document from the flash-drive with the signature of G.V. Berezuyeva and the impression of the seal of Terra Invest LLC is an A4-size sheet with the following details in its upper part: The printed text "Galina Vladimirovna Berezuyeva, General Director of Terra Invest LLC", "___" _____201_", subscript lines and subline text "Position and name (in full) of the authorised person of the Party to the Transaction)" and "(signature)"; The image of G.V. Berezuyeva's signature; The image of the impression of the seal of Terra Invest LLC. The text was printed with grey-black ink, and the signature and stamp are in blue.

A microscopic examination (MBS-10 microscope, 8x magnification) revealed that the copy of the document from the flash-drive with the signature of G.V. Berezuyeva and the impression of the seal of Terra Invest LLC (on a separate sheet) was printed by colour inkjet printing on an inkjet-type printer (see description of signs of the print method above).

The other documents submitted for examination (letters, forms 1.29, and 2.2) listed in the preamble are originals made on A4-size sheets consisting of printed details (text, letterhead), handwritten details (notes, signatures), and impressions of the seal of Terra Invest LLC.

A microscopic examination of the details on the above documents (MBS-10 microscope, 8x magnification) revealed that:

− The strokes of printed texts were formed from microparticles that are lie on the surface of the paper and have an uneven glossy lustre; − individual microparticles are scattered around the strokes and all over the sheet; − the microparticles are either one colour (in case of monochrome printing) or a base colour (in case of colour printing);

− The ink in the strokes of G.V. Berezuyeva's notes and signatures is on the surface of the paper, does not penetrate it, is distributed unevenly in the strokes (intensely coloured areas alternate with slightly coloured and uncoloured areas), has a specific gloss and is insoluble in water; − the strokes show traces of uneven pressure of the writing ball; − no stepping, discreteness or individual microdots of different colours can be seen in the strokes;

− the ink in the strokes of impressions of the seal of Terra Invest LLC penetrates the paper and has no lustre; − the edges of the strokes are ragged with slight spreading along the fibres; − the strokes are rather evenly coloured, and are not watery; − the marks of the same name in the impressions have the same configuration; − the distances between the characters in the words are even; − words and markings are arranged symmetrically in relation to the lines; − no stepping, discreteness, or individual microdots of different colours can be seen in the strokes;

The above signs indicate that the printed documents submitted for examination (letters, forms 1.29 and 2.2) were made using electrophotographic printing techniques (monochrome or colour), G.V. Berezuyeva's signatures and handwritten notes were made using ballpoint pen inks, and the seal impressions were made using stamp inks.

In order to answer the question posed, in the first stage of the examination the expert examined the Copy of the PoA dated 27 June 2018 (font parameters, formatting parameters, nature of the signature and seal impression). The examination revealed the following:

The text of the copy of the power of attorney is made in Times New Roman Cyr font, which is part of the standard font ("TrueType") of Windows text editors. The height of lower case letters is 1.7 mm, and of upper case letters 2.4 mm (± 0.05).

The font in the copy shows considerable distortion; in particular the cut-offs were practically lost, the ovals and semi-ovals were flattened, and the connecting elements thickened.

The font of the "Place for Seal" text at the location of the seal impression is different from the rest of the text, namely the height of the letters is 2.5 mm, the cut-offs are clearer, are thin, and do not merge with the element whose endings they are.

The text in the copy of the power of attorney is aligned to the width, except the 2nd line "City of Moscow twenty-seventh of June two thousand eighteen" and the line with a subscript line and the name of signatory "G.V. Berezuyeva".

The distance from the right edge of the sheet (margin) to the border of the text on the line with the name of the signatory "G.V. Berezuyeva" is 27.5 mm, which is the same as to the separating line of the letter-head, but not the same as to the right border of the main text beginning with "This power of attorney....." and ending with "... the above authorities", which distance is 31.5 mm.

All lines in the text are parallel.

The subscript line and the name of the signatory "G.V. Berezuyeva" is not on the same line with the "General Director" fragment, but is offset upwards by 1.5 mm from the line of the "General Director" fragment.

The line spacing between the penultimate line of the main text of the power of attorney ("This power of attorney is issued until the twenty-seventh day of June two thousand and twenty without the right...") and the line of the text "General Director" is 14.5 mm, which is not a multiple of the 3.8 mm line spacing used in the above text by default.

The line spacing between the penultimate line of the main text of the power of attorney and the line of the text "G.V. Berezuyeva" is 13.0 mm, which is not a multiple of the 3.8 mm line spacing used in the above text by default.

The distance from the subscript line to the line containing the text "Place for Seal" is 8.8 + 0.6 mm, and to the penultimate line of the main text 24.0 mm, which is not a multiple of the 3.8 mm line spacing used in the above text.

Inconsistencies in the lines of the lower portion of the text in the copy of the power of attorney are shown in Fig. 1 of the photo-tables attached to the Expert statement.

Thus, the lower part of the text with the details of the person on whose behalf the signature is made and the indication of the place of the seal is made using formatting parameters that are different from those applied by default in the electronic typing of the above-mentioned power of attorney (without the letter-head).

The signature of G.V. Berezuyeva is not clearly displayed in the copy, the strokes are stepped, have breaks, there are no smooth transitions of the strokes colour intensities, and the ends of the strokes are ragged. The above signs indicate that the image of G.V. Berezuyeva's signature was obtained as a copy by repeated successive technical copying.

The expert then performed a comparative analysis of the Copy of the PoA dated 27 June 2018 versus the other documents.

As a result, the expert found that in the copy of the PoA dated 27 June 2018:

− The configuration of the image of G.V. Berezuyeva's signature is different from the signatures of G.V. Berezuyeva;

− The image of the impression of the seal of Terra Invest LLC is different in the size (circles, text symbols), and the presence and position of the marking "Place for Seal", respectively

from the signatures of G.V. Berezuyeva and impressions of the seal of Terra Invest LLC in the following documents:

- Letter w/o number dated 20 January 2020 to Freedom LLC, Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 04 February January 2020 to Rozhdestveno LLC; – Letter w/o number dated 06 February 2020 to Freedom LLC, Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 21 February 2020 to Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 28 February 2020 to Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 02 March 2020 to Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 04 March 2020 to Rozhdestveno JSC, and Rozhdestveno LLC; – Sberbank of Russia PAO form 1.29 dated 12 December 2019 with the samples of the impression of the seal of Terra Invest LLC and the signature of G.V. Berezuyeva; – Sberbank of Russia PAO form 2.2 dated 12 December 2019 with the samples of the impression of the seal of Terra Invest LLC and the signature of G.V. Berezuyeva in two copies;

Thus, the signatures of G.V. Berezuyeva and impressions of the seal of Terra Invest LLC from the following documents:

- Letter w/o number dated 20 January 2020 to Freedom LLC, Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 04 February January 2020 to Rozhdestveno LLC; – Letter w/o number dated 06 February 2020 to Freedom LLC, Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 21 February 2020 to Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 28 February 2020 to Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 02 March 2020 to Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 04 March 2020 to Rozhdestveno JSC, and Rozhdestveno LLC; – Sberbank of Russia PAO form 1.29 dated 12 December 2019 with the samples of the impression of the seal of Terra Invest LLC and the signature of G.V. Berezuyeva; – Sberbank of Russia PAO form 2.2 dated 12 December 2019 with the samples of the impression of the seal of Terra Invest LLC and the signature of G.V. Berezuyeva in two copies;

were not used to make a Copy of the PoA dated 27 June 2018.

A comparative examination of the copy of the PoA dated 27 June 2018 and the copy of the documents from the flash-drive with the samples of the signature of G.V. Berezuyeva and seal of Terra Invest LLC revealed that:

The images of G.V. Berezuyeva's signature on both copies have the same configuration and dimensions, and the same particular image features (thickening, thinning, nature of endings, nature of areas of intersection with the subscript line, non-uniform intensity of areas of strokes) – See features 1 to 9 on Figures 2 and 3 of the photo-tables attached to the expert statement.

The distance from the start of the subscript line to the intersection of the first loop element of the signature is the same on both copies (30 mm).

When superposed, the signatures are almost identical (there is a slight offset, which the expert attributes to minimal changes in scaling when converting from one format to another in course of scanning, saving, and when selecting print options).

The images of the impression of the seal of Terra Invest LLC on both copies have the same dimensions and are almost identical when superimposed. The "Place for Seal" text is identically positioned in relation to the impressions. At the same time, the impressions of the seal of Terra Invest LLC are positioned differently in relation to the signatures of G.V. Berezuyeva

Upon assessing the findings as a whole, the expert concludes as follows.

The copy of the PoA dated 27 June 2018 and the copy of the document from the flash drive with the signature of G.V. Berezuyeva and the seal impression of Terra Invest LLC contain an image of the same signature of G.V. Berezuyeva with the subscript line and the same seal impression of Terra Invest LLC with the "Place for Seal" text.

The image of G.V. Berezuyeva's signature with a subscript line and an image of the Terra Invest LLC seal with the "Place for Seal" text in the copy of the PoA dated 27 June 2018 were transferred to the document separately, most likely in copy-paste mode from another electronic document (or a graphic file).

It is impossible to establish whether the copy of the power of attorney of Terra Invest LLC dated 27 June 2018 was made by means of assembly by copying images of impressions of the seal of Terra Invest LLC and (or) of G.V. Berezuyeva's signature from the document with the samples of the impression of the seal of Terra Invest LLC and G.V. Berezuyeva's signature on the flash drive, because the original of this document was not presented, but only its printed electronic copy.

The signatures of G.V. Berezuyeva and impressions of the seal of Terra Invest LLC in the following original documents:

- Letter w/o number dated 20 January 2020 to Freedom LLC, Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 04 February January 2020 to Rozhdestveno LLC; – Letter w/o number dated 06 February 2020 to Freedom LLC, Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 21 February 2020 to Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 28 February 2020 to Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 02 March 2020 to Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 04 March 2020 to Rozhdestveno JSC, and Rozhdestveno LLC; – Sberbank of Russia PAO form 1.29 dated 12 December 2019 with the samples of the impression of the seal of Terra Invest LLC and the signature of G.V. Berezuyeva; – Sberbank of Russia PAO form 2.2 dated 12 December 2019 with the samples of the impression of the seal of Terra Invest LLC and the signature of G.V. Berezuyeva in two copies;

were not used to make the copy of the PoA dated 27 June 2018.

## C O N C L U S I O N S :

1. The copy of the Power of Attorney dated 27 June 2018 on behalf of Terra Invest LLC authorizing D.A. Kharitonov to represent Terra Invest LLC and the copy of the document from the flash drive bearing the signature of G.V. Berezuyeva and the seal impression of Terra Invest LLC (named in the order on examination "Form 2. 2 for Sberbank of Russia PAO – Card with samples of the seal impression of Terra Invest LLC and G.V. Berezuyeva's signature") bear the image of the same signature of G.V. Berezuyeva with the subscript line and the same impression of the seal of Terra Invest LLC with the printed text "Place for Seal."

The image of G.V. Berezuyeva's signature with a subscript line and the image of the impression of the seal of Terra Invest LLC with the "Place for Seal" text in the copy of the PoA dated 27 June 2018 issued on behalf of Terra Invest LLC and authorizing D.A. Kharitonov to represent Terra Invest LLC were transferred to the document separately, most likely in copy-paste mode from another electronic document (or a graphic file).

It is impossible to establish whether the copy of the Power of Attorney on behalf of Terra Invest LLC authorizing D.A. Kharitonov to represent Terra Invest LLC was made by means of montage editing by copying the image of impression of the seal of Terra Invest LLC and / or the signature of G.V. Berezuyeva from the flash drive bearing samples of the impression of the seal of Terra Invest LLC and signature of G.V. Berezuyeva (named in the order on examination "Form 2.2

for Sberbank of Russia PAO – Card with samples of the seal impression of Terra Invest LLC and G.V. Berezuyeva's signature") because the original document was not provided.

The signatures of G.V. Berezuyeva and impressions of the seal of Terra Invest LLC in the following original documents:

- Letter w/o number dated 20 January 2020 to Freedom LLC, Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 04 February January 2020 to Rozhdestveno LLC; – Letter w/o number dated 06 February 2020 to Freedom LLC, Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 21 February 2020 to Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 28 February 2020 to Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 02 March 2020 to Rozhdestveno JSC, and Rozhdestveno LLC; – Letter w/o number dated 04 March 2020 to Rozhdestveno JSC, and Rozhdestveno LLC; – Sberbank of Russia PAO form 1.29 dated 12 December 2019 with the samples of the impression of the seal of Terra Invest LLC and the signature of G.V. Berezuyeva; – Sberbank of Russia PAO form 2.2 dated 12 December 2019 with the samples of the impression of the seal of Terra Invest LLC and the signature of G.V. Berezuyeva in two copies,

were not used to make a copy of a power of attorney on behalf of Terra Invest LLC on delegation of authority to D.A. Kharitonov to represent Terra Invest LLC.

Expert:                    (Signed)                                        (M.V. Toropova)

[Round seal: MINISTRY OF JUSTICE OF THE RUSSIAN FEDERATION * Federal State-Funded Institution "Russian Federal Centre of Forensic Science * under the Ministry of Justice of the Russian Federation" * For Expert Statements]

Copies printed:
2, Copy 1 for Notary Public Alekseyev S.D., address: City of Moscow, Kutuzovski Prospekt 4/2
Copy 2 for the file of supervision proceedings of the laboratory of forensic examination of documents.
Marina Vladimirovna Toropova
8(495) 181-57-57 ext. 2701

**PHOTO-TABLE**   to Expert statement No. 1177/07-7-21 dated 01 April 2021

Представляемого и совершать любые действия в рамках осуществления указанных выше полномочий.

Доверенность выдана до двадцать седьмого июня две тысячи двадцатого года без права передоверия.

Г.В. Березуева

Генеральный директор
ООО «Терра Инвест»

Figure 2. 1. The scanned fragment of the bottom of the examined Copy of the PoA dated 27 June 2018. The red lines indicate that the text "General Director", the subscript line and the text "G.V. Berezuyeva" are not on the same line.



Figure 2. Image of the signature on behalf of G.V. Berezuyeva in the Copy of the PoA dated 27 June 2018



Figure 2. Image of the signature of G.V. Berezuyeva in the copy of the documents from the flash-drive with the signature of G.V. Berezuyeva and impression of the seal of Terra Invest LLC.

The arrows indicate the same signature image features in both copies.

Expert:                    *(Signed)*                                    (M.V. Toropova)

[Round seal: MINISTRY OF JUSTICE OF THE RUSSIAN FEDERATION * Federal State-Funded Institution "Russian Federal Centre of Forensic Science * under the Ministry of Justice of the Russian Federation" * For Expert Statements]

Numbered, stitched together and sealed on eleven (11) sheets

Expert:            (*Signed*)                                      (M.V. Toropova)
                   [Round seal: MINISTRY OF JUSTICE OF THE RUSSIAN
                   FEDERATION * Federal State-Funded Institution "Russian
                   Federal Centre of Forensic Science * under the Ministry of
                   Justice of the Russian Federation * [For documents]

*Перевод данного текста с русского языка на английский язык выполнен переводчиком*
*Сироткиной Марией Олеговной*



**Российская Федерация**
**Город Москва**
*Десятого июня две тысячи двадцать первого года*

*Я, Ребрина Елена Дмитриевна, временно исполняющая обязанности нотариуса города Москвы Акимова Глеба Борисовича, свидетельствую подлинность подписи переводчика Сироткиной Марии Олеговны.*
*Подпись сделана в моем присутствии.*
*Личность подписавшего документ установлена.*

*Зарегистрировано в реестре: № 77/09 – н/77 – 2021 –* 44-415
*Уплачено за совершение нотариального действия: 400 руб. 00 коп.*

Е.Д. Ребрина

*Прошнуровано, пронумеровано*
*и скреплено печатью* 25 ли(ст-а,-ов).

*ВРИО нотариуса:*

This text is translated from Russian into English by the translator Sirotkina Mariya Olegovna

**Russian Federation**
**City of Moscow**
**The 10th of June, two thousand and twenty-one**
I, Rebrina Elena Dmitrievna, temporarily performing duties of Notary of Moscow Akimov Gleb Borisovich, hereby certify that this is a true signature of Sirotkina Mariya Olegovna, the translator, made in my presence.
The personality of the translator is identified.
Registered under No._____
Paid for the notarial act: 400 roubles.
Acting Notary      /signature/  E.D. Rebrina
Official seal: * Notary Public G. B. Akimov   * Notarial district City of Moscow. * Taxpayer Individual Number: 770400047857 *.
Laced, numbered and sealed a total of ___ sheets
Acting Notary      /signature/
Official seal: * Notary Public G. B. Akimov   * Notarial district City of Moscow. * Taxpayer Individual Number: 770400047857 *.



Российская Федерация
Город Москва

10 ИЮН 2021 ———————————————— года

Я, Ребрина Елена Дмитриевна, временно исполняющая
обязанности нотариуса города Москвы Акимова Глеба Борисовича,
свидетельствую верность копии с представленного мне документа.

Зарегистрировано в реестре: № 77/09-н/77-2021-9-645
Уплачено за совершение нотариального действия: 1560 руб. 00 коп.

Е.Д. Ребрина

Всего прошнуровано,
пронумеровано и скреплено
печатью 26 листов

ВРИО нотариуса

## APOSTILLE

(Convention de la Haye du 5 octobre 1961)

1. Страна: Российская Федерация
   Настоящий официальный документ
2. был подписан      *Ребриной Е.Д.*

                          (фамилия)

3. выступающим в качестве

        *вр.и.о. нотариуса Акимова Г.Б.*

                        (название должности)

4. скреплен печатью/штампом

        *нотариуса г. Москвы Акимова Г.Б.*

                        (название учреждения)

### УДОСТОВЕРЕНО

5. в городе     *Москва*       6.     *15.06.2021 г.*

                                                (дата)

7. *Никитиной А.О. начальником отдела Главного управления Министерства*
   *юстиции Российской Федерации по Москве*

                      (название удостоверяющего органа)

8. за №     *77/19067-21*

9. печать/штамп              10. подпись

Настоящий апостиль удостоверяет подлинность подписи и должность лица, подписавшего документ, и, в надлежащем случае, подлинность печати или штампа, которыми скреплен этот документ. Апостиль не удостоверяет содержание документа, в отношении которого был выпущен./ This Apostille only certifies the authenticity of the signature and the capacity of the person who has signed the public document, and, where appropriate, the identity of the seal or stamp which the public document bears. This Apostille does not certify the content of the document for which it was issued.



Прошито, пронумеровано и скреплено печатью)
_17 ( двадцать семь _____ ) лист _об_

Начальник отдела
Главного управления Министерства юстиции
Российской Федерации по Москве

А.О. Никитина

# EXHIBIT F

# AO Rozhdestveno and OOO Rozhdestveno

## Fact-finding investigation report
25 December 2020

*Strictly confidential*

# Glossary

| Term | Definition |
|---|---|
| Scope period | 1 January 2016 − 31 May 2020, unless otherwise indicated in the text of the Report |
| Report | Fact-finding investigation report |
| Master developer | OOO Rozhdestveno |
| Project | Residential complex "Mir Mitino" |
| Ptitsefabrika | AO Ptitsefabrika Krasnogorskaya |
| RUB | Russian ruble |
| m | Million |
| K | thousand |
| VAT | value added tax |
| OOO | limited liability company in Russia |
| AO | joint-stock company in Russia |
| IE | individual entrepreneur |
| USRLE | Unified State Register of Legal Entities |
| SPARK | SPARK-Interfax database-reference and information system |
| MCPD | Moscow City Property Department |
| IC / Investment Contract | investment contract dated 3 September 2015 |
| Co-investment contract/agreement | agreement on participation in shared construction |
| Expert report for July 2018-June 2019 | report of AO AKK EKFI on the examination of financial and economic activities of OOO Rozhdestveno for the period from 1 July 2018 to 30 June 2019 |
| n/a | not applicable |
| n/d | no data |
| FZ-214 | Federal law No 214-FZ dated 30 December 2004 "On shared-equity construction of apartment buildings and other real estate and on amending certain items of Russian legislation" |
| RFQ | request for quotation |
| links/linked to | The terms "link" and respective derivatives "to be linked to", "had links to", etc., were used to show a connection/relation/affiliation (both direct and indirect) between objects, such as people (including targets of this investigation), entities, transactions, events, places, etc. similar to the context used by the Financial Action Task Force in its reports and investigation guidance |
| KS-2, KS-3 | Forms KS-2 and KS-3 are an act of works performed used in the construction industry when carrying out construction and installation work |

Strictly confidential



# Scope of work

The consultant performed the following works:

▶ Collection and analysis of information (including statutory documents, minutes of shareholders' meetings, contracts, analytical tables, and other documents) provided by the Client in acts No 1 dated 24 September 2020, No 2 dated 23 October 2020, No 3 dated 27 October 2020, No 4 dated 30 October 2020 as well as information from open and expert sources.

▶ Analysis of the business profiles and business interests of key persons of AO Rozhdestveno and OOO Rozhdestveno (including M. A. Cherkasov, D. A. Kharitonov, K. S. Bondarenko).

▶ Cash flow analysis of AO Rozhdestveno and OOO Rozhdestveno in order to determine the structure of cash inflow and outflow as well as to identify the main counterparties of AO Rozhdestveno and OOO Rozhdestveno.

▶ Mass counterparties screening aimed at identification of potentially unreliable counterparties, conflict of interest, etc.

▶ Analysis of supporting documentation to identify potentially suspicious transactions, fraud and misuse of funds:

  ▶ Analysis of business relationships between OOO Rozhdestveno and suppliers, in particular, OOO Enki Konstrakshn, OOO SK Lider, AO MSK Energo, including:

    ▶ Analysis of procurement process

    ▶ Analysis of contract terms

    ▶ Market price benchmark of goods, works and services provided

  ▶ Analysis of the apartment sales transactions aimed to identify non-commercial, disadvantages or questionable terms, e. g. understated prices, conflicts of interest, and unjustified discounts.

  ▶ Analysis of other transactions, including detailed cash flow and supporting documents analysis.

▶ Search for assets potentially misappropriated and owned by the key individuals or their relatives.

Strictly confidential



# Executive summary (1/9)

| General information |
| --- |

**Links between the Project participants and indications of conflict of interest**

We analyzed the activities OOO Rozhdestveno, the subsidiary of AO Rozhdestveno and developer of the residential complex "Mir Mitino". According to the Unified Housing Information System, as of the date of the Report **five** buildings of the Project (7, 8, 9, 10 and 10.1) have been commissioned, **three** buildings (14, 15, 15.1) and **five** parking lots (8 – 10, 14, 15) are currently being constructed. We analyzed the relationships between the Master developer and key participants of the Project. The analysis revealed the following:

► *Two General contractors without an apparent economical and technical rationale*

Two General contractors, AO HK GVSU Tsentr and OOO SK Lider, have been involved in the construction and installation works at the second step of the Project's first stage; in addition, both General contractors have been engaged in the construction of buildings No 14 and No 15 jointly.

► *Indicators of affiliation and conflict of interest*

During the Scope period the technical supervision has been performed by OOO Arkhstroyinvest and OOO UK Razvitie (the Project's technical supervisors) potentially affiliated with OOO SK Lider and AO HK GVSU Tsentr (the Project's General contractors), which can be determine as an indicator of conflict of interest during the acceptance of the construction and installation works. We also noted potential links between the Master developer, the Technical supervisors (OOO Arkhstroyinvest and OOO UK Razvitie) and the General contractors (OOO SK Lider and AO HK GVSU Tsentr). *The key participants of the Project are presented in chart below.*



* *There is no information on the contractual cost of services: the contract between the Master developer and OOO UK Razvitie for performing the function of a technical customer was not provided to the Consultant upon request.*

Strictly confidential


# Executive summary (2/9)

**Co-Investor AO Ptitsefabrika Krasnogorskaya**

| | | |
|---|---|---|
| **RUB 1,877m**<br><br>Total amount to be compensated by the Master developer to Ptitsefabrika in accordance with addendum No 5 dated 18 December 2017 | Based on the analysis of the relationship between the Master developer and AO Ptitsefabrika Krasnogorskaya (the co-investor of the Project), we noted the following:<br><br>► *Potentially questionable subject of an addendum to the Investment contract*<br><br>In accordance with the subject of addendum No 5 dated 18 December 2017 to the Investment contract, to secure the obligations on creation of the Project's second stage objects as well as for compensation of costs for the change of authorized use of land, the Master developer shall transfer to Ptitsefabrika a security deposit totaling **RUB 1,877,199k**, while according to the terms indicated in the addendum, this amount is not refundable, which is non-compliant with the economic substance of a security deposit.<br><br>According to the expert's report for the period July 2018 – June 2019, representatives of Master developer provided comments that the aforementioned amount appears to be the repurchase payment by Master developer from Investor for the Project's residential and non-residential space. Therefore, there is a potential inconsistency between the actual purpose of the transaction and the subject of the addendum aimed to officially meet the criteria specified in article No 18 of 214-FZ "Use of funds by the Master developer". | 47-55 |
| **RUB 3,097m**<br><br>Total amount of **eight** co-investment contracts between the Master developer and Ptitsefabrika analyzed<br><br>**RUB 19-40k /sq m**<br><br>Potentially understated costs of residential and non-residential space under co-investment contracts with Ptitsefabrika | *Potentially understated prices under co-investment contracts with Ptitsefabrika*<br><br>The average cost per square meter of space under **eight** co-investment contracts concluded between the Master developer and Ptitsefabrika totaling **RUB 3,096,607k** amounted to **RUB 19-20k** for buildings No 7-10.1 and **RUB 40k** for buildings No 14-15.1 which significantly lower than:<br><br>► the average actual costs as of 31 December 2018 for the construction of buildings No 7-10.1 commissioned in 2019, which varied from **RUB 36k** to **RUB 41k** per sq m.<br><br>► the planned cost for the construction of Project spaces based on the project declarations, actual as of the date of the present Report, which varied from **RUB 43k** to **RUB 65k** per sq m.<br><br>► the average cost of selling the Project spaces to other customers, information on which is presented in the Master developer's register of the co-investment contracts dated 21 November 2019, which varied from **RUB 111k** to **RUB 136k** per sq m. | 78 |

*Continued on the next page*

Strictly confidential



# Executive summary (3/9)

**Co-Investor AO Ptitsefabrika Krasnogorskaya – *continued***

**RUB 1,277m**

Loss of the Master developer under the co-investment contract with Ptitsefabrika based on the results of operations in January - June 2019

**RUB 1,877m**

The amount of the non-refundable security deposit reflected by the Master developer as the cost of the main production

*Incorrect documenting and recording of transactions under co-investment contracts with Ptitsefabrika*

► According to the Expert Report for July 2018 – June 2019, the Master developer's loss under the co-investment contract with Ptitsefabrika totaled **RUB 1,276,655k** for the period from 1 January 2019 to 30 June 2019.

This amount resulted from the difference between the actual costs of construction and the amount of financing received under the respective co-investment contracts was fully recognized for income taxation that increases the risk of disputes between the Master developer and the tax authorities with respect to the declared income tax and the reported Master developer's loss.

► According to the accounting data, the Master developer reflected the security non-refundable payment totaling **RUB 1,877,198k** on the account 20 "Main production", while:

   ► the approach to reflecting costs does not correspond to the content of the supporting documents provided, which is an additional indicator that the subject of addendum No 5 to the Investment Contract appears to be fictitious.

   ► documents confirming the approach for calculating the price of residential and non-residential spaces repurchased by the Master developer from Ptitsefabrika were not provided to the Expert.

*Indicators of links between Ptitsefabrika and the key individuals of the Project*

Based on the results of the analysis of publicly available sources, we observed the following:

► In addition to the residential complex "Mir Mitino", AO GVSU Tsentr and Capital Group are jointly involved in the construction of the residential complex "Positiv".

► The PIK Group is a partner of Capital Group in the implementation of several projects and S. E. Gordeev (the President of PIK Group) was potentially linked to M. A. Cherkasov via AO Investment Company Rosbuilding.

81

*Continued on the next page*

Strictly confidential



# Executive summary (4/9)

**Developer and technical supervisor OOO UK Razvitie**

**RUB 1,314m**

The amount of payments from the Master developer to OOO UK Pazvitie in January 2017- May 2020.

**RUB 14,4m**

**per month**

Fixed remuneration for Project management from April 2018, potentially contrary to economical feasibility

We analyzed relationships between the Master developer and OOO UK Razvitie (the Technical supervisor and the Developer of the Project) and noted the following:

*Potential discrepancy between the Developer's fees and economical feasibility of the Project*

► According to addendum No 7 dated 30 March 2018 to agreement No 1-11 / 2015 dated 14 November 2015, the fees for the project management services became fixed and totaled **RUB 14,438k** per month since 1 April 2018. At the same time, according to the Master developer's financial statements, there has been a significant reduction in the pace of construction since March 2019.

► According to open sources, during the period from September 2019 to June 2020* the second step of the first stage of construction was suspended, while according to the Master developer's cash flow, the Master developer continued to pay the fixed Developer's fees totaling **RUB 14,438k** per month that contradicts the project pace and economical feasibility.

*Discrepancy between the actual quality of services and the quality stipulated by the agreement and the Russian legislation*

► We analyzed the results of inspections performed by the government authorities with respect to the Master developer and noted that **189** out of **612** analyzed violations (or **31%**) relate to the period from November 2019 to August 2020 or the period when the technical supervision was being performed by OOO UK Razvitie. This observation is an indicator of the inconsistency between the actual quality of technical supervision services provided and the requirements of the relevant regulations.

*Other observations*

► According to the report of AO AKK EKFI on the examination of financial and economic activities of OOO UK Razvitie for the period from 1 July 2018 to 30 June 2019, OOO UK Razvitie purchased Mercedes Benz S 350 BlueTEC 4MATIC at a price totaling **RUB 5,549k** and recorded the asset in the company's accounting database as a fixed asset. It should be noted that the Mercedes Benz can be classified as a premium class automobile, was purchased during the Scope period and potentially sourced from the Master developer's funds.

60-61

*Continued on the next page*

*\*According to the photo-fixing materials posted on the website of the residential complex "Mir Mitino" and presented in Appendix 6 to this Report as well as according to the information portal Moscow city news Agency.*

Strictly confidential   **EY**

# Executive summary (5/9)

| General contractor AO HK GVSU Tsentr |
|---|

**RUB 9,409m**

Total cost of construction and installation works under the contract with AO HK GVSU Tsentr

**RUB 5,494m**

The total amount of payments made by the Master developer to AO HK GVSU Tsentr for the period from 1 January 2017 to 31 May 2020

**RUB 862m**

The amount of excluded works from the complex of construction and installation works

We analyzed the relationship between the Master developer and AO HK GVSU Tsentr, the General contractor for the construction of buildings No 7-10, 10.1, 14-15 (partially), and observed the following:

► *Exclusion of works from the complex of construction and installation works, including the arrangement of individual structural elements of buildings*

Based on the results of analysis of agreement No 01/ГП-Мит/2016 dated 7 April 2016 we noted that certain types of works were excluded from the complex of construction and installation works to be performed by AO HK GVSU Tsentr, including works on the arrangement of individual structural elements of buildings that potentially contradicts common practice, according to which the general contractor is responsible for the quality of the full complex of construction and installation works as well as for the final result of the Project.

► *Slow pace of construction*

As of the date of the present Report we noted that the percentage of completion of buildings No 14 and 15 is 1% and 5%, respectively, while per the actual versions of project declarations the planned level of percentage of completion for the third quarter of 2020 is 60%.

► *Potentially excessive amount of guarantee retention to be paid*

According to the correspondence provided, the Master developer notified OOO Terra Invest of the need to attract credit funds to pay **RUB 458,936k** to AO HK GVSU Tsentr as the guarantee retention, while according to the terms of addendum No 42, the estimated amount of such payment is **RUB 343,803k** or **RUB 115,133k** less than the aforementioned amount.*

► *Indicators of links between the General contractor and the key individuals of the Project*

As the part of the affiliation analysis, we noted the following:

► In May-June 2010 M. A. Cherkasov, General Director of the Master developer, held the position of Manager (representative of the managing company) in AO HK GVSU Tsentr.

► A. V. Dolin, a potential relative of K. S. Bondarenko (co-owner of the Master developer's second shareholder OOO Fridom), was the General Director of AO HK GVSU Tsentr from October 2010 to December 2010 and from January 2016 to February 2018.

63-64

*Continued on the next page*

*\*It should be noted that for the purpose of verifying the amount of the actual guarantee retention, it is necessary to analyze the acts of work performed under the contract with AO HK GVSU Tsentr.*

Strictly confidential

EY

# Executive summary (6/9)

---

**General contractor OOO SK Lider**

**RUB 3,527m**

Total cost of construction of buildings 14, 15, 15.1 under contracts with AO HK GVSU and OOO SK Lider

**RUB 1,127m**

The total amount of payments made by the Master developer to OOO SK Lider for the period from 1 January 2017 to 31 May 2020

**RUB 263m**

The amount of payments made by the Master developer to OOO SK Lider for the period from 1 January 2017 to 31 May 2020 for buildings 14, 15 and 15.1

**RUB 195m**

The amount of work performed by OOO SK Lider on buildings 14, 15, 15.1, according to the acts of work performed

We analyzed the relationship between the Master developer and OOO SK Lider, the General contractor of buildings No 14-15 (partially), 15.1 and the parking lots No 8, 9, 14 and 15. Based on the results of the analysis, we noted the following:

► *Slow pace of construction*

We noted that the percentage of completion of buildings No 14, 15 and 15.1 is **1%, 5%, 0.3%**, respectively, while per the actual versions of project declarations the planned level of percentage of completion for the third quarter of 2020 is **60%**. *Details are presented in the charts below.*



**Building 14. Percentage of completion– 1%**

■ *Total cost of construction under contracts with AO GVSU Tsentr and OOO SK Lider*

**Building 15. Percentage of completion – 5%**

■ *The amount of payments, according to the data on payments to OOO SK Lider*

**Building 15.1. Percentage of completion – 0,3%**

■ *The amount of work performed by OOO SK Lider, according to the provided acts of work performed*

It should be noted that the total amount of payments in the amount of **RUB 262,951k** exceeds the total cost of work performed in the amount of **RUB 195,019k** by **RUB 67,932k**, according to the provided acts of work performed (KS2, KS3).

► *Integrity red flags identified*

We noted the following red flags related to OOO SK Lider:

► According to the register of contracts between the Master developer and OOO SK Lider, the first contract between companies was concluded on 5 March 2018 or **six** days after the counterparty joined the self-regulated organization.

► The Master developer's payments to OOO SK Lider in 2019 amounted to **RUB 585,678k** that exceeded the amount of total cash inflow indicated by the supplier in the cash flow statement for the respective period totaling **RUB 506,059k**.

67 - 71

*\*It should be noted that the acts of work performed KS-2 No 8 dated 29 February 2020 for construction and installation works on the building 14 in the amount of 16m RUB was not signed by the Master developer and technical client-OOO UK Razvitie.*

Strictly confidential



# Executive summary (7/9)

**General contractor OOO SK Lider - *continued***

## RUB 4,5m

The total cost of OOO SK Lider for the security services of the Project's premises based on the acts of work performed

## 25-109%

Potentially inflated prices for the security services according to the acts of works performed with OOO SK Lider from the approximate level of average market cost

## RUB 186k / security post per month without VAT

The amount of costs for security services in accordance with the acts of OOO SK Lider

► *Potentially inflated prices of the security services*

We conducted market price benchmark analysis with respect to the security services included in the complex of works related to the pre-production period under contract No 03CMP/2019 dated 15 April 2019. Based on the results of this analysis we noted that the contract prices are potentially inflated from **25%** to **109%** of the average market price depending on the amount of security personnel working hours. Potential economic loss was estimated between **RUB 1,990k** and **RUB 3,560k**.*

► *Indicators of links between the General contractor and other key individuals of the Project*

As part of the affiliation analysis, we noted the following:

► V. F. Peletsky, who held the position of General Director of OOO SK Lider from March to August 2018, owned 33% of of OOO Consult-development from August 2014 to December 2016; this company since November 2015 has owned 20% of OOO UK Razvitie, the Developer of the Project.

► N. T. Aiginin, who has owned shares of OOO SK Lider since March 2018, was the General Director from April 2017 to May 2018 and 50% owner from April 2017 to December 2018 of OOO Rigel, whose owner from April 2017 to August 2018 was A. M. Cherkasov.

72, 99 - 102



*It should be noted that these results are preliminary and require clarification in terms of parameters that affect the cost of services, such as the type of security service, the schedule of work and other conditions that are contained in the contract and/or the terms of reference for the specified contract, not provided to the Consultant upon request.

Strictly confidential



# Executive summary (8/9)

**Other transactions with related parties**

## RUB 2,5m

Total outstanding loans received from related parties as at 31 December 2019

As part of this Report, we analyzed the terms of two loan agreements between the Master developer and Viktor Viktorovich Shendrik, the Master developer and OOO NDV Moscow. The amount of the Master developer's debt under these agreements as of 31 December 2019 totaled **RUB 2,475k**. Based on the results of the analysis, we noted the following:

► *Potentially non-commercial terms of loan agreements*

Based on the analysis of the terms of the loan agreement with V. V. Shendrik and addendum No 2 dated 1 March 2019 to the agreement, the interest rate was **15%** during the period from 29 December 2015 to 28 February 2019 and **11%** from 1 March to 31 December 2019, which exceeded the key rate of the Central Bank of the Russian Federation varied from **7.25%** to **11%** in January 2016 – February 2019 and from **6.25%** to **7.75%** in April – December 2019.

► *Lack of economical feasibility in extending loan agreements*

Based on the analysis of addenda to the loan agreements with V. V. Shendrik and OOO NDV Moscow, we noted that the agreement with V. V. Shendrik was extended until 30 December 2023, and with OOO NDV Moscow – until 24 August 2024, in the absence of obvious economic feasibility and the availability of resources sufficient to repay this debt (including such sources as interest on deposits, etc.).

► *Indicators of links between the lenders and the key persons of the Project*

In the course of affiliation check we noted links between OOO NDV Moscow and A. A. Khrustalev, the former General Director of the Master developer, and between V. V. Shendrik and M. A. Cherkasov, the General Director of the Master developer. Further analysis of open sources identified that V. V. Shendrik holds the position of Head of Security in PAO RZhD and is a member of Board of Directors in PAO TransKonteiner. *The affiliation scheme is represented below.*



88 - 89

*Continued on the next page*

Strictly confidential

**EY**

# Executive summary (9/9)

| **Mass counterparties screening** | | |
|---|---|---|
| **RUB 3,342**m <br><br> Or **15%** was sent to high-risk counterparties in January 2017-may 2020. <br><br> **RUB 7,972**m <br><br> Or **35%** was sent to potentially related legal entities in January 2017-May 2020 | ► As part of the Master developer's counterparties screening, we identified **20** payers (the inflow – **RUB 308,769k** or **1%** of total inflow in January 2017 – May 2020) and **56** recipients (the outflow – **RUB 3,342,101k** or **15%** of total outflow) of the Master developer's funds with a higher level of risk (five points or higher according to the applied scoring model*). <br><br> ► In the course of affiliation check between the key individuals of the Project and the Master developer's counterparties, we identified indicators of potential affiliation in relation to **four** legal entities-payers, the total amount of the Master developer's receipts from which was **RUB 14,613k** or less than **1%** from the total amount of Master developer's inflow, and **11** legal entities-recipients of funds, the total amount of payments to which totaling **RUB 7,972,494k** or **35%** from the total amount of Master developer's payments. | 148 - 150 |

| **Questionable payments to contractors and other counterparties** | | |
|---|---|---|
| **Questionable payments from the Master developer to various counterparties** | In the course of the analysis of the Master developer's payments to various counterparties (other than the key participants of the Project), we noted the following categories of questionable payments: <br><br> ► for potentially conflicting or duplicated services, in particular: <br> ►► for project support services to **11** counterparties totaling **RUB 193,328k** <br> ►► for construction and installation works to **four** counterparties totaling **RUB 25,778k** <br> ►► for the preparation of project and working documentation to **four** counterparties totaling **RUB 24,259k** <br><br> ► other questionable payments, including: <br> ►► payments for potentially fictitious services to OOO Technobusiness totaling **RUB 230,000k**, subsequently returned to the Master developer <br> ►► payments to **two** individuals linked to the key participants of the Project totaling **RUB 12,060k** <br><br> It should be noted that these observations are preliminary and require verification with the contracts and supporting documents. | 135 - 144 |

*In the course of this analysis, the Consultant used an EY scoring model based on 28 risk indicators, including those recommended by the Federal Tax Service of the Russian Federation for the purpose of identifying signs indicating possible suspicion of legal entities and their non-involvement in conducting real financial and economic activities. This methodology is not universal and does not allow us to make a clear conclusion about the counterparty's unreliability. However several indicators combined for one counterparty are relatively sufficient to recognize the counterparty as risky and make a decision to conduct a subsequent in-depth analysis in order to identify potential cases of fraud or misuse of funds.*

Strictly confidential EY

# Analysis of the apartment sales

# Analysis of the apartment sales

Analysis of co-investment contracts between the Master developer and other customers (4/4)

**Comparative analysis of prices under co-investment contracts and average prices for the quarter** – *continued*

Also we were provided with contract No DKP-MM-10.1/121/20 dated 28 April 2020 related to apartment No 121 with a total area of **75.8 sq m** in the building No 10.1 totaling **RUB 10,543k** between the Master developer and Elizaveta Romanovna Popova, a daughter of N.V. Popova, who holds position of Chief Legal Officer in OOO UK Razvitie; OOO Rozhdestveno's sole owner decision No 91 dated 28 April 2020 and evaluation report No 2335/K dated 13 October 2020. We analyzed the listed information and noted the following indicators of potentially disadvantageous contractual terms:

► estimated cost of the apartment is **RUB 139k** per sq m, which is from 4%* to 25%** below the market value of the apartment as of the date of the agreement execution. The potential loss is estimated between approx. **RUB 410k** and **RUB 2,664k**.

► according to the terms of the contract, the buyer is obliged to transfer the payment by 1 May 2025 or within five years from the date of the agreement execution, which contradicts the co-investment contracts form related to the building No 10.1 (version dated 26 June 2018), where the participant in the shared construction should pay the price of the agreement within five days from the date of state registration of such agreement.

In addition, the OOO Rozhdestveno's sole owner decision No 91 dated 28 April 2020, which approved the transaction, was signed by the General Directors of AO Rozhdestveno, namely, M. A. Cherkasov and D. A. Kharitonov.

*\* According to information on the average cost per square meter in the Mitino area as of April 2020 according to the portal "Real Estate Market Indicators"*
*\*\* According to the data of evaluation report No 2335/K dated 13 October 2020 related to apartment No 121, st. Muravskaya, 42, bldg. 3, Moscow.*
*Sources: register of co-investment contracts concluded by OOO Rozhdestveno, current as of November 2019, statements of settlement accounts of OOO Rozhdestveno for the period January 1, 2017 - May 31, 2020.*

Strictly confidential

**EY**

# EXHIBIT G

| # | Case No. | Date filed | Judge | Name of the Court | Plaintiffs | Defendants | Third parties | Brief summary of the cause of action |
|---|----------|-----------|-------|-------------------|-----------|-----------|---------------|--------------------------------------|
| | **Initiated by Terr Invest, LLC** | | | | | | | |
| 1 | A40-62199/2021 | 2021.03.26 | Elena Bolshebratskaia | Arbitrazh Court of Moscow | Terra Invest, LLC | Rozhdestveno, JSC | Fridom, LLC RDTS Paritet, CJSC | To dispute the decisions of the AGM held in 2020 |
| 2 | A40-61898/2021 | 2021.03.25 | Svetlana Laskina | Arbitrazh Court of Moscow | Terra Invest, LLC | The Central Bank of Russia | - | To dispute reports on refusal to initiate an administrative investigation |
| 3 | A40-36650/2021 | 2021.02.24 | Yuliia Litvinenko | Arbitrazh Court of Moscow | Terra Invest, LLC | Galina Berezueva Dmitrii Kharitonov | Rozhdestveno, JSC | To invalidate of the transaction of issuing Dmitrii Kharitonov's power of attorney, dated June 27, 2018, on behalf of Terra Invest LLC |
| 4 | A40-36319/2021 | 2021.02.24 | Irina Grigoreva | Arbitrazh Court of Moscow | Terra Invest, LLC | Rozhdestveno, JSC | Fridom, LLC Diana Orlova, notary of Moscow | To dispute the AGM held in 2019 |
| 6 | A40-253233/2020 | 2020.12.21 | Ivan Khudobko | Arbitrazh Court of Moscow | Terra Invest, LLC | Galina Berezueva | - | To oblige to provide documents |
| 5 | A40-247154/2020 | 2020.12.14 | Ekaterina Ivanova | Arbitrazh Court of Moscow | Terra Invest, LLC | Rozhdestveno, JSC | RDTS Paritet, CJSC Fridom, LLC Mikhail Cherkasov | To force Rozhdestveno, JSC to hold a AGM in 2020 |
| 7 | 2-3161/2020 ~ M-3576/2020 | 2020.12.09 | V.N. Buryakova | Kolomna City Court of the Moscow Region | Terra Invest, LLC | Dmitrii Kharitonov | - | To oblige to provide documents (power of attorney and other documents received from Rozhdestveno, JSC and Rozhdestveno, LLC) |
| 8 | A40-224507/2020 | 2020.11.17 | Olesia Kravchik | Arbitrazh Court of Moscow | Rozhdestveno, JSC, represented by a shareholder - Terra Invest , LLC | Rozhdestveno, LLC Sberbank of Russia, PJSC | Viktoriya, JSC Fridom, LLC Diana Orlova, notary of Moscow Acting Notary of Moscow Angelica Eremina - E. Omelchenko | To invalidate credit agreements between Rozhdestveno, LLC and  Sberbank of Russia, PJSC |
| 9 | A40-213454/2020 | 2020.11.05 | Yuliia Litvinenko | Arbitrazh Court of Moscow | Terra Invest, LLC | Rozhdestveno, JSC | Auditing company "Art-Audit", JSC Fridom, LLC | To oblige Rozhdestveno, JSC to provide access to AK "Art-Audit", JSC to conduct an audit of the accounting (financial) statements of the defendant for the period from 1/1/2017 to 12/31/2019 |
| 10 | A40-205562/2020 | 2020.10.27 | Elena Bolshebratskaia | Arbitrazh Court of Moscow | Rozhdestveno, LLC | Mir Mitino Telekov, LLC | Fridom, LLC Mikhail Cherkasov Rozhdestveno, JSC | To invalidate a contract |
| 11 | A40-205557/2020 | 2020.10.27 | Igor Burmakov | Arbitrazh Court of Moscow | Rozhdestveno, LLC | Elizaveta Popova | Rozhdestveno, JSC Rosreestr Office in Moscow Nataliia Popova Fridom, LLC Mikhail Cherkasov | To dispute a purchase and sale agreement of apartment |
| 12 | A40-199619/2020 | 2020.10.20 | Igor Utochkin | Arbitrazh Court of Moscow | Terra Invest, LLC | The Central Bank of Russia | - | To recognize unlawfulness of the inaction |
| 13 | A40-194670/2020 | 2020.10.13 | Irina Grigoreva | Arbitrazh Court of Moscow | Terra Invest, LLC | Rozhdestveno, JSC | Interdistrict Inspectorate of the Federal Tax Service №46 in Moscow Inspectorate of the Federal Tax Service №2 in Moscow Fridom, LLC | To oblige to make changes of the information in registrar (address inaccuracy) |
| 14 | A40-190197/2020 | 2020.10.08 | Nadezhda Bushmarina | Arbitrazh Court of Moscow | Terra Invest, LLC | Rozhdestveno, LLC | Rozhdestveno, JSC | To oblige to provide documents |
| 15 | A40-180339/2020 | 2020.09.28 | Nadezhda Bushmarina | Arbitrazh Court of Moscow | Rozhdestveno, LLC, represented by an indirect participant - Terra Invest, LLC | UK Razvitie, LLC | Rozhdestveno, JSC Fridom, LLC Mikhail Cherkasov | To recognize the contract as invalid |
| 16 | A40-159035/2020 | 2020.09.01 | Nataliia Konstantinovskaia | Arbitrazh Court of Moscow | Terra Invest, LLC | Rozhdestveno, JSC | - | To oblige to provide documents |
| 17 | A40-230958/2019 | 2019.09.02 | Ekaterina Ivanova | Arbitrazh Court of Moscow | Terra Invest, LLC | Rozhdestveno, JSC Rozhdestveno, LLC | Mikhail Cherkasov | To oblige to provide documents |
| | **Other** | | | | | | | |
| 1 | A40-241870/2020 | 2020.12.08 | Vasilii Laptev | Arbitrazh Court of Moscow | Rozhdestveno, JSC | Terra Invest, LLC | - | To oblige to provide information on beneficial owners |
| 2 | A40-200448/2020 | 2020.10.21 | Galina Panfilova | Arbitrazh Court of Moscow | UK Mir Mitino, LLC | Rozhdestveno, LLC | - | To collect interest / fines |
| | | Statement of claim of LLC Terra Invest to intervene in the case as a third party that does not declare independent claims | | | | | | |
| 3 | A40-194144/2020 | 2020.10.13 | Yuliia Anushkina | Arbitrazh Court of Moscow | Poultry Farm Krasnogorskaia, JSC | Rozhdestveno, LLC | - | To terminate an investment contract, on recovery of losses |
| | | Statement of claim of LLC Terra Invest to intervene in the case as a third party that does not declare independent claims | | | | | | |
| 4 | A40-171400/2020 | 2020.09.16 | Antonina Antipova | Arbitrazh Court of Moscow | Mosvodokanal, JSC | Rozhdestveno, LLC Poultry Farm Krasnogorskaia, JSC | - | On debt collection under the agreement dated December 18, 2019 No. 8476 DP-V |
| | | Statement of claim of LLC Terra Invest to intervene in the case as a third party that does not declare independent claims | | | | | | |

# EXHIBIT H

**CG CAPITAL GROUP**

Как купить квартиру онлайн

ABOUT THE COMPANY | BUILDINGS | PRESS CENTER | CONTACTS RESULTS OF 2020

+7495 7717777

RU
ENG

More than
**27**
years of development experience

# Capital Group

—

one of the largest Russian development companies which has been specializing in building the most complex and iconic construction projects in Moscow for **27** years – mixed-use complexes, residential and commercial real estate.

—| About the company

Ongoing projects

Высококлассная недвижимость Москвы online

**CG CAPITAL GROUP** Не выходя из дома

О нем говорили. Его ждали. Главный проект года.

Многофункциональный комплекс «Бадаевский»

Zolotoy. New history of the island

Residential Quarter Zolotoy on Sofiyskaya Embankment

Архитектурный ансамбль напротив Кремля
Элегантные резиденции и роскошный отель мирового уровня

The Residences Mandarin Oriental, Moscow





**CG CAPITAL GROUP**

ABOUT THE COMPANY | BUILDINGS   PRESS CENTER   CONTACTS   RESULTS 2020

Site search

+7495 **7717777**

RU
ENG

Как купить квартиру онлайн

## Projects





### Capital Towers
Residential complex

### The Book
Жилой комплекс

### White Khamovni
Клубный дом






### Медный 3.14
Club House

### ОКО TOWER

### NEBO





### Kutuzovsky, 12
Club House

### Mon Cher
Club House

### La Rue





### LITSA
Residential complex

### Sky House
Жилой комплекс

### Headliner
Жилой квартал






### Tricolor
Residential complex

### ПОЗИТИВ
Жилой комплекс

### Barvikha Hills
Cottage community






### Shtat 18

### Panorama
Residential complex

### Aerobus
Business class residential complex





News

# CG CAPITAL GROUP

Как купить квартиру онлайн

ABOUT THE COMPANY | BUILDINGS PRESS CENTER CONTACTS +7495 **7717777** RESULTS 2020

RU
ENG

Site search


### Severny Gorod
Residential complex


### ECO
Residential complex


### Sokolinoye Gnezdo
Mixed-Use Complex


### Klimashkina, 19


### Imperial House
Club house


### Legend of Tsvetnoy
Mixed-Use Complex


### Tikhvinskaya Usadba
Residential complex


### City of Capitals
Mixed-Use complex


### Universite
Mixed-Use Complex


### Mixed-Use Complex Avenue 77
Mixed-Use Complex


### Constellation Capital-1
Residential complex


### Constellat Capital-2
Mixed-Use Complex


### Severnye Vorota
Residential Complex


### Timiryazevsky
Residential Complex


### Artists' Village
Residential complex

News


### Tverskoy


### City of Yachts

All news

The information on this website is not a public offer

# EXHIBIT I

# Portfolio

United States ⁽ᵒ⁾ / International ⁽ᵒ⁾



### 830 Brickell



### Una

Residential · Miami



### Capital Hill Residence

Residential · Barvikha, Russia



### Aman New York

Mixed-Use · New York, USA



### Missoni Baia

Residential · Miami, USA



### Capital City

Mixed-Use · Moscow, Russia



### Legend of Tsvetnoy

Mixed-Use · Moscow, Russia



### Mon Cher

Residential · Moscow, Russia



### Imperial House

Residential · Moscow, Russia

Page 1 of 2                                    Next page  →

OKO

OKO Group is an international real estate
development firm.

info@okogroup.com
+1 305 573 1158

About
Portfolio
News
Accessibility Statement

Copyright 2021 OKO Group LLC
all rights reserved.



About          Portfolio          News          Contact

# Portfolio

United States <sup>US</sup>  /  International <sup>05</sup>



### OKO Tower

Mixed-Use    ·    Moscow, Russia

---

← **Previous page**                    **Page 2 of 2**

---

**OKO**

OKO Group is an international real estate development firm.

info@okogroup.com
+1 305 573 1158

About
Portfolio
News
Accessibility Statement

Copyright 2021 OKO Group LLC all rights reserved.

# OKO

About          Portfolio          News          Contact



# Capital City

Mixed-Use    ·    Moscow, Russia

The Capital City complex comprises two mixed-use buildings: the Moscow Tower and the St. Petersburg Tower.



**About the Project**

With interiors designed by Iosa Ghini Associati and boasting not only a combined total of 141 stories of retail, office and residential spaces, the development also includes an impressive 2,200 parking spaces in Moscow City. With floor-to-ceiling windows offering panoramic views across the sprawling city, the Moscow Tower residences span floors 18 to 72, while the St. Petersburg Tower residences are located on floors 18 to 61. Apartment layouts feature open-plan living, kitchen and dining spaces, as well as spacious lobbies, comfortable en suite bedrooms, walk-in wardrobes and office space. The two buildings connect on the first 19 floors, with office, retail and spaces throughout. The retail floors occupy an extensive, naturally lit atrium on the lower three floors.

**Location**       Moscow, Russia

**Category**       Mixed-Use High-Rise

**Total Area**     3,107,326 sq ft / 288, 680 sq m

**Share**          

← **Previous project**         ▦ **Back to Portfolio**         **Next project** →

# OKO

OKO Group is an international real estate development firm.

info@okogroup.com
+1 305 573 1158

About
Portfolio
News
Accessibility Statement



Copyright 2021 OKO Group LLC all rights reserved.





# Imperial House

Residential    Moscow, Russia

With its monumental Victorian style, palatial interiors and exclusive location in the very heart of historical Moscow, the imposing

Imperial House on Bolshaya Yakimanka Street across from the Tretyakov Gallery, is a landmark in modern Russian real estate, combining multifunctionality, innovative architecture and the best in technical equipment and services.



## About the Project

The 65 apartments have been developed by top designers in line with latest trends in deluxe class properties, and boast panoramic windows offering beautiful views over the Moskva River, the Kremlin, the Cathedral of Christ the Saviour, Gorky Park, Muzeon Park and Vorobyovy Gory.

Residents enjoy a unique range of amenities, including a business center with modest office space and conference halls, a private cinema, a sports complex with a swimming pool, a vintage wine collection, a cigar-smoking room and a library.

**Location**    Moscow, Russia

**Category**    Residential Complex

**Total Area**    471, 460 sq ft / 43,800 sq m

**Share**    

← **Previous project**        ▪▪ **Back to Portfolio**        **Next project** →

**OKO**

OKO Group is an international real estate development firm.

info@okogroup.com
+1 305 573 1158

About
Portfolio
News
Accessibility Statement

Copyright 2021 OKO Group LLC all rights reserved.








# Legend of Tsvetnoy

Mixed-Use     Moscow, Russia

*Vladislav's personality is reflected in this duality; he expressed himself through highly celebratory working places using brave shapes, dynamics and technological elements. On the other hand, in the residential areas he softened the shades warmed by rich materials and decorative textures combined in a contemporary way. — Iosa Ghini, Interior Designer of the project*



## About the Project

Walking distance from the Kremlin, the Legend of Tsvetnoy multifunctional complex is an exclusive architectural project of American firm NBBJ. Spacious residential apartments, designed for city professionals, float above the city—with walk-through living and kitchen areas, offering residents breathtaking panoramic views of Moscow's historical center and most prominent landmarks. The luxurious lobbies, designed by Massimo Iosa Ghini, are notable for their homely atmosphere and use of high-end finishing materials, with snow-white leather and wood paneling, backlit glass walls and unique hardwood floors. The complex faces the park opposite Tsvetnoy Boulevard and houses street-level boutiques, banks, cafés and exclusive restaurants, including the newly opened Buddha-Bar Moscow.

**Location**     Moscow, Russia

**Category**     Mixed-Use Complex

**Total Area**   1,210,262 sq ft / 112,437 sq m

**Share**        

← **Previous project**          ▪▪ **Back to Portfolio**          **Next project** →

## OKO

OKO Group is an international real estate development firm.

info@okogroup.com
+1 305 573 1158

About
Portfolio
News
Accessibility Statement

Copyright 2021 OKO Group LLC all rights reserved.



# OKO



## Mon Cher

Residential      ·      Moscow, Russia

A luxurious mansion in the early modern style, Mon Cher is one of the most
sophisticated buildings in the center of Moscow.



### About the Project

Located next to Yakimanka Square, just a five-minute walk from the Kremlin, and comprising
26 one- and two-level boutique residential key-ready suites, Mon Cher offers a sense
of French chic and exclusivity right in the heart of the city.

The lobby and glass-roofed atrium with panoramic elevators, as well as the interiors of the
suites themselves, are the work of acclaimed French designer Jacques Grange. Grange's
elegant neoclassical style uses soft tones and antique elements to create the warmth and
charm of a family home—with color accents provided by furniture pieces from renowned
designers such as Dame Zaha Hadid, Mattia Bonetti, Patrice Dangel and Vincent Corbiere.

**Location**      Moscow, Russia

**Category**      Boutique Residences

**Total Area**    111,515 sq ft / 10,360 sq m

**Share**    

---

← **Previous project**           **Back to Portfolio**          **Next project** →

# OKO

OKO Group is an international real estate
development firm.

info@okogroup.com
+1 305 573 1158

About
Portfolio
News
Accessibility Statement

Copyright 2021 OKO Group LLC
all rights reserved.







# OKO Tower

Mixed-Use  ·  Moscow, Russia

OKO Tower is part of the thriving Moscow City mixed-use district—centrally located within the sprawling Russian metropolis—the design of which was loosely based on London's Canary Wharf and Paris's La Défense.

**About the Project**

An 85-story skyscraper and a 49-story office tower soar from a 7-story transparent crystalline base, gradually tapering away from each other as they rise. Designed by US based architectural and engineering firm Skidmore, Owings & Merrill—renowned for its iconic towers, including Burj Khalifa, the world's tallest building—the OKO Tower complex laid the groundwork for a new era in contemporary Russian development. At 1,150 feet high, and with a total area of 4,300,000 square feet, the OKO Tower is not only the largest skyscraper in Moscow, but also the highest residential tower in Europe. The complex also has the biggest parking area in Moscow, with 15 levels for 3,500 parking spaces.

Residential and office lobbies have elegant interiors by Italy-based designer Massimo Iosa Ghini. With leading engineering solutions and security systems, 24/7 services, restaurants and bars, a private cinema hall, a luxurious spa and fitness center, and a private landscaped park, OKO Tower offers the ultimate in comfort and activity. The key-ready residential apartments boast designer interiors and stunning panoramic views of the Moskva River, the Vorobyovy Gory (Sparrow Hills) park, the Kremlin and the skyscrapers of Moscow City.

| | |
|---|---|
| **Location** | Moscow, Russia |
| **Category** | Mixed-Use High-Rise |
| **Total Area** | 4,305,565 sq ft / 400,000 sq m |
| **Share** |  |

← **Previous project**         ▦ **Back to Portfolio**

# OKO

OKO Group is an international real estate development firm.

info@okogroup.com
+1 305 573 1158

About
Portfolio
News
Accessibility Statement

Copyright 2021 OKO Group LLC all rights reserved.

