SEALED

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA**



FILED BY _____ KP _____ D.C.

Feb 25, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

IN RE APPLICATION OF TERRA INVEST, LLC
UNDER 28 U.S.C. § 1782 TO CONDUCT
DISCOVERY FOR USE IN FOREIGN
PROCEEDINGS

Case No. 21-mc-23332-BLOOM

**TERRA INVEST LLC'S OPPOSITION WITH INCORPORATED MEMORANDUM OF
LAW TO VLADISLAV DORONIN'S MOTION TO VACATE THIS COURT'S ORDER
GRANTING 28 U.S.C. § 1782 DISCOVERY AND TO QUASH THE RESULTING
SUBPOENAS**

## I.  __INTRODUCTION__

Petitioner Terra Invest, LLC ("Terra Invest") submits this opposition to Vladislav Doronin's ("Doronin") motion to vacate this Court's Order granting Terra Invest's 28 U.S.C. § 1782 ("Section 1782") application to conduct discovery in a foreign proceeding and to quash the resulting subpoenas ("Motion to Vacate and Quash").  Terra Invest's memorandum of law in support is incorporated herein.

Despite Doronin's assertions that he is a citizen of Sweden, resident of Switzerland and spent less than 100 days in the United States in 2021 (*see* CM/ECF Dkt. No. 9-1), he resides and is found in Miami, Florida.  Doronin is a billionaire Russian businessman and international real estate developer, who, of late, has focused both his personal and professional life in the United States, and more specifically, Miami.  Unfortunately, Doronin is attempting to avoid his obligations to produce relevant discovery pursuant to Section 1782, all the while availing himself of this jurisdiction and residing in Miami.  As a wealthy international businessman, it is unsurprising that Doronin travels the world, spends time in various countries as tax residency requirements permit, and purchases homes through shell corporations.  That said, he should not be able to use those luxuries as a means to avoid his Section 1782 obligations as a resident of Miami.

As discussed at length in Terra Invest's Section 1782 Petition (*see* CM/ECF Dkt. No. 1), Terra Invest has satisfied the statutory requirements of Section 1782 and the discretionary factors outlined in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) weigh in its favor. Indeed, Terra Invest, as a litigant in several cases now pending in Russian courts and a complainant in Russian criminal investigations, is an interested party under Section 1782.  The discovery it seeks is narrowly tailored and targets only a non-party (Doronin) who both resides and is found in the Southern District of Florida ("District"), and is for use in the pending Russian lawsuits.

As an initial matter, Doronin's Motion to Vacate and Quash does not address or raise any challenges to the application of the *Intel* discretionary factors in this case and, thus, he has conceded they all weigh in Terra Invest's favor.  Instead, Doronin's Motion to Vacate and Quash relies solely on two arguments that focus on one particular statutory requirement of Section 1782, namely: (1) Doronin does not reside in the District; and (2) Doronin is not found within the District. Because of the limited basis upon which Doronin's Motion to Vacate and Quash is based, Terra Invest will not again address the *Intel* discretionary factors but it incorporates by reference the arguments it made in its Section 1782 Petition.  *See* CM/ECF Dkt. No. 1.

With respect to the arguments raised in his motion, despite Doronin's assertions to the contrary, he "resides" on Star Island in Miami Beach, Florida, which is located within the jurisdictional boundaries of this District, in a multi-million-dollar mansion.  This mansion was purchased in 2009 and Doronin has outwardly considered this residence to be his "home" since that time.  While Doronin may be a billionaire with various properties around the world, it cannot be denied that Doronin resides in Miami.  He has stated so in various media outlets and he has been exceptionally active in the local Miami community.

Further, Doronin can be "found" within the District as contemplated by Section 1782.  As discussed further *infra*, Doronin is subject to "tag" jurisdiction because he is an individual. Counsel for Doronin accepted service of the subpoenas on his behalf[1] and as a result, Doronin should not be able to hide behind service to avoid being found in the District.  Further, given the significant amount of time Doronin spends in Miami, had counsel not accepted service, "tag" service could, and would, have been accomplished.  Additionally, the discovery sought in the Section 1782 Petition is tied to the District in that Doronin's connection to the Russian lawsuits is

---

[1] On January 14, 2022, counsel for Doronin accepted service of the subpoenas.

through his personal ownership in Capital Group Development, LLC ("Capital Group"), and also his real estate company OKO Group, LLC ("OKO Group"). OKO Group is a United States based real estate group with its principal place of business in Miami, Florida. As such, the discovery requested is tied to the District. Simply put, Doronin is found within the District.

Given that Doronin both resides and is found in District as contemplated by Section 1782, his Motion to Vacate and Quash should be denied in its entirety.

## II.  RELEVANT FACTUAL BACKGROUND

### A.  Doronin Resides in the District

Despite Doronin's assertions to the contrary in his Motion to Vacate and Quash, it cannot be disputed that Doronin resides within the District. Doronin resides in a multi-million-dollar mansion located on Star Island Drive, in Miami Beach, Florida ("Star Island Mansion"). Star Island is a world-renowned location desirable by the rich and famous. *See* Exhibits ("Exs.") A-D.[2] In fact, Doronin purchased the Star Island Mansion in 2009 from former NBA superstar Shaquille O'Neal. *See* Exs. A-D.[3]

Doronin has been quoted in various media outlets as stating the Star Island Mansion is indeed his "home". In November 2017, on his own website (www.vladislavdoronin.com), Doronin wrote, in pertinent part: "Miami is such a dynamic place . . . and I think it's a very good, easy-going place to raise children." *See* Ex. H. He went on to write: "Saturday mornings at my

---

[2] All Exhibits annexed hereto are publicly available documents.

[3] Star Island Mansion's ownership listing identifies Garden Islands International, LLC ("Garden Islands") as the property owner. *See* Ex. E. However, Garden Islands is clearly just a shell corporation used by Doronin to purchase the property. Garden Islands is a Florida LLC with its principal place of business at 2525 Ponce De Leon Boulevard, Fourth Floor, Coral Gables, Florida 33134. *See* Ex. F. The manager of Garden Islands is Steven Carlyle Cronig ("Cronig"). *See id.* Cronig is an attorney at the law firm Hinshaw & Culbertsonn, LLP. *See* Ex. G. He is Doronin's agent and has represented OKO Group in various real estate related legal proceedings (discussed further, *infra*). The purchasing of homes through a corporate entity is a common practice among the ultra-wealthy and should have no bearing on whether Doronin resides in the District pursuant to Section 1782.

*home* on Star Island begin at 8am . . ." (emphasis added).  *See id.*  He also further discussed his daily practices (e.g. yoga) and favorite restaurants to visit in the Miami area, along with describing his trips to the Bahamas from Miami.  *See id.*  Specifically, Doronin stated of his Star Island Mansion, "[m]uch of the day is spent on the water, and if the weather is really nice we'll head . . . on my Riva Domino for a day in the Bahamas . . . [m]ore often, though, we'll go by tender to Seaspice Restaurant for lunch overlooking the Miami River . . . [o]r I might take my speedboat, a Wider 42, over to Key Biscayne and kite-surf with my trainer."  *See id.*[4]  Further, in a *Miami Herald* article from 2016 regarding Doronin's OKO Group's project at South Brickell Residential Tower, it was noted Doronin "has owned a home locally for more than two decades, on Star Island."  *See* Ex. I.  In yet another *Miami Herald* article, it states that in 2008 Doronin bought a "***home***" on Star Island.  *See* Ex. J.  Additionally, in countless other media outlets, it has been noted that Doronin: (1) considers the Star Island Mansion to be his "home"; (2) believes it is a great place to raise children; (3) enjoys his daily activities in Miami, and (4) believes it is a thriving locale to manage his vast real estate business.  *See* Exs. A-D, I-L and X.

Doronin is also active in the local Miami community, both socially and politically. Doronin has been known to throw large, lavish parties at his Star Island Mansion.  *See* Exs. K-L. This is especially the case during the annual Art Basel festival, which is a passion of Doronin's. *See* Exs. H and K.  His guests have included various Miami luminaries including the Mayor of Miami Beach.  *See* Exs. K-L.  In another instance, Doronin held an event at the Star Island Mansion to launch his Missoni Baia condominium tower, located in Miami.  *See id*.

---

[4] For sake of brevity, the entire narrative regarding Doronin's daily practices at the Star Island Mansion can be seen in the referenced article.  *See id.*

Even more significant regarding Doronin's concrete ties to the District are his personal political activities related to his Star Island Mansion.  In October 2020, at a City of Miami Beach Virtual Commission Meeting regarding an Aman Hotel[5] real estate project, it was noted: "Doronin is 100% owner of Aman Hotel and OKO Group, the developer of the project.  Vladislav is a City **resident**, he **lives** on Star Island, and where his family is growing" (emphasis added).  *See* Ex. M at pg. 3 (for brevity, only excerpts of the City of Miami Beach Virtual Commission Meeting are included in Ex. M).  The purpose of this City of Miami Beach Virtual Commission Meeting was to obtain certain zoning variances for construction of Doronin's Aman Hotel Condominium.  *See id.*

Additionally, in 2019, Doronin was involved in a highly publicized spat with his millionaire Star Island neighbor, Robert Pera, over zoning variances Pera was seeking for renovations to his own mansion.  *See* Exs. N.[6]  This inter-millionaire warfare was extremely public, aired out both in the media and at local board meetings.  *See* Ex. N.  Doronin even threatened to sue Pera if he did not comply with Doronin's demands.  *See id.* at p. 2.

Finally, this District has previously exercised personal jurisdiction over Doronin in connection with a previous lawsuit in which he was named as a defendant.  *See Tavakoli v. Doronin, et al.*, Case No. 18-cv-21592-CMA.  *Tavakoli* was a diversity suit filed in this District based on allegations of fraud against Doronin and other defendants.  *See id.* CM/ECF Dkt. No. 1. Notably, despite the fact that two other co-defendants filed motions to dismiss for lack of personal jurisdiction, Doronin elected not to challenge personal jurisdiction in this District.  *See id.* CM/ECF Dkt. *generally*.  In denying the co-defendants' motions to dismiss, the Court's decision noted at

---

[5] Doronin is the owner, Chairman and CEO of Aman Resorts.

[6] In fact, the former Miami Beach mayor, Neisen O. Kasdin, was representing Doronin at the time.  *See* Exs. N-O.

various points that Doronin resided in and was a resident of Miami.  Specifically, the Court noted

one of the co-defendants "stayed with Doronin at his Miami residence" and further that the co-

defendant "purposefully directed his activities at Florida when he conspired with Doronin, a

Florida **resident**" (emphasis added).  *See id.* CM/ECF Doc. No. 107 at pp. 21-23.

Given all of the above, it cannot be denied that Doronin resides within the District.

**B.      Doronin's Business Interests in the District**

Separate and apart from residing in the District, Doronin has significant business interests

in the District, namely through his real estate development firm, OKO Group, of which he is the

Chairman and CEO.  *See* Ex. P; *see also* www.okogroup.com/about-Vladislav-Doronin.  OKO

Group is a Delaware corporation with a principal place of business in Miami, Florida, within this

District.  *See* Ex. Q.  It was founded, is owned, and is controlled by Doronin.  OKO Group has

developed, and is currently developing, numerous sites in and around Miami.  *See* Exs. H, I-J, K-

M, P, R-X and Z.  In fact, it has been noted in the media that Doronin has built a "real estate

empire, centered in Moscow and now, Miami."  *See* Ex. J.

One such OKO Group project is the Missioni Baia Condominium ("Missoni Baia").  *See*

Exs. H-L, R-S and V.  Missoni Baia is in Miami and its development brochures boast that OKO

Group is the developer that "builds on the expertise of Doronin . . . Chairman of the property and

development firm Capital Group."  *See* Ex. R.  In fact, Doronin hosted a highly publicized event

to launch Missoni Baia at his Star Island Mansion.  *See* Exs. K-L.  Incidentally, in these press

releases, the Star Island Mansion was described as Doronin's "home."  *See id.*

Another OKO Group project is the Aman Hotel and Condominium in Miami Beach

("Aman Hotel").  *See* Exs. D, H, J, M-N, P, T and X.  The Aman Hotel is a partnership between

OKO Group and Access Industries.  *See* Ex. T.  As part of this project, the existing 16-story

Versailles Hotel was to be renovated and a new 16-story condo tower constructed.  As noted above,

in October 2020, at a Miami Beach Virtual Commission Meeting regarding the Aman Hotel project, it was noted: "Doronin is 100% owner of Aman Hotel and OKO Group, the developer of the project.  Vladislav is a City **resident**, he **lives** on Star Island, and where his family is growing" (emphasis added).  *See* Ex M.  His attorney, former Miami Beach Mayor Neisen Kasdin, noted this project was "one of the most beautiful and important projects in the city of Miami Beach." *See* Ex. N.

Other OKO Group projects in Miami include: (1) the South Brickell Residential Tower, a 47-story luxury tower located on Biscayne Bay; (2) the UNA Residences located on the Brickell Waterfront; (3) a 57-story residential tower located on the Brickell Waterfront; and (4) additional office buildings located in Miami.  *See* Exs. I-J, P, S, U, W-X and Z.  Interestingly, in many of these real estate transactions, OKO Group was represented by Steven Cronig, who, as discussed in footnote 2 *supra*, is the manager of the shell company that "owns" the Star Island Mansion.  *See* Exs. E-G, S and Z.

C.     **Doronin's Ties to the Russian Real Estate Venture**

To avoid unnecessary factual repetition, Terra Invest will not fully restate the underlying facts of the fraud perpetrated on it by its business partners in the Russian Mir Mitino[7] project ("Project"), but rather will incorporate by reference the factual background as set forth in its Section 1782 Petition.  *See generally* CM/ECF Dkt. No. 1.  More relevant, the information below briefly outlines Doronin's ties to the Mir Mitino project and the resulting fraud that has been perpetrated against Terra Invest.

---

[7] Terra Invest incorporates by reference the defined terms contained in its Section 1782 Petition.  *See* CM/ECF Dkt. No. 1.

Terra Invest is a 50% investor in the Project.[8]  Through a forged power of attorney ("POA"), Terra Invest was divested of its control of and economic interest in the Project. Subsequent to the use of the forged POA, the various fraudulent actors, including Capital Group (which is 33% owned by Doronin), have orchestrated a loan-swap "ring scheme" under which they have assumed and asserted control over the Project's debts and intend to bankrupt the entity.  This scheme is to the detriment of Terra Invest.

Doronin, over the past two years, has received approximately 600,000,000 rubles (approximately $8.1 million) in dividends from Capital Group.  Further, the Project was "hailed as one of the largest projects in the history of Doronin's Capital Group."  *See* Ex. AA.  Given Capital Group's role in the Project, and more specifically Doronin's 33% ownership in Capital Group and Capital Group's 50% ownership of Poultry Farm and ownership in Viktoriia, it is inconceivable that Doronin does not have access to all the relevant documents related to the fraudulent transactions at issue.  Further, it is reasonable to assume Doronin has personal knowledge of the fraudulent transactions involving the Project.  As a 33% owner of Capital Group, Doronin would necessarily have participated in the approval or rejection of all major transactions, including those related to the Project.  In turn, because Capital Group was a 50% owner of Poultry Farm and controlled the remaining 50% through a "shell" company, Doronin would have participated in the approval or rejection of all major transactions involving Poultry Farm, including those pertaining to the Project.

Capital Group's international real estate development and investment business also operates together, with, and through Doronin's other company, OKO Group.  In fact, Capital

---

[8] Terra Invest respectfully refers the Court to pages 2-10 of its 1782 Application for the applicable evidentiary citations relevant to this section of its opposition.  *See* CM/ECF Dkt. No. 1 at pgs. 2-10 and associated evidentiary citations. Further, pages 2-10 give a complete analysis of the entire fraud scheme committed against Terra Invest, and most importantly, Doronin's role in same.

Group is the umbrella brand for Russian real estate projects, while OKO Group is the umbrella brand for foreign (United States) development projects. *See* Exs. D, H, J, R and V-W; *see also* CM/ECF Dkt. No 1-5 at Ex. C. These entities have been involved in countless real estate ventures throughout the world, including: (1) Capital City, Moscow, Russia; (2) Legend of Tevetnoy, Moscow, Russia; (3) Imperial House, Moscow, Russia; (4) Mon Cher, Moscow, Russia; (5) OKO Tower, Moscow, Russia; (6) UNA Residences, Miami, Florida; and (7) Capital Hill Residences, Moscow, Russia. *See id.* at ¶ 15 and Ex. C. It is certainly telling that OKO Group advertises these Capital Group owned real estate projects in Russia on their website and in various advertising materials. *See id.*; *see also* Ex. P; www.okogroup.com/portfolio.

## III.   <u>ARGUMENT</u>

This Court has the authority to order discovery for use in proceedings before foreign or international tribunals. 28 U.S.C. § 1782(a). An application for discovery under Section 1782 may be granted where, as here, the applicant satisfies the statutory requirements of Section 1782 and the *Intel* discretionary factors weigh in the applicant's favor. *See Intel*, 542 U.S. 241; *see also Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218, 1221 (11th Cir. 2019).

For a court to grant an application under Section 1782, a petitioner must satisfy four statutory requirements: (1) the request must be made by a foreign or international tribunal or by application of an "interested person;" (2) the request must seek evidence, whether it be testimony or the production of documents; (3) <u>the discovery is sought from a person who "resides or is found" in the district of the court to which the application is made</u>; and (4) the discovery must be "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a) (emphasis added); *see also In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007). Only if those statutory requirements are met does "the district court [] turn to the second step, which is considering the four factors in

*Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004)." *Pons v. AMKE Registered Agents, LLC*, 835 Fed. Appx. 465, 467-68 (11th Cir. 2020).[9]

As discussed above, Doronin made the (wise) strategic choice in his Motion to Vacate and Quash to not address or challenge the fact that the *Intel* discretionary factors weigh in Terra Invest's favor because they do.  Rather, Doronin's Motion to Vacate and Quash relies solely on two, related arguments that address one of Section 1782's statutory requirements, namely that: (1) Doronin does not reside in the District; and (2) Doronin is not found within the District.  Both of these arguments fail on their merits and, accordingly, Doronin's Motion to Vacate and Quash should be denied.

### A.   Doronin Resides in the District

Despite Doronin's arguments to the contrary, it cannot be disputed that Doronin resides in the District as contemplated by Section 1782.  "The question of what it means to reside or be found in a locale has been broadly interpreted based on common sense understandings of the words, and relevant case law on territorial jurisdiction."  *See In re MTS Bank*, No. 17-21545-MC, 2017 WL 3155362, at *4 (S.D. Fla. July 25, 2017).[10]  Doronin relies on *Bloomfield v. City of St. Petersburg Beach* (82 So. 2d 364, 369 (Fla. 1955)) for the argument that "[u]nder Florida law, residence hinges on the intent to remain permanently a citizen of the state."  *See* Motion to Vacate and Quash at p. 6.  This reliance, however, is misplaced.  *Bloomfield* is distinguishable in that the

---

[9] The *Intel* discretionary factors are as follows: "(1) whether the person from whom discovery is sought is a participant in the foreign proceeding, because 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant;' (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;' (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions on other policies of a foreign country of the United States;' and '(4) whether the request is otherwise unduly intrusive or burdensome.'" *In re Clerici*, 481 F.3d at 1334 (citing *Intel*, 542 U.S. at 264-65, 124 S.Ct. at 2483).

[10] Although Doronin takes issue with Terra Invest's citation to *In re MTS*, that argument is directed to the issue of whether Doronin is "found" within the District, as opposed to whether he "resides in" the District.

Court was analyzing what it meant to be a "permanent resident" under Florida Statutes § 97.041 for purposes of being a qualified elector.  *See* 82 So. 2d at 367.  Section 1782 does not require permanency.  What the Court in *Bloomfield* actually held was "if a man actually becomes a bona fide resident of this state and intends to remain permanently a citizen of the state, mere absence with the specific clear-cut bona fide intention of returning will not destroy the residence actually therefore established."  *See id.* at 369.  *Bloomfield* further held "the establishment of one's residence will usually depend on a variety of acts or declarations all of which must be weighed in the particular case as evidence would be weighed upon any other subject."  *See id.*

Residency demands that a person be more than a transient or a sojourner, but requires far less than domicile, which requires an intent to make a fixed and permanent home.  *See Comm'r of IRS v. Est. of Sanders*, 834 F.3d 1269, 1279 (11th Cir. 2016).  While a person may have only one domicile at a time, he or she may have multiple residences simultaneously.  *See id.*  Similarly, one can reside in one place but be domiciled in another.  *See Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

Despite Doronin's arguments that he is a citizen of Sweden and a tax resident of Switzerland, he is clearly a legal resident of Florida.[11]  Doronin has resided within this District at his Star Island Mansion since 2009.  *See* Exs. A-C and E.  In various postings on his website and interviews with assorted media outlets, Doronin himself has referred to the Star Island Mansion as his "home" and "residence".  *See* Exs. A-D, H-M and X.  He even went so far as to say it was a great place to raise children.  *See* Ex. H.  In discussing his breakup with former supermodel Naomi Campbell, it was reported, "Doronin has since moved on with Russian model Kristina Romanova, with whom he has two young daughters . . . [h]e is now mainly based in Miami, where

---

[11] Tellingly, because he cannot, Doronin cites no cases for the proposition that being a citizen or tax paying resident is required to be a resident of this District.

he lives on Star Island."  *See* Ex. D.  At a City of Miami Beach Virtual Commission Meeting, the

CFO of Aman Hotels stated: "Vladislav is a City resident, he lives on Star Island, where his family

is growing."  *See* Ex. M. at p. 3.  Further, Doronin has hosted lavish parties at his Star Island

Mansion and is active in the local community, both socially and politically.  *See* Exs. K-L.

Additionally, OKO Group, of which Doronin is 100% owner, has one of its principal places of

business in Miami.  *See* Exs. P-Q.  Finally, Doronin has previously acceded to this Court's

exercise of personal jurisdiction over him in a prior civil lawsuit.  *See Tavakoli v. Doronin, et al.*,

Case No. 18-cv-21592-CMA.  All of this evidence leaves no doubt that Doronin resides in this

District.  To allow a billionaire such as Doronin to avoid lawful process in this District merely

because he travels the world lavishly and has many properties would circumvent the purpose of

Section 1782.

Despite the fact that Doronin clearly resides in the District and he has previously

acquiesced in this Court's exercise of personal jurisdiction over him, he nevertheless relies on

various cases in his motion to support the argument that he does not reside within the District.

However, all of the cases relied upon by Doronin are either misplaced or entirely distinguishable.

In *In re Joint Stock Co. Raiffeisenbank*, relied upon by Doronin, an individual moved to

quash subpoenas issued pursuant to Section 1782 based on, *inter alia*, the argument that he did

not reside in Florida.  *In re Joint Stock Co. Raiffeisenbank*, No. 16-24114-MC, 2017 WL 7733275,

at *2 (S.D. Fla. Aug. 15, 2017), *report and recommendation adopted sub nom. In re Joint Stock

Co.*, No. 16-24114-MC, 2017 WL 6550479 (S.D. Fla. Oct. 20, 2017).  In support of that argument,

the individual set forth evidence that: (1) he did not reside at a residence in Boca Raton; (2) he

had only been in Florida for an estimated 13 days in the relevant time period; (3) his last visit to

Florida was a year prior to the Section 1782 application at which time he stayed with his parents;

and (4) he resided in Singapore with his two children since 1996 and his intent was to remain in Singapore. This is clearly distinguishable from the case at hand given Doronin's regular time spent in Miami.

First, as discussed *infra*, the court's application of *Bloomfield* in *Raiffeisenbank* was misplaced in that *Bloomfield* actually dealt with losing permanent residency as required by Florida's qualified elector statutes. *See Bloomfield*, 82 So. 2d at 369. Further, as discussed in various news articles and as admitted by Doronin on his own website: (1) he considers the Star Island Mansion to be his "home"; (2) he has been in Miami during the time period relevant to the instant case; and (3) he is active in the local community both politically and socially. *See* Exs. E, H-N and X. In fact, he was in a highly publicized dispute with his wealthy neighbor over zoning issues – an interesting course of action for someone who now claims that the Star Island Mansion is not his residence. *See* Ex. N. Finally, even taking Doronin at his word, as stated in his Declaration in Support of the Motion to Vacate and Quash, that he spent 100 days in Miami in 2021. That is a number well in excess of the 13 days at issue in *Raiffeisenbank* over a longer period of time. *See* CM/ECF Dkt. No. 9-1.

Doronin's reliance on *In re Desposito Centralizado de Compensacion y Liquidacion de Valores Decevale, S.A.* is likewise misplaced as the case is clearly distinguishable to the case at bar. As an initial matter, in *Decevale*, the Court was analyzing whether or not an individual was "found" within the District; not whether the individual "resided" in the District. *In re Deposito Centralizado de Compensacion y Liquidacion de Valores Decevale, S.A.*, No. 20-25212-MC, 2021 WL 2323226, at *4 (S.D. Fla. June 1, 2021). In any event, it was undisputed that the individual resided in Ecuador. Further, while it was undisputed that the individual owned a condominium in the District, he did not in fact live in the condominium and in fact rented it out

to tenants.  *See id.*  Here, Doronin does not rent out the Star Island Mansion to anyone; rather he lives there himself, he hosts lavish parties there, and he is very active in the local Miami Beach community.

Next, Doronin's reliance on *In re: Application of Gazprom Latin Am. Servicios, C.A.* is misplaced because the case lacks meaningful precedential value as it arose from the Southern District of Texas.  In any event, just like the other cases cited by Doronin, *Gazprom* is entirely distinguishable from the case at hand.  In *Gazprom*, the individual at issue was never a resident of the Southern District of Texas, but rather was only a tourist for three months and the only time he resided in the United States was when he was on a student visa in college in Louisiana from 1991-1994.  *In re: Application of Gazprom Latin Am. Servicios, C.A.,* No. 4:14-MC-1186, 2016 WL 3654590, at *11 (S.D. Tex. July 6, 2016).  Further, the last time the individual was in the State of Texas was in 2013, years before the Section 1782 application.  Finally, the evidence adduced indicated that, since 2013, the individual had not returned to the State of Texas and had no intention of making his permanent home in the district.  Again, here there is ample evidence that Doronin resides in the District at his Star Island Mansion, he has been in the District for a significant amount of time and conducts significant business here, he intends to return to the District to spend time at his Star Island Mansion, and he is active, both politically and socially, in the Miami Beach community.  *See* Exs. A-F, H-N and X.

Finally, *In re Kolomoisky* is also entirely distinguishable.  Again, as an initial matter, like *Gazprom*, *Kolomoisky* has minimal precedential value as the case is from the Southern District of New York.  In any event, the facts of *Kolomoisky* are distinguishable from this case.  The court found that the individual at issue did not reside in the Southern District of New York under any meaning of the word.  *In re Kolomoisky*, No. M19-116, 2006 WL 2404332, at *3 (S.D.N.Y. Aug.

14

18, 2006).  The only affirmative evidence the Section 1782 petitioner was able to provide was:

(1) the individual's wife and son resided in Manhattan, in an apartment in her name; (2) a

telephone line into that apartment was in the individual's name; and (3) the individual's passport

showed he spent 10-12 days in the United States in January and February 2006.  The court held

this evidence was insufficient to show that the individual "resided" in the Southern District of

New York.  *See id.*  Here, again, Doronin admitted spending 100 days in Miami in 2021 – almost

a third of the entire year.  *See* CM/ECF Dkt. No. 9-1.  Further, the Star Island Mansion is where

Doronin resides with his girlfriend and children.  *See* Exs. A-E, H, I-N and X.  This is not an

instance where Doronin's family lives at the Star Island Mansion and he only visits on limited

occasions.

        **B.**      **Doronin is Found Within the District**

      Given that Doronin resides in the District as contemplated by Section 1782 (as discussed,

*supra*), technically this Court need not address whether Doronin is also found within the District.

The plain language of Section 1782 clearly states that the statute is triggered when a person

"resides **or** is found" in the district where the application is brought.  28 U.S.C. § 1782 (emphasis

added).  That said, Doronin is clearly also found within the District.

      As discussed in Terra Invest's Section 1782 Petition, this Court has found that when an

individual owns real estate and operates a business in the District, he is deemed to be found within

the District.  *See In re MTS Bank*, 2017 WL 3155362, at *4; *see also* Fla. Stat. § 48.193 ("[o]wning,

*using*, possessing, or holding a mortgage or other lien on real property within this state subjects a

person to jurisdiction in the Court of Florida").  Here, Doronin clearly is using (and certainly owns

through various shell companies) the Star Island Mansion located within the District and also, per

the company's own public-facing website, operates OKO Group in the District.  *See* Exs. A-F, H-

N and P-Z; *see also* https://okogroup.com/contact.

Doronin is correct in stating that, since this Court's decision in *In re MTS*, courts in this jurisdiction and others have taken additional factors into consideration when deciding whether an individual is found within the District for purposes of Section 1782.  That said, *In re MTS* has not been superseded; rather the analysis in certain cases has been updated.  Specifically, courts in this District have analyzed whether: (1) the party was subject to "tag" service jurisdiction; and (2) whether the material sought in a 1782 application proximately resulted from the respondent's forum contacts.  *See In re Inmobiliaria Tova, S.A.*, No. 20-24981-MC, 2021 WL 925517 (S.D. Fla. Mar. 10, 2021); *see also In re Deposito Centralizado de Compensacion y Liquidacion de Valores Decevale, S.A.*, No. 20-25212-MC, 2021 WL 2323226, at *1 (S.D. Fla. June 1, 2021), *appeal dismissed sub nom. Deposito Centralizado de Compenasacion y Liquidacion de Valores Decevale, S.A. v. Ecuador High Yield Fund, LLC*, No. 21-11889-CC, 2021 WL 4049325 (11th Cir. July 7, 2021); *In re Kurbatova*, No. 18-mc-81554-BLOOOM/Valle, 2019 WL 2180704 (S.D. Fla. May 20, 2019).

Here, Doronin is subject to "tag" service jurisdiction.  In *In re Kurbatova*, this Court found that if an "entity is personally served with a subpoena while physically present in this district (otherwise known as 'tag' jurisdiction), that person is 'found' within the district for purposes of § 1782".  *See In re Kurbatova*, 2019 WL 2180704 at *2.[12]  In doing so, this Court relied upon a Second Circuit decision, *In re Edelman*, 295 F.3d 171 (2d Cir. 2002), for persuasive guidance.  In *In re Edelman*, a French citizen was served with a Section 1782 subpoena while visiting New York City.  *See id*. at 174.  The Second Circuit held that the exercise 1782 "found" jurisdiction can be authorized based on nothing more than physical presence.  *See id.* at 179; *see also Burnham v.*

---

[12] Other decisions in this District have distinguished *In re Kurbatova*, because the analysis was applied to corporations, not individuals (discussed further, *infra*).

*Superior Court of California*, 495 U.S. 604 (1990).  The court held that "[g]iven that this so-called tag jurisdiction is consistent with due process, we do not think that § 1782(a), which is simply a discovery mechanism and does not subject a person to liability, requires more."  *See id.*

Terra Invest underwent various efforts to serve Doronin personally, including service at the Star Island Mansion.[13]  In the interim, counsel for Terra Invest reached out to counsel currently representing Doronin in this matter to ascertain whether they would be willing to accept service of the subpoenas on Doronin's behalf.[14]  After consulting with their client (Doronin), counsel agreed to accept service of the subpoenas on Doronin's behalf.

As this Court is well aware, the Federal Rules of Civil Procedure ("FRCP") encourage the waiver of process.  *See* FRCP 4.  Further the purpose of Section 1782 is to "(1) provide efficient assistance to foreign tribunals and litigants; and (2) encourage foreign countries to similarly improve their procedures for providing assistance to American courts" and should be construed broadly.  *See In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, No. 08-20378-MC, 2011 WL 181311, at *6 (S.D. Fla. Jan. 19, 2011).

Clearly, Terra Invest's rights to pursue Section 1782 discovery from Doronin should not be impaired merely because counsel accepted service of the subpoenas on behalf of Doronin and the need for "tag" service was obviated.  If that was the case, every non-party subject to Section 1782 discovery would have his counsel accept service, and then argue that he was not personally served.  To be sure, given the amount of time Doronin spends in Miami, especially time out in

---

[13] As an aside, Courts in this jurisdiction have held that service of Rule 45 subpoenas is proper if the methods are reasonably calculated to ensure delivery (i.e. personal service is not required).  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Maistrenko*, No. 19-MC-20850, 2019 WL 7790855 (S.D. Fla. Dec. 20, 2019), *report and recommendation adopted*, No. CV 19-20850-MC, 2020 WL 486271 (S.D. Fla. Jan. 30, 2020); *Rainey v. Taylor*, No. 18-24802-MC, 2019 WL 1922000 (S.D. Fla. Apr. 30, 2019).

[14] Interestingly, counsel for Terra Invest was made aware local counsel for Doronin through their representation of him in the *Tavakoli* matter in which Doronin was subject to jurisdiction in this District.

public, which even he admits is approximately 100 days, "tag" jurisdiction would have been effectuated if counsel did not agree to accept service.  To hide behind acceptance of service would frustrate the purposes of Section 1782.

Given that Doronin should be deemed to be found within the District based on "tag" jurisdiction, Doronin's argument that the material sought did not proximately result from his District contacts is without merit.  In the cases Doronin cites in support, the courts addressed whether the material sought was connected to the forum because: (1) "tag" jurisdiction was not accomplished; and/or (2) the "tag" jurisdiction analysis was not appropriate because the respondent was an entity, not an individual.  *See generally In re Inmobiliaria Tova, S.A.*, 2021 WL 925517; *see also generally In re Decevale, S.A.*, 2021 WL 2323226; *In re Del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019).

In any event, the evidence sought *is* directly tied to this jurisdiction because Doronin must have (despite his unsubstantiated arguments to the contrary) participated in and had access to information related to the Project and the resulting fraud on Terra Invest given this District is where Doronin resides in the United States.  Indeed, there is no other jurisdiction in the United States which Doronin has publically called "home".  Given Doronin's 33% ownership in Capital Group and Capital Group's 50% ownership in and full control of Poultry Farm and joint control of Viktoriia (all of which were instrumental in the scheme to divest Terra Invest of its ownership stake in the Project), Doronin, who resides in Miami, clearly has evidence related to the Project and the fraud scheme surrounding it.

Further, as discussed, Doronin and OKO Group have significant business interests in the District through their expansive real estate development projects.  OKO Group has one of its principal places of business in Miami.  *See* Ex. Q.  OKO Group and Doronin are involved in

various real estate projects in Miami, including: (1) Missioni Baia; (2) Amana Hotel; (3) South Brickell Tower; (4) UNA Residences; (5) Brickell Waterfront; and (6) various office buildings. *See* Exs. H-M, N, P, R and T-X; *see also* www.okogroup.com/portfolio.  Additionally, OKO Group operates together and through Doronin's other company, Capital Group.  As discussed above, it is, in part, through Doronin's activities as partial owner of Capital Group that Terra Invest has been the victim of the fraud scheme with respect to the Mir Mitino project.

The cases cited by Doronin in support of its argument that the evidence sought is not tied to the jurisdiction are distinguishable.  In *In re Inmobilaria Tova*, the entity at issue was not incorporated in the State of Florida and did not have a principal place of business in the District. *See* 2021 WL 925517, at *5.  Further, there was absolutely no allegation that the entity's contacts with the District were reasonably connected to the discovery sought.  *See id.*  Here, Terra Invest has provided evidence regarding the discovery sought and its connection to this District.  Poultry Farm was at the time of the fraud owned and controlled by Capital Group, which is in turn partially owned by Doronin.  *See* CM/ECF Dkt. No. 1-5 at ¶ 13 and Ex. B thereto.  Capital Group is also one of the controlling entities of Viktoria.  *See id.* at ¶ 13, 36(b).  Capital Group operates together with and through OKO Group, which has been involved in various real estate development projects within this jurisdiction.  *See* Exs. H-M, N, P, R and T-X.  Further, OKO Group has one of its principal places of business in Miami.  *See* Ex. Q.

In *In re del Valle Ruiz*, the Court held that the evidence sought was not related to the District in that the entity's contacts with the District postdated the date of the alleged transaction that gave rise to the foreign litigation.  *See* 939 F.3d at 530.  Again, that is clearly not the case here.

Finally, Doronin argues, albeit in a footnote, that the subpoenas should be quashed for failure to comply with FRCP 45(c)(1).[15]  In doing so, Doronin relies on *In re Kurbatova*.  However, Doronin's reliance on *Kurbatova* for this specific argument is, again, misplaced.  In *Kurbatova*, this Court held that, despite being found within the District, subpoenas served on Credit Suisse did not comply with FRCP 45(c)(1) because Credit Suisse had no office in Florida and thus no employees within the 100-mile radius to engage in the act of production.  *See* 2019 WL 2180704, at *3.  As such, this Court quashed the subpoenas.  Clearly this is not applicable to the case at hand in that, as discussed, Doronin resides within the District and his Star Island Mansion is within 100 miles of the Miami courthouse of the Southern District of Florida.

## IV.   <u>PRAYER FOR RELIEF</u>

Wherefore, for all the foregoing reasons, Terra Invest, LLC respectfully requests this Court deny Doronin's Motion to Vacate and Quash as Doronin resides and is found in the District as contemplated by 28 U.S.C. § 1782.

Dated: February 25, 2022                                   Respectfully submitted,

                                                           ___/Alycia Ziarno/_____
                                                           Alycia Ziarno (Florida Bar Number: 96718)
                                                           aziarno@nixonpeabody.com
                                                           **NIXON PEABODY LLP**
                                                           799 9th Street NW
                                                           Suite 500
                                                           Washington, DC 20001-5327
                                                           Telephone: (202) 585-8265

                                                           *Counsel for Petitioner Terra Invest, LLC*

---

[15] Tellingly, Doronin does not raise any other FRCP 45 objections, including to the relevance of the discovery requested.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 25, 2022, a true and correct copy of the forgoing

is being filed via electronic mail with the Clerk of the Court, Seal Department.  I also certify that

the forgoing document is being served via electronic mail this date on all counsel of record on

the Service List below.

## **SERVICE LIST**

Adam M. Schachter
aschachter@gsgpa.com
Barbara R. Llanes
bllanes@gsgpa.com
Juan Carlos Zamora Jr.
jzamora@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
SunTrust International center
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950



  */Alycia Ziarno/*
ALYCIA ZIARNO